**08 C 1338**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE MASON**

# EXHIBIT B

'RECEIVED

SEP - 7 2004
RAS BUILDERS INC.
RECEIVED

AUG 1 8 2004

## ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT (the "Agreement") is made as of the ⎦____ day of August, 2004, by and between RAS BUILDERS, INC., a Colorado corporation (the "Seller"), and ENGLEWOOD CONSTRUCTION, INC., an Illinois corporation (the "Purchaser").

## WITNESSETH:

WHEREAS, Seller is the owner of a general construction business being conducted by it under the name and style of "RAS Builders" with multiple offices in the United States, including an office located at (i) 9747 West Foster Avenue, Schiller Park, Illinois 60176 (the "Chicago Office") pursuant to a Lease dated April 24, 1998, as amended (the "Chicago Lease") with AMB Partners II Local, L.P, as landlord ("Chicago Landlord") and (ii) Unit 304, 100 Ledgewood Place, Rockland, Massachusetts (the "Boston Office") pursuant to a Lease dated August 1, 2001 (the "Boston Lease") with Ledgewood Investment Corp., as landlord (the "Boston Landlord") (the Chicago Office and Boston Office are collectively referred to as the "Offices", and the Chicago Lease and Boston Lease are collectively referred to as the "Leases"); and

WHEREAS, Seller desires to sell to Purchaser certain of the assets, properties, rights and interests in its business existing, generated by or created out of the Offices (the "Business"); and

WHEREAS, Purchaser desires to purchase said certain assets offered for sale by Seller used in the conduct of the Business at the Offices so as to enable Purchaser to engage in, and carry on the Business in such geographic areas, for the purchase price and upon the terms and conditions as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is mutually agreed and covenanted by the parties hereto, as follows:

## ARTICLE 1
## PURCHASE AND SALE OF THE PURCHASED ASSETS: CLOSING

1.1    Sale of Purchased Assets.  On the terms of and subject to the conditions set forth in this Agreement, and for the consideration set forth in Section 1.3, the Seller will, on the Closing Date (hereinafter defined in Section 1.4), sell, assign, transfer, convey and deliver to the Purchaser all of the Seller's right, title and interest in and to certain assets used exclusively by the Business or held exclusively by the Business (collectively the "Purchased Assets"):

(a)    Assumed Contracts. Agreements. Equipment Leases.  All of the Seller's rights under certain construction contracts and other agreements, and commitments made in the ordinary course of business of the Seller, described on Schedule 1.1(a) (the "Assumed Contracts");

(b)    Certain Accounts Receivable.  All of Seller's rights to receive payment and collection of certain accounts receivable described on Schedule 1.1(b) (the "Purchased Receivables");

HDEMB 0/389523.3

EXHIBIT
Dx-5

(c)    Equipment and Machinery. All of the machinery, equipment, tools and other items of personal property owned by the Seller described on Schedule 1.1(c) (the "Equipment");.

(d)    Inventory. (i) All of the Seller's inventory of supplies and parts, held for sale to customers in the normal course of business, either on hand at the Business, on order, or in transit thereto described on Schedule 1.1(d) (the "Inventory");

(e)    Lists and Records. All records of the Seller relating to the Purchased Assets including, without limitation, property records, inventory records, employment records, contract files, purchasing and sales records and customer and vendor lists (the "Lists and Records");

(f)    Prepaid Items. All of the prepaid expenses of the Seller which are assignable and acceptable to the Purchaser and which are described on Schedule 1.1(f) and all similar items paid prior to the Closing Date (the "Prepaid Items");

(g)    Telephone Numbers, Etc. All telephone, telecopier and telex numbers of the Business and all of the Business listings in all telephone books and directories described on Schedule 1.1(g);

(h)    Governmental Permits and Licenses. All of the permits, licenses, registrations and qualifications which are held by the Business and which are transferable to the Purchaser and relate to the Purchased Assets or the Business;

(i)    Goodwill. The goodwill of the Business;

(j)    Vehicles. Title to the vehicles, including any leased vehicles (to be assigned to Purchaser) described on Schedule 1.1(j).;

(k)    Miscellaneous. Office furniture, office equipment supplies and all shelving and racking located at the Chicago Office and Boston Office.

1.2    Excluded Assets. Notwithstanding the foregoing, the following assets of the Seller (the "Excluded Assets") will be retained by the Seller and shall not be included in the Purchased Assets:

(a)    Due From Customers. All amounts due from customers not specifically assigned to Purchaser hereunder;

(b)    Corporate Books. Any books and records of the Seller and accounting and tax records which do not relate to the Purchased Assets or Assumed Liabilities, as defined herein.

(c)    Agreements. All agreements and other contracts not specifically assumed by Purchaser.

(d)    Cash. All cash and cash equivalent on hand and in banks, certificates of deposit, commercial paper, and securities of the Seller.

(e)    Other Accounts Receivable.  Excluding the Purchased Receivables, all other accounts and notes receivable of the Seller, including, without limitation, all accounts receivable arising from construction contracts not assigned to Purchaser hereunder.

1.3    Intentionally Omitted.

1.4    Purchase Price.  In consideration of the sale and assignment of the Purchased Assets, Purchaser agrees to assume and become responsible for (i) the accounts payable, payables to subcontractors, liabilities and obligations of Seller described on Schedule 1.4 hereof ("Assumed Liabilities") and (ii) the obligations of Seller under the Assumed Contracts.

1.5    Closing.  The consummation of the transactions contemplated hereby (the "Closing") shall occur on the later to occur of (i) August 31, 2004 or (ii) receipt of all Required Consents as defined in Section 1.11(b) hereof.

1.6    No Assumption of Liabilities.  Except for the Assumed Liabilities and Assumed Contracts, as set forth in Section 1.4 above, Seller shall retain, and Purchaser shall not assume or be responsible or liable with respect to, any indebtedness, liability or obligation of Seller or otherwise relating to the Business or any other business operated by Seller in the Offices or in other offices, of any kind whatsoever whether fixed, absolute, contingent or otherwise, known or unknown, due or to become due, accrued or not (collectively, "Liabilities").  Without limiting the foregoing, the following Liabilities of Seller shall not be assumed or discharged by Purchaser and Seller shall retain such Liabilities and discharge such Liabilities when due: (i) all Liabilities relating to, existing in connection with, or arising out of, the Business as operated prior to the Closing Date, or the ownership, possession, use, operation or sale or other disposition prior to the Closing Date of any of the Purchased Assets (or any other assets, properties, rights or interests associated at any time prior to the Closing Date with the Business); (ii) all Liabilities (federal, state, local and foreign) for taxes, including Liabilities for federal and state income and employee FICA taxes which an employer is legally obligated to withhold, Liabilities for employer FICA and unemployment taxes, Liabilities for sales and use taxes of any kind, Liabilities for property taxes and any taxes arising as a result of the transfer of the Purchased Assets, termination of employees or otherwise by virtue of the consummation of the transactions contemplated hereby; (iii) Liabilities for payables of Seller; (iv) Liabilities relating to any litigation, action, suit, claim, investigation or proceeding pending on the date hereof, or instituted hereafter, based in whole or in part on events or conditions occurring or existing in connection with, or arising out of, or otherwise relating to, the Business or the ownership, possession, use, operation, sale or other disposition prior to the Closing Date of any Purchased Assets (or any other assets, properties, rights or interests associated at any time prior to the Closing Date, with the Business); (v) Liabilities (including Liabilities arising from termination of employment) to any person at any time employed or considered for employment by Seller or its affiliates or their respective predecessors in interest in the Business or otherwise at any time with respect to incidents, events, exposures or circumstances occurring at any time during the period or periods of any such person's employment by Seller or its affiliates or their respective predecessors in interest, whenever such claims mature or are asserted.

1.7    Removal of Assets.  Prior to the Closing, Seller shall remove all Excluded Assets from the Offices and deliver the Offices at Closing with all of the Purchased Assets.

1.8    Interim Operations.  Between the date hereof and through the Closing Date (the "Interim Period"), Seller covenants and agrees to use its best efforts to continue to operate the Business in at least the

same manner that it previously operated the Business, provided, however, it is understood that Seller may begin to close other business offices, excluding the Offices hereunder. In consideration thereof, Seller shall be entitled to receive all revenues collected during the Interim Period by the Offices less amounts necessary to pay salaries and overhead expenses of the Offices. Such sums shall be retained by the Offices prior to remitting any other funds to Seller.

1.9    Security Deposit. The security deposit held by the Chicago Landlord under the Chicago Lease and by the Boston Landlord under the Boston Lease shall be assigned by Seller to Purchaser contemporaneously with the assignment of the leases.

1.10    Salaries; Bonuses. All salaries and bonuses due and owing or accrued through the Closing Date shall be paid by Seller to the Employees, as defined herein, on or before the Closing Date. Any accrued vacation pay and any employee termination liabilities shall be borne by Purchaser.

1.11    Conditions Precedent. It shall be a condition precedent to Purchaser's obligation to close this transaction that the following are satisfied in Purchaser's sole discretion:

(a)    Prior to Closing, Seller shall procure (i) the Chicago Landlord's written consent to the assignment of the Chicago Lease to Purchaser in a form satisfactory to Purchaser and (ii) the Boston Landlord's written agreement to an extension of the term of the Boston Lease and the assignment of the Boston Lease to Purchaser in a form satisfactory to Purchaser.

(b)    Prior to Closing, Seller shall use its best efforts to procure the written consent of the owners or contracting parties under the Assumed Contracts being assigned to Purchaser listed on Schedule 1.1(a). It shall be a condition precedent that the consents of the parties listed on Schedule 1.11(b) be procured prior to the Closing Date (the "Required Consents").

(c)    The absence of the occurrence of any material event adversely affecting the Business or the Purchased Assets.

(d)    Receipt, issuance, assignment or transfer of all licenses, intellectual property and permits required by Purchaser to operate the Business.

(e)    Seller shall cease operating under the name, "RAS Builders", in the metropolitan areas of Chicago and Boston.

(f)    No bankruptcy or insolvency proceedings shall have been filed by or against Seller.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby makes the following representations and warranties to Purchaser, all of which representations and warranties are true and correct as of the date of this Agreement and will be true and correct on the Closing Date:

2.1    Corporate Organization; Ownership. Seller is a corporation duly organized and validly existing under the laws of the State of Colorado and is authorized to do business in, and is in good standing

H0EMB0/3893223    4

under the laws of, the State of Illinois and the State of Massachusetts, and has all requisite power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and to enter into this Agreement and perform all of the duties and obligations required of it by, under or pursuant to this Agreement.

2.2    Duly Authorized. This Agreement has been fully authorized by all requisite action, and upon the execution and delivery of this Agreement by Seller, it will be legally binding upon Seller in accordance with its terms and conditions. In connection therewith, Seller shall deliver to Purchaser at Closing, duly authorized and executed corporate resolutions authorizing and approving this Agreement and the transactions it contemplates, which resolutions shall be executed by all shareholders of Seller.

2.3    Encumbrances. Subject to Section 7.1 hereof, as of the Closing Date, the Purchased Assets will be free and clear of any and all security interests, liens, claims, encumbrances and liabilities of every kind and nature whatsoever.

2.4    Contracts: Purchased Receivables.

(a)    No oral or written Assumed Contracts shall exist as of the Closing Date between Seller and any other person, persons or entity, involving the Purchased Assets and neither the execution of this Agreement nor the consummation of the transactions provided for herein will conflict with, result in, or constitute a breach of, or constitute a default under, any court order, law, regulation, rule, agreement or obligation to which Seller is subject. Except for this Agreement and the Assumed Contracts listed on Schedule 1.1(a) hereof, there exists no oral or written contract, commitment, obligation or liability of any kind or nature whatsoever, in respect to the Purchased Assets which will survive the Closing and Seller shall not hereafter enter into any contract for, or make any commitment or obligation, which will bind Purchaser as successor-in-interest, with respect to the Purchased Assets. All of the Assumed Contracts listed on Schedule 1.1(a) are in full force and effect and neither Seller nor the contracting party is in default thereunder and no condition exists which with the giving of notice and the passage of time, will ripen into an event of default thereunder. Seller has not pledged its rights, title or interest in the Assumed Contracts to any third party.

(b)    All of the Purchased Receivables listed on Schedule 1.1(b) are current, valid, collectible and are not subject to any bad debts, write-offs or write-downs.

2.5    Notices. Seller has provided Purchaser with copies of all notices received by it prior to the date hereof relating to the Leased Premises, the Purchased Assets, the Business or the city and state licenses given pursuant to any federal, state, city or municipal law, ordinance, regulation or order.

2.6    Seller Liability. Seller shall be solely liable for the payment of all costs and expenses, liabilities, obligations and claims arising out of the ownership and operation of the Business, the Leased Premises and the Purchased Assets prior to the Closing Date.

2.7    Brokers. Seller has neither retained, nor used the services of, any individual or entity in such a manner as to entitle such individual or entity to any compensation for brokers' fees, agents' commissions, finders' fees or the like with respect to this Agreement and the transactions contemplated hereby.

HDEMB 0/3 97523.J

5

regulation. Seller does not hold any Equipment of any other person or entity pursuant to any consignment, lease or similar arrangement and no other person or entity has any right, title or interest in the Equipment. Schedule 2.12 contains a complete and accurate list of all warranties and guaranties with respect to any of the Equipment.

2.13    Title to Purchased Assets. Seller holds and owns full, unconditional, good and marketable title to all of the Purchased Assets, in each case free and clear of all Liens. All Liens shall be released prior to or contemporaneously with the Closing. No person or entity other than Seller, including Seller's stockholders and affiliates, has any rights in, to or under such Purchased Assets.

2.14    Litigation. Except as set forth on Schedule 2.14, there are no claims, disputes, actions, suits, proceedings or investigations (collectively, "Claims") pending or, to Seller's current actual knowledge, threatened before any federal, state or local court or governmental or regulatory authority, or before any arbitrator of any nature, brought by or against Seller or any of Seller's stockholders, affiliates, officers, directors, employees or agents involving, affecting or relating to any of the Purchased Assets, the Business or the transactions contemplated by this Agreement nor, to the current actual knowledge of Seller, is there any basis for any such Claim. Neither Seller nor any of the Purchased Assets is subject to any order, writ, judgment, award, injunction or decree of any federal, state or local court or governmental or regulatory authority or arbitrator. To the extent any Claims relate to any of the Assumed Contracts or other Purchased Assets, Purchaser agrees to undertake the defense of each such Claim and, if necessary, substitute into such lawsuits as the party defendant.

2.15    Consents and Approvals. Seller has obtained all necessary consents, waivers, authorizations and approval of all governmental and regulatory authorities and of all other persons or entities required in connection with the execution, delivery and performance by Seller of this Agreement.

2.16    Labor Agreement. Seller is not a party to any collective bargaining agreement or any other agreement with any labor organization applicable to its employees.

2.17    Accuracy of Information. All documents, agreements and other materials delivered by or on behalf of Seller in connection with this Agreement and the transactions contemplated hereby are complete and accurate. All documents referred to in this Agreement, including in the Schedules or Exhibits, have been delivered to Purchaser. Seller acknowledges that the statements contained in this Section shall not be deemed to limit or qualify any of the other representations or warranties contained in this Agreement or in the Schedules or Exhibits hereto.

2.18    No Violation. The execution, delivery and performance by Seller of this Agreement and the transactions contemplated hereby do not and will not conflict with or result in any violation of, or constitute a breach or default under, any term of the charter documents, by-laws or other organizational documents of Seller, of any agreement, permit or other instrument to which Seller is a party or by which Seller or any of its affiliates is bound or to which any of the Business or any of the Purchased Assets is subject, or, to Seller's current actual knowledge, any law, regulation, order, judgment or decree of any court or other governmental or regulatory authority to which any of the same are bound or subject, and will not result in the creation of any Lien upon any of the Purchased Assets.

2.19    No Material Adverse Change. Since August 1, 2004, the Seller has operated the Business in the ordinary course and there has not been:

## ARTICLE IV
## CLOSING DOCUMENTS

4.1     Seller's Closing Deliveries.  On the Closing Date, Seller shall deliver to Purchaser the following, all in form reasonably satisfactory to Purchaser:

(a)     Bill of Sale in the form attached hereto as Exhibit "A";

(b)     UCC-3's of all Liens or such documents which shall be reasonably satisfactory to Purchaser, including payoff letters which shall specify the amounts to be paid to release any Liens;

(c)     Certificate of Good Standing of Seller;

(d)     Certified copy of corporate resolutions of the board of directors and shareholders of Seller authorizing this transaction; and

(e)     Assignment and Assumption of Lease and the Landlord's consent thereto (Chicago Lease and Boston Lease);

(f)     Assignment of all warranties and guaranties;

(g)     Assignment of all licenses and permits;

(h)     Assignment and Assumption of all Assumed Contracts and the Required Consents in the form of Exhibit "B";

(i)     Assignment and Assumption of all Purchased Receivables in the form of Exhibit "C";

(j)     Assignment and Assumption of the Assumed Liabilities in the form of Exhibit "D";

(k)     Keys to the Leased Premises in Seller's possession;

(l)     Certificate remaking Seller's representations and warranties set forth in Article II hereof in the form of Exhibit "E"; and

(m)     A certificate by the Secretary of Seller certifying as to the Articles of Incorporation and Bylaws of the Seller.

4.2     Purchaser's Closing Deliveries.  On the Closing Date, Purchaser shall deliver to Seller the following:

(a)     Certificate of Good Standing of Purchaser;

(b)     Certified copy of the resolutions of the shareholders of Purchaser authorizing this transaction;

(c)     Assignment and Assumption of Lease (Chicago and Boston);

(d)     Assignment and Assumption of Assumed Contracts;

(e)     Assignment and Assumption of Purchased Receivables; and

(f)     Assignment and Assumption of Assumed Liabilities.

## · ARTICLE V
## INDEMNIFICATION

5.1     Indemnification by Seller.  Seller agrees to indemnify and hold harmless the Purchaser, its shareholders, partners, members, officers and directors from and against any and all losses, demands, damages, claims, actions or causes of action, assessments, deficiencies, liabilities, suits, judgments, costs, attorneys' fees and expenses incurred by reason of claims, obligations, debts, demands or liabilities existing or arising against Seller, the Purchased Assets or the Business (including all construction contracts and

liabilities of Seller excluding the Assumed Contracts and Assumed Liabilities), prior to the Closing Date of this transaction, or arising from any breach or non-fulfillment of any warranty, covenant, indemnity, omission of a material fact, or representation on the part of the Seller under this Agreement or from any misrepresentation in or occasioned by any instrument furnished by Seller under this Agreement, or the failure of Seller to perform any obligation owing by Seller to Purchaser under this Agreement.

5.2    <u>Indemnification by Purchaser</u>.  Purchaser agrees to indemnify and hold harmless the Seller, its shareholders, officers and directors, from and against any and all losses, demands, damages, claims, actions or causes of actions, assessments, deficiencies, liabilities, suits, judgments, costs, attorneys' fees and expenses incurred by reason of claims, obligations, debts, demands or liabilities existing or arising against Purchaser, from and after the Closing Date, or arising from any breach or non-fulfillment of any warranty, covenant, indemnity or representation on the part of Purchaser under this Agreement or from any misrepresentation in or occasioned by any instrument furnished by Purchaser under this Agreement, or the failure of Purchaser to pay or perform any obligation owing by Purchaser to Seller under this Agreement.

5.3    <u>Demand</u>.  Seller and Purchaser agree that promptly upon the receipt by either of any demand, assertion or claim by a third person or entity with respect to which the recipient is entitled to indemnification from the other party, the recipient shall so notify the other party in writing and such notification shall contain a statement of such information respecting the same as the recipient may then have, and the other party agrees, subject to the provisions of contest hereinafter stated, to pay over to the party indemnified within ten (10) days of such notice, such monies as shall be sufficient to pay the full amount of any such demand or claim, together with any interest that may be payable with respect thereto; PROVIDED, HOWEVER:

(a)    Each party reserves the right to contest and defend by all appropriate legal or other proceedings any such claims, assertions or demands which it may be called upon to pay under the provisions hereof, provided that notice of intention to so contest shall be delivered to the other party within ten (10) days from the date the indemnifying party has been notified of the existence of such demand, assertion or claim, and no such contest shall result in any forfeiture, attachment or lien upon any property of the party indemnified and the indemnifying party shall pay all costs and expenses of such contest, including any and all reasonable attorneys' fees; and

(b)    Any contest may be prosecuted in the name of either party hereto as may be appropriate, but the party indemnified shall have the right to participate in such proceedings and be represented by its own attorneys at its own cost and expense or at the cost and expense of the indemnitor if it fails to diligently prosecute such contest.  In the event of any such contest, the indemnifying party shall not be obligated to make any payment to such third party with respect thereto until all remedies available to it shall have been exhausted.

(c)    The failure of a party entitled to indemnification hereunder to notify the other party set forth above shall not relieve the other party of its obligations hereunder, provided the foregoing does not constitute a waiver by the indemnifying party for direct damages from such failure.

5.4    <u>Survival</u>.  The respective representations, warranties and covenants of each of the parties hereto shall be deemed to be remade as of the Closing Date and shall survive the Closing.

## ARTICLE VI
### NONCOMPETITION: NON-SOLICITATION

6.1    Covenant not to Compete.  In consideration of the Purchaser's agreement to purchase the Purchased Assets (and assume the Assumed Liabilities are Assumed Contracts), Seller and Robert A. Shupe covenant and agree not to directly or indirectly (whether as a partner, owner, shareholder, consultant, employee or otherwise) establish, participate in, manage, operate, control, own, invest in or consult with a business similar to or competitive with the Business in the metropolitan areas of Chicago, Illinois and Boston, Massachusetts for a period of two (2) years from and after the Closing Date.  The foregoing covenants shall include any entity owned or controlled by Seller or Robert A. Shupe.  This provision shall survive the Closing.

6.2    Non-Solicitation of Clients and Customers. From and after the Closing Date, Seller shall not take any action, directly or indirectly, whether for its or his own account or for or with any other person or entity whatsoever which engages in any business or activities competitive with the Purchaser, to solicit, interfere with, or endeavor to entice away from the Purchaser any person or entity of any kind whatsoever which was or is a client or customer of the Business in Chicago, Illinois or in Boston, Massachusetts or any potential client or customer in Chicago, Illinois or in Boston, Massachusetts with which the Seller was theretofore actively engaged in sales or promotional efforts, and Seller shall not approach any such customer or client or potential customer or client for such purposes or knowingly cooperate with the taking of any such action by any other person or entity.

6.3    Non-Solicitation of Employees. From and after the date of this Agreement, Seller shall not take any action, directly or indirectly, to solicit or induce employees of Seller to terminate their employment with Purchaser after the Closing Date.

## ARTICLE VII
### MISCELLANEOUS PROVISIONS

7.1    Notices. Any notice in respect to this Agreement or to any transaction or other matter arising out of or relating to this Agreement shall be in writing and served on the party to whom it is directed at the following addresses:

| | |
|---|---|
| If to Seller: | RAS Builders, Inc. |
| | 180 East Hampden Avenue |
| | Englewood, Colorado 80113 |
| | |
| If to Purchaser: | William J. DiSanto |
| | 9747 West Foster |
| | Schiller Park, Illinois 60176 |
| | |
| with a copy to: | Weinberg Richmond LLP |
| | 333 West Wacker Drive, Suite 1800 |
| | Chicago, Illinois 60606 |
| | Attn:  Harold S. Dembo |

HDEMB03/899573.3

12

Any notice may be served personally by registered or certified mail, postage prepaid, return receipt requested. If sent by registered or certified mail, a notice shall be deemed to have been given as of the third business day following its deposit, properly addressed with postage fully prepaid, in the U.S. Mail. The address at which notice is to be given any party may be changed by giving notice to the other party as provided above.

7.2    Remedies. Any remedies provided herein are not exclusive, but cumulative and are in addition to any remedies which may be provided by law or in equity.

7.3    Governing Law. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Illinois.

7.4    Time of the Essence. Time is of the essence of this Agreement and all provisions herein relating thereto shall be strictly construed.

7.5    Headings. The Section headings are inserted for convenience only and are in no way intended to interpret, define, or limit the scope or content of this Agreement or any provision thereof.

7.6    Entire Agreement. This Agreement, together with the Schedules and Exhibits attached hereto, constitutes the entire agreement of the parties and supersedes all prior agreements between the parties, whether oral or written, relative to the subject matter of this Agreement. Further, this Agreement may not be amended except by written instrument executed by Seller and Purchaser, and no terms hereof may be waived except by a written instrument executed by the party waiving compliance.

7.7    Expenses. Seller and Purchaser shall each pay their respective costs and expenses, including attorneys' fees, incident to the carrying out of this Agreement, whether or not the transactions contemplated hereby are consummated.

7.8    Prevailing Party. In the event of any dispute, controversy, litigation or legal action arising from this Agreement, Seller and Purchaser agree that the prevailing party shall be reimbursed for its reasonable attorney's fees and other costs related to the dispute or legal action.

7.9    Counterparts. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

7.10    Further Assurances. Upon the request of Purchaser at any time on or after the Closing Date, Seller will forthwith execute and deliver such further instruments of assignment, transfer, conveyance, endorsement, direction or authorization and other documents as Purchaser or its counsel may reasonably request in order to perfect title of Purchaser and its successors and assigns in and to the Purchased Assets or otherwise to effectuate the purpose of this Agreement.

7.11    Successors and Assigns; Assignability; Beneficiaries. This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective successors, heirs, representatives and assigns, as the case may be; provided, however, that no party shall assign or delegate this Agreement or any of the rights or obligations created hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld. However, Purchaser shall have the right to assign and transfer

its rights, title and interest in, to and under Agreement to an entity owned or controlled by or affiliated with Purchaser. Except as expressly set forth herein, nothing in this Agreement shall confer upon any persons not a party to this Agreement, or the legal representatives of such persons, any rights or remedies of any nature or kind whatsoever under or by reason of this Agreement.

7.12    <u>Announcement</u>.  Purchaser shall have the right to announce to the public the foregoing transaction.

7.13    <u>Waiver of Conflicts</u>.  Purchaser and Seller acknowledge that Weinberg Richmond LLP ("WR LLP") is representing Purchaser in this matter.  WR LLP has performed legal services and has acted as legal counsel for Seller in other matters. Notwithstanding the foregoing, the parties hereby agree to waive the conflict of interest.  Seller has had the opportunity to receive advice from separate legal counsel in this matter.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK;
SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, Seller and Purchaser have executed this Agreement on the date first above written.

PURCHASER:                              SELLER:

ENGLEWOOD CONSTRUCTION, INC.            RAS BUILDERS, INC.


By: _____          By: _____
Name: William J. R. Sorto              Name: _____
Its: President                         Its: _____

## JOINDER

The undersigned hereby joins in the execution of this Agreement for purposes of being bound by the terms of Section 6.1, 6.2 and 6.3 hereof.

Robert A. Shupe

Dated: 4/1/04, 2004

EXHIBIT "A"

BILL OF SALE

Seller, _____, an Illinois corporation, in consideration of TEN AND NO/100 DOLLARS ($10.00), the receipt whereof is hereby acknowledged, does hereby sell, assign, transfer and set over to Buyer, _____, an Illinois corporation, free and clear of all liens, and with full warranties of title, all of the Purchased Assets listed on Schedule "A-1" attached hereto and made a part hereof.

TO HAVE AND TO HOLD all of Seller's right, title, and interest, if any, and to the extent limited herein, in and to the aforesaid Purchased Assets unto Buyer, its successors and assigns forever.

All capitalized terms used in this Bill of Sale and not otherwise defined shall have the meanings given in the Asset Purchase Agreement dated _____, 2004 between the parties.

IN WITNESS WHEREOF, Seller has signed and sealed this Bill of Sale this ____ day of _____, 2004.


By: _____

_____ President

STATE OF ILLINOIS )
                 ) SS
COUNTY OF COOK   )

I, _Kim Redmond_, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that _Robert A Shipe_, the _____ President of _RAS Builders_, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as _____ President of said corporation, as his free and voluntary act and as the free and voluntary act of said corporation, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this _6th_ day of _August_, 2004.

_Kim Redmond_
Notary Public

OFFICIAL SEAL
KIM REDMOND
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 09-15-06

SCHEDULE "A-1"

TO THE BILL OF SALE

EXHIBIT "B"

## ASSIGNMENT OF CONSTRUCTION CONTRACT

This ASSIGNMENT OF CONSTRUCTION CONTRACT (hereinafter referred to as the "Assignment") is made as of the ____ day of _____, 2004 (hereinafter the "Effective Date"), by and between RAS BUILDERS, INC., a Colorado corporation (hereinafter referred to as "Assignor") and ENGLEWOOD CONSTRUCTION, INC., an Illinois corporation (hereinafter referred to as "Assignee").

R E C I T A L S :

A.    Assignor entered into that certain Construction Contract dated _____, (hereinafter referred to as the "Construction Contract") with _____ (hereinafter referred to as "Contracting Party") for certain work as described in said Construction Contract at the property described therein (hereinafter referred to as the "Project").

B.    Assignor desires to assign their rights, title and interest in, to and under the Construction Contract to Assignee and Assignee desires to accept said assignment, subject to all of the terms and provisions of the Construction Contract.

Therefore, in consideration of the recitals specified above which are by this reference incorporated herein and the benefits to be derived from the mutual observance of the covenants and provisions specified below, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Assignor and Assignee agree as follows:

1.    Assignment of Construction Contract.    Assignor hereby assigns to Assignee all of Assignor's rights, title and interest in and to the Construction Contract, effective as of the date hereof. Assignor represents and warrants to Assignee that: (i) Assignor is not in default under the Construction Contract, (ii) Assignor has received no notices from Contracting Party declaring Assignor to be in default under the Construction Contract, (iii) to the best of Assignor's knowledge, Contracting Party is in not default under the Construction Contract, (iv) the Construction Contract and all of the change orders to the Construction Contract are attached hereto as Schedule "A-1", and (v) Assignor has been paid $_____ of the total amount of the Construction Contract ("Consideration") by Contracting Party, and $_____ of the total amount of the Construction Contract still remains unpaid.

2.    Assumption of Construction and Contract. Assignee hereby assumes from Assignor all of Assignor's rights, title and interest in and to the Construction Contract, effective as of the date hereof, and Assignee agrees and covenants to perform all obligations, duties, agreements and covenants of Assignor under the Construction Contract from and after the date hereof.

3.    Condition Precedent.    The assignment and assumption contemplated herein shall be effective upon the receipt of the Acknowledgment executed by Contracting Party.

4.    General Provisions.

A.    Descriptive Headings. Titles to paragraphs and subparagraphs are intended only for convenience of reference and shall be given no effect in the construction or interpretation of this Assignment.

B.    Governing Law. This Assignment and the performance hereof shall be construed and interpreted in accordance with the laws of the State of Illinois.

C.    Severability. If any one or more provisions of this Assignment shall be adjudged or declared invalid or unenforceable by a court of competent jurisdiction, the validity or enforceability of all or any other provision of this Assignment shall not be affected thereby. Accordingly, in such event: (i) this Assignment shall be construed as if it did not contain the particular clause(s) so declared to be invalid or unenforceable, and (ii) the rights and obligations of the parties shall be construed and enforced accordingly.

D.    Time. Time is of the essence of this Assignment.

IN WITNESS WHEREOF, Assignor and Assignee have caused this Assignment to be duly executed on the date first appearing above.

ASSIGNOR:

RAS BUILDERS, INC., a Colorado corporation

By: _____

Its: _____

ASSIGNEE:

ENGLEWOOD CONSTRUCTION, INC., an Illinois corporation

By: _____

Its: _____

## ACKNOWLEDGMENT

The undersigned hereby acknowledges and consents to the above Assignment and also further acknowledges and agrees as follows:

(a)    that the Construction Contract is in full force and effect and that there have been no amendments or modifications of the Construction Contract;

(b)    that the undersigned have no set-offs, claims or defenses to the enforcement of the Construction Contract;

(c)    the Construction Contract and all of the change orders to the Construction Contract are attached hereto as Schedule "A-1"; and

(d)    The undersigned has paid to Assignor $_____ of the total amount of the Construction Contract and $_____ of the total amount of the Construction Contract remains unpaid.

CONTRACTING PARTY:

_____

By: _____

Name: _____

Its: _____

Schedule A-1

Construction Contract

EXHIBIT "C"

ASSIGNMENT AND ASSUMPTION OF PURCHASED RECEIVABLES

This Assignment and Assumption is made by and between RAS BUILDERS, INC., a _____ corporation ("Assignor") and _____ ("Assignee") this _____ day of _____, 2004, in connection with the purchase and sale of certain assets of Assignor.

WHEREAS:

A.     Assignor is the seller of certain assets ("Assets") owned by Seller and used in its construction business ("Business").

B.     Assignor and Assignee have entered into a certain Asset Purchase Agreement dated _____ ("Agreement") for the sale of the Assets (for purposes of this Assignment and Assumption, initially capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement); and

C.     In connection with the conveyance of the Assets by the Assignor to Assignee, Assignor has agreed to assign to Assignee certain receivables accruing out of operation of Assignor's business with respect to said Assets ("Purchased Receivables").

THEREFORE:

In consideration for Ten Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree to the following:

1.     Assignor hereby assigns, transfers, sets over and conveys to Assignee the Purchased Receivables specifically listed on Schedule "C-1".  Assignor acknowledges that, in consideration of the consummation of the closing as set forth in the Agreement, Assignor disclaims and relinquishes any rights to the Purchased Receivables.  In the event Assignor collects any Purchased Receivable after the date hereof, Assignor covenants and agrees to promptly remit same to Assignee.  Upon request, Assignor shall advise the obligors that their respective receivables have been assigned to and purchased by Assignee and payment should be made to Assignee.

2.     Excluding the Purchased Receivables, Assignor shall remain the owner of any other accounts receivable or notes receivable relating to the Assets arising prior to the date hereof and its business ("Retained Receivables"), and Assignor reserves the right to collect said Retained Receivables.

3.     Assignee shall be have the unrestricted right to collect, discount and sue for collection all of the Assumed Receivables.

4.     This Assignment shall be binding upon and inure to benefit of Assignor, Assignee and their respective heirs, successors and assigns.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption this ___ day of _____, 2004, which Assignment is effective this date.

ASSIGNOR:                              RAS BUILDERS, INC.

                                       By: _____
                                       Its: _____

ASSIGNEE:                              ENGLEWOOD CONSTRUCTION, INC.

                                       By: _____
                                       Its: President

. EXHIBIT "D"

ASSIGNMENT AND ASSUMPTION OF ASSUMED LIABILITIES

This Assignment and Assumption is made by and between RAS BUILDERS, INC., a _____ corporation ("Assignor") and _____ ("Assignee") this _____ day of _____, 2004, in connection with the purchase and sale of certain assets of Assignor.

WHEREAS:

A.    Assignor is the seller of certain assets ("Assets") owned by Seller and used in its construction business ("Business").

B.    Assignor and Assignee have entered into a certain Asset Purchase Agreement dated _____ ("Agreement") for the sale of the Assets (for purposes of this Assignment and Assumption, initially capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement); and

C.    In connection with the conveyance of the Assets by the Assignor to Assignee, Assignee has agreed to assume certain liabilities accruing out of operation of Assignor's business with respect to said Assets ("Assumed Liabilities").

THEREFORE:

In consideration for Ten Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree to the following:

1.    Assignor hereby assigns, transfers, sets over and conveys to Assignee the Assumed Liabilities specifically listed on Schedule "D-1".

2.    Excluding the Assumed Liabilities, Assignor shall remain liable to fulfill, perform and discharge all other obligations relating to the Assets arising prior to the date hereof and its Business ("Retained Liabilities"). Assignor shall defend, indemnify and hold harmless Assignee from any liability, damages, causes of action, expenses and reasonable attorneys' fees incurred by Assignee by reason of the failure of Assignor to fulfill, perform and discharge all of its obligations relating to the Assets which arose prior to the date hereof.

3.    Assignee shall be liable to pay, settle, perform and discharge the Assumed Liabilities. Assignee shall defend, indemnify and hold harmless Assignor from any liability, damages, causes of action, expenses and reasonable attorneys' fees incurred by Assignor by reason of the failure of Assignee to pay, settle and discharge the Assumed Liabilities.

4.    . This Assignment shall be binding upon and inure to benefit of Assignor, Assignee and their respective heirs, successors and assigns.

HDEMBD/589573.3                                  D - 1

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption this ___ day of _____, 2004, which Assignment is effective this date.

ASSIGNOR:                          RAS BUILDERS, INC.

                                   By: _____
                                   Its: _____

ASSIGNEE:                          ENGLEWOOD CONSTRUCTION, INC.

                                   By: _____
                                   Its: _____

HDEMB 0/349533.3                           D - 2

.SCHEDULE D-1

<u>List of Assumed Liabilities</u>

. EXHIBIT "E"

## CERTIFICATE REMAKING REPRESENTATIONS AND WARRANTIES

THIS RE-AFFIRMATION OF REPRESENTATIONS AND WARRANTIES ("Re-Affirmation") is made as of this _____ day of _____, 2004 by RAS BUILDERS, INC., a _____ _____ (hereinafter referred to as "Seller").

### WITNESSETH:

WHEREAS, that certain Asset Purchase Agreement dated as of _____, 2004 ("Contract") was entered into between Seller and ENGLEWOOD CONSTRUCTION, INC., as purchaser ("Purchaser"), pertaining to the purchase and sale of certain assets owned by Seller and arising out of its construction business; and

WHEREAS, as a condition to the closing of the transaction contemplated under the Contract, Seller is required to execute and deliver this Re-Affirmation.

NOW, THEREFORE, for Ten Dollars ($10.00) in hand paid, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby certifies to Purchaser that all of the representations and warranties made by Seller pursuant to the Contract are true and correct as of the date hereof and are reaffirmed and remade as of the date hereof to Purchaser by Seller, except as shown on Exhibit "A" attached hereto and made a part hereof. This Affirmation has been delivered by Seller to Purchaser pursuant to the terms of the Contract and nothing herein contained is intended to modify the terms of the Contract.

IN WITNESS WHEREOF, Seller has executed and delivered this Re-Affirmation as of the day and year first above written.

RAS BUILDERS, INC.

By: _____

Its: _____

EXHIBIT "A"

EXCEPTIONS TO REPRESENTATIONS AND WARRANTIES

## SCHEDULE 1.1(a)

## ASSUMED CONTRACTS

| JOB NO. | NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| 03.0398 | C.D. PEACOCK | 342 NORTH MICHIGAN AVENUE | CHICAGO | IL | 60601 |
| 04.0059 | HARLEM FURNITURE | 2525 HARLEM AVENUE | CHICAGO | IL | 60607 |
| 04.0103 | CHAMPPS RESTAURANT | 16165 S. LAGRANGE ROAD | ORLAND PARK | IL | 60467 |
| 04.0128 | HAWTHORN CENTER REMODEL | HAWTHORN CENTER | VERNON HILLS | IL | 60061 |
| 04.0155 | FOX VALLEY CENTER REMODEL | FOX VALLEY CENTER | AURORA | IL | 60504 |
| 04.0252 | T MOBILE | 315 ROUTE 206 | HILLSBOROUGH | NJ | 08844 |
| 04.0267 | DISCOUNT TIRE | 765 E. BOUGHTON ROAD | BOLINGBROOK | IL | 60440 |
| 04.0277 | AVENUE | BRICKYARD MILL | CHICAGO | IL | 60639 |
| 04.0296 | STIR CRAZY | 28252 DIEHL ROAD | WARRENVILLE | IL | 60555 |
| 04.0298 | RED ROOF INN | 2580 CROOKS ROAD | ROCHESTER HILLS | MI | 48309 |
| 04.0299 | RED ROOF INN | 24300 SINCOLA COURT, NE | FARMINGTON HILLS | MI | 48335 |
| 04.0300 | RED ROOF INN | 3100 LITTLE MACK AVENUE | ROSEVILLE | MI | 48066 |
| 04.0301 | OAK BROOK TERRACE ALTERATIONS | 18066 W. 22ND STREET | OAK BROOK | IL | 60523 |
| 04.0321 | SHOPPES @ FARMINGTON VALLEY-A2&G | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |
| 04.0322 | BEAUTY AND MAIN | DERBY STREET SHOPPES | HINGHAM | MA | 02043 |
| 04.0326 | RED ROOF INN | 2350 ROCHESTER ROAD | TROY | MI | 48083 |
| 04.0367 | GIORGIO ARMANI | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 |
| 04.0373 | NAUTICA | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 |
| 04.0398 | FOOD 4 LESS | 274 S. BOLINGBROOK ROAD | BOLINGBROOK | IL | 60440 |
| 05.0002 | JARED JEWELRY | 2414 ALGONQUIN COMMONS | ALGONQUIN | IL | 60102 |
| 05.0003 | SNIP-ITS | DERBY STREET HOPPES | HINGHAM | MA | 02043 |
| 05.0005 | BEAUTY AND MAIN | 2 ELM SQUARE | ANDOVER | MA | 01810 |
| 05.0006 | BRIGHT HORIZONS | WELLESLEY OFFICE PARK | WELLESLEY | MA | 02481 |
| 05.0009 | ULTA | 1696 CARL D. SILVER PARKWAY | FREDERICKSBURG | MA | 22404 |
| 05.0010 | J. JILL | VARIOUS LOCATIONS | CHICAGO | IL | 60611 |
| 05.0017 | REI | DERBY STREET SHOPPES | HINGHAM | MA | 02043 |
| 05.0023 | T MOBILE | PITTSFORD PLAZA | PITTSFORD | NY | 14616 |
| 05.0024 | CLADDAUGH IRISH PUB | ALGONQUIN COMMONS | ALGONQUIN | IL | 60102 |
| 05.0025 | THEATER TAKES FLIGHT | GLEN TOWN CENTER | GLENVIEW | IL | 60031 |
| 05.0031 | VANNILLABOX CONSTRUCTION | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |

1.1(a) - I

10901004041717.7

| JOB NO. | NAME | ADDRESS | CITY | STATE | ZIP |
|---------|------|---------|------|-------|-----|
| 05.0032 | BUILDINGS C,D,E,F,H&I | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |
| 05.0034 | DICK'S SPORTING GOODS | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |
| 05.0039 | MOTOPHOTO | WOODLAND COMMONS | BUFFALO GROVE | IL | 60089 |
| 05.0004 | JOANN FABRICS | 257 N. WEBER ROAD | BOLINGBROOK | IL | 60440 |
| 05.0042 | BEBE | 1245 WORCHESTER ROAD | NATICK | MA | 01760 |
| 05.0052 | SPORTS AUTHORITY | 444 CONNECTICUT AVENUE | NORWALK | CT | 06854 |
| 05.0053 | FREZADO | HARLEM PLAZA | SUMMIT | IL | 60501 |
| 05.0067 | NAUTICAKIDS OUTLETS | LIGHTPOINT PLACE PREMIUM OUTLETS | MICHIGAN | IN | 46360 |
| 05.0079 | RED ROBIN BURGERS | COUNTY AIRE COMMONS | BOLINGBROOK | IL | 60490 |
| 05.0081 | OFFICE DEPOT | 11145 W. LINCOLN HIGHWAY | FRANKFORT | IL | 60423 |
| 05.0083 | JC PENNEYS | ORLAND PARK MALL | ORLAND PARK | IL | 60462 |
| 05.0084 | OFFICE DEPOT | 7100 N. MANNHEIM ROAD | ROSEMONT | IL | 60018 |
| 05.0086 | J. JILL | TOWN CENTER & LEVI COMMONS | PERRYSBURG | OH | 43551 |
| 05.0086 | JOS A BANKS | ALGONQUIN COMMONS | ALGONQUIN | IL | 60102 |
| 05.0087 | HOLLYWOOD ENTERTAINMENT | VARIOUS LOCATIONS | BOSTON | MA | |

1.1(a) - 2

SCHEDULE 1.1(b)

<u>PURCHASED RECEIVABLES</u>

(See Attached)

Loni T:\THE\HEARLINE\REPORT\Customer\AR Aging Detail by Customer and Territory Sort w Subtotals.rpt
tatus: CHI

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

| ng As of Date | 08-10-2004 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ng Basis | Accounting data | | | | | | | | | |
| aid Only? | Yes | | | | | | | | | |

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | | | | | | | | | | |
| 0001 | | | ALBERTSON'S INC. | | | | | | | |
| .0042-05FEB | 10 | 04-0042 | I5516 FULL CONTR W/COS | 02-10-2004 | 44,131.00 | | | | | 44,131.00 |
| .0042-551EF | 10 | 04-0042 | Retainage billed | 02-25-2004 | 13,383.00- | | | | | 13,383.00- |
| .0042-05REV | 10 | 04-0042 | I5516 RE-REV APPL #5 | 07-20-2004 | 23,991.00 | | | | | 23,991.00 |
| | | | | | 349.00- | 349.00- | | | | |
| Customer Total | | | | | 54,390.00-* | 349.00-* | .00* | .00* | .00* | 54,739.00* |
| 0408 | | | ACCOR ECONOMY | | | | | | | |
| 0296-04APR | 10 | 04-0296 | I7191 APR PROG W/COS | 04-20-2004 | 34,627.50 | | | | 34,627.50 | |
| 0298-05JUL | 10 | 04-0298 | I7191 1001 CONTR - RET | 07-29-2004 | 70,597.72 | 70,597.72 | | | | |
| 0298-7191F | 10 | 04-0298 | Retainage billed | 07-29-2004 | 49,408.80 | 49,400.00 | | | | |
| 0298-CHNG1 | 10 | 04-0298 | C/O I7191-1 | 05-20-2004 | 10,346.00 | | | 10,346.00 | | |
| 0298-CHNG2 | 10 | 04-0298 | C/O I7191-2 | 05-20-2004 | 1,099.00 | | | 1,099.00 | | |
| 0298-CHNG3 | 10 | 04-0298 | C/O I7191-3 | 05-20-2004 | 32,431.00 | | | 32,431.00 | | |
| 0298-CHNG4 | 10 | 04-0298 | C/O I7191-4 | 05-20-2004 | 4,576.00 | | | 4,576.00 | | |
| 0298-CHNG5 | 10 | 04-0298 | C/O I7191-5 | 05-20-2004 | 761.00 | | | 761.00 | | |
| 0298-CHNG6 | 10 | 04-0298 | C/O I7191-6 | 05-20-2004 | 26,277.00 | | | 26,277.00 | | |
| 0298-CHNG7 | 10 | 04-0298 | C/O I7191 - 7 | 06-20-2004 | 15,053.00 | | 15,053.00 | | | |
| 0298-CHNG8 | 10 | 04-0298 | I7191 C/O #8 | 07-25-2004 | 10,479.00- | 10,479.00- | | | | |
| 0298-705BF | 10 | 04-0299 | Retainage billed | 05-11-2004 | 49,097.60 | | | 49,097.60 | | |
| | | | | | 49,097.60 | | | 49,097.60- | | |
| | | | | | 49,097.60 | | | 49,097.60 | | |
| 0299-CHG10 | 10 | 04-0299 | C/O I7030 - 10 | 06-20-2004 | 11,849.00 | | 11,849.00 | | | |
| 0299-CHG11 | 10 | 04-0299 | I7030 C/O #11 | 07-20-2004 | 62,324.00 | 62,324.00 | | | | |
| 0299-CHNG1 | 10 | 04-0299 | C/O I7030-1 | 05-20-2004 | 5,853.00 | | | 5,853.00 | | |
| | | | | | 5,853.00- | | | 5,853.00- | | |
| | | | | | 5,853.00 | | | 5,853.00 | | |
| 0299-CHNG2 | 10 | 04-0299 | C/O I7030-2 | 05-20-2004 | 1,069.00 | | | 1,069.00 | | |
| | | | | | 1,069.00- | | | 1,069.00- | | |
| | | | | | 1,069.00 | | | 1,069.00 | | |
| 0299-CHNG3 | 10 | 04-0299 | C/O I7030-3 | 05-20-2004 | 479.00 | | | 479.00 | | |
| | | | | | 479.00- | | | 479.00- | | |
| | | | | | 479.00 | | | 479.00 | | |
| 0299-CHNG4 | 10 | 04-0299 | C/O I7030-4 | 05-20-2004 | 517.00 | | | 517.00 | | |
| | | | | | 517.00- | | | 517.00- | | |
| | | | | | 517.00 | | | 517.00 | | |
| 0299-CHNG5 | 10 | 04-0299 | C/O I7030-5 | 05-20-2004 | 666.00 | | | 666.00 | | |
| | | | | | 581.90 | | | 581.90 | | |
| 0299-CHNG6 | 10 | 04-0299 | C/O I7030-6 | 05-20-2004 | 468.00 | | | 468.00 | | |
| 0299-CHNG7 | 10 | 04-0299 | C/O I7030-7 | 05-20-2004 | 2,376.00 | | | 2,376.00 | | |
| 0299-CHNG8 | 10 | 04-0299 | C/O I7030-8 | 05-20-2004 | 5,016.00 | | | 5,016.00 | | |
| 0299-CHNG9 | 10 | 04-0299 | C/O I7030-9 | 05-20-2004 | 102.00 | | | 102.00 | | |
| 0299- | 10 | 04-0299 | Retainage billed | 06-11-2004 | 57,405.50 | | | 57,405.50 | | |

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ANA

.ion: T:\YTHDERLINE\NE\INCOM\Y\Custom\AR Aging Detail by Customer and Territory Sort w Subtotals.rpt
rator: CHI

ng  hs of Date    08-10-2004
ng Basis    Accounting date
aid Only?    Yes

Record Security: Disabled

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| J040B | | | | | | | | | | |
| 10300-7012F | | | ACCOR ECONOMY | | | | | | | |
| 10300-CHKG10 | 10 | 04-0300 | J7012 C/O I10 | 07-29-2004 | 581.90- | | | 581.00- | | |
| 10300-CHNG9 | 10 | 04-0300 | C/OJ7012 - 9 | 06-30-2004 | 517.00- | | | 517.00- | | |
| 10326-04MAY | 10 | 05-0026 | J7021 MAY PROGRESS | 05-20-2004 | 479.00- | | | 479.00- | | |
| 10326-7021F | 10 | 04-0326 | Retainage billed | 06-30-2004 | 1,069.00- | | | 1,069.00- | | |
| 10326-CHNG1 | 10 | 04-0326 | C/OJ7021-1 | 06-02-2004 | 5,853.00- | | | 5,853.00- | | |
| | 10 | | | | 80,842.00 | 80,842.00 | | | | |
| | 10 | | | | 17,367.00 | | 17,367.00 | | | |
| 10326-CHNG2 | 10 | 04-0326 | C/O J7021 - 2 | 06-30-2004 | 121,468.91 | | | 121,468.91 | | |
| | 10 | | | | 54,998.10 | | 54,998.10 | | | |
| 10326-CHNG3 | 10 | 04-0326 | J7021 C/O I1 | 07-29-2004 | 3,424.00 | | | 3,424.00 | | |
| | | | | | 72,777.00 | | 72,777.00 | | | |
| | | | | | 32,196.00- | 32,196.00- | | | | |
| | | | **Customer Total** | | 726,223.63* | 212,497.52* | 172,044.10* | 307,054.51* | 34,627.50* | .00* |
| J0006 | | | BRIGHT HORIZONS FAMILY SOLUTIO | | | | | | | |
| 50006-02REV | 10 | 05-0006 | REV APPL I1 & 2 | 07-01-2004 | 60,917.85 | | 60,917.85 | | | |
| | | | | | 34,321.96- | | 34,321.96- | | | |
| | | | | | 790.50- | | 790.50- | | | |
| | | | | | 19,359.00- | | 19,359.00- | | | |
| 50006-03JUL | 10 | 05-0006 | JULY PROG W/CO I1-2 | 07-30-2004 | 167,371.65 | 167,371.65 | | | | |
| 50006-LTR01 | 10 | 05-0006 | LTR INV FOR AUTH MISC WORK | 07-26-2004 | 4,620.00 | 4,620.00 | | | | |
| | | | **Customer Total** | | 178,438.04* | 171,991.65* | 6,446.39* | .00* | .00* | .00* |
| J0107 | | | BOSS CORPORATION | | | | | | | |
| 40362-02APR | 10 | 04-0362 | I1257 FULL CONTRACT W/CO | 04-30-2004 | 5,009.43 | | | | 5,009.43 | |
| 40362-04MAY | 10 | 04-0362 | I1257 FULL CONTR W/CO I1-2 | 05-31-2004 | 5,028.30 | | | 5,028.30 | | |
| 40362-1257R | 10 | 04-0362 | Retainage billed | 04-30-2004 | 20,671.20 | | | | 20,671.20 | |
| | | | **Customer Total** | | 30,708.93* | .00* | .00* | 5,028.30* | 25,680.63* | .00* |
| J0167 | | | BANK ONE, NA | | | | | | | |
| 40371-02APR | 10 | 04-0371 | APRIL PROGRESS | 04-08-2004 | 94,012.43 | | | | | 94,012.43 |
| | | | | | 94,012.42- | | | | | 94,012.42- |
| 40371-04REV | 10 | 04-0371 | REV FINAL W/CO 1-10 | 07-16-2004 | 26,487.76 | 26,487.76 | | | | |
| 40371-RETEN | 10 | 04-0371 | Retainage billed | 05-31-2004 | 21,603.90 | | | 21,603.90 | | |
| 50001-01REV | 10 | 05-0001 | REVISED JUNE PROGRESS | 07-16-2004 | 66,633.00 | 66,633.00 | | | | |
| 50007-LTR01 | 10 | 05-0007 | PERMIT FEES | 04-02-2004 | 1,941.00 | | | | | 1,941.00 |
| 50008-02MAY | 10 | 05-0008 | MAY PROGRESS | 05-31-2004 | 69,255.60 | | | 69,255.60 | | |
| 50008-03REV | 10 | 05-0008 | REVISED JUNE PROGRESS | 07-16-2004 | 26,639.30 | 26,639.30 | | | | |
| 50008-NDRET | 10 | 05-0008 | Retainage billed | 05-31-2004 | 15,320.34 | | | 15,320.34 | | |
| 50010-01MAY | 10 | 05-0010 | MAY PROGRESS | 05-31-2004 | 96,640.20 | | | 96,640.20 | | |
| 50010-01  | 10 | 05-0010 | PROGR F.C. W/COII | 06-30-2004 | 7,854.25 | | 7,854.25 | | | |

System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.ART
ACTIVITY.ARA

Record Security: Disabled

ing As of Date   08-10-2004
ing Basis        Accounting date
paid Only?       Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| 00167 | | | BANK ONE, NA | | | | | | | |
| 50019-03JUN | 10 | 05-0019 | JUNE PROG W/CO #1-6 | 06-10-2004 | 31,222.56 | | 31,222.56 | | | |
| 50019-03REV | 10 | 05-0019 | REVISED FINAL W/CO 1-6 | 07-16-2004 | 994.21 | 994.21 | | | | |
| 50019-03REV | 10 | 05-0019 | RE-REV APPL #3 | 07-20-2004 | 822.35 | 822.35 | | | | |
| 50026-02MAY | 10 | 05-0026 | MAY PROGRESS | 05-31-2004 | 50,245.50 | | | 50,245.50 | | |
| 50026-03JUN | 10 | 05-0026 | JUNE PROG W/CO#1-3 | 06-30-2004 | 28,646.37 | | 28,646.37 | | | |
| 50026-RETEN | 10 | 05-0026 | Retainage billed | 05-31-2004 | 12,575.05 | | | 12,575.05 | | |
| 50050-01MAY | 10 | 05-0050 | MAY PROGRESS | 05-31-2004 | 126,478.80 | | | 126,478.80 | | |
| 50050-02JUN | 10 | 05-0050 | PO#100001166 JUNE PROG | 06-30-2004 | 94,978.80 | | 94,978.80 | | | |
| | | | Customer Total | | 689,076.80* | 121,576.62* | 173,439.78* | 392,119.39* | | 1,941.01* |
| 00402 | | | BEAUTY & MAINT ACROSS THE POND | | | | | | | |
| 50005-LTR01 | 10 | 05-0005 | DEMO/BLDG FEES | 06-21-2004 | 1,173.00 | | 1,173.00 | | | |
| | | | Customer Total | | 1,173.00* | .00* | 1,173.00* | .00* | .00* | |
| 00459 | | | BBPV, LLC | | | | | | | |
| 40059-10JUN | 10 | 04-0059 | FULL CONTR W/COS | 06-30-2004 | 157,412.16 | | 157,412.16 | | | |
| 40059-10REV | 10 | 04-0059 | REV FINAL APPL #10 | 07-29-2004 | 5,016.98- | 5,016.98- | | | | |
| 40059-FINAL | 10 | 04-0059 | Retainage billed | 06-30-2004 | 145,490.92 | | 145,490.92 | | | |
| | | | Customer Total | | 297,886.10* | 5,016.98-* | 302,903.08* | .00* | .00* | |
| 00613 | | | CHAMPS ENTERTAINMENT | | | | | | | |
| 40103-07JUN | 10 | 04-0103 | 1001 CONTR W/COS | 06-10-2004 | 90,246.00 | | 90,246.00 | | | |
| | | | | | 90,246.00- | | 90,246.00- | | | |
| | | | | | 90,246.00 | | 90,246.00 | | | |
| 40103-FINAL | 10 | 04-0103 | Retainage billed | 06-30-2004 | 143,275.60 | | 143,275.60 | | | |
| | | | | | 143,275.60- | | 143,275.60- | | | |
| | | | | | 143,275.60 | | 143,275.60 | | | |
| 40103-EINL2 | 10 | 04-0103 | BRING CONTR TO FINAL NUMBER | 07-01-2004 | 1,560.00- | 1,560.00- | | | | |
| | | | | | 1,560.00 | 1,560.00 | | | | |
| | | | | | 1,560.00- | 1,560.00- | | | | |
| 40103-SETTL | 10 | 04-0103 | AGREED FINAL BILL D & D MILLER | 07-23-2004 | 41,638.00 | 41,638.00 | | | | |
| | | | | | 41,638.00- | 41,638.00- | | | | |
| | | | | | 41,638.00 | 41,638.00 | | | | |
| 50010-LTR06 | 10 | 05-0010 | CHAMPS CERAMIC TILE WORK | 06-17-2004 | 559.00 | | 559.00 | | | |
| | | | Customer Total | | 274,158.60* | 41,638.00* | 232,520.60* | .00* | .00* | |
| 00159 | | | CITY OF CHICAGO | | | | | | | |
| 40059-LTR01 | 10 | 04-0059 | TREE GRATE REPAIR | 07-19-2004 | 1,033.00 | 1,033.00 | | | | |
| | | | Customer Total | | 1,033.00* | 1,033.00* | .00* | .00* | | .00* |

System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

ing As of Date   08-10-2004
Accounting date
ing Deals
aid Only?        Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | CHI | | | | | | | |
| 0397 | | | | | | | | | | |
| 0398-LTRO3 | 10 | 03-0398 | C. D. PEACOCK / MISC WORK PER CONTRACT | 07-29-2004 | 20,468.00 | 20,468.00 | | | | |
| | | | Customer Total | | 20,468.00* | 20,468.00* | .00* | .00* | .00* | .00* |
| 10524 | | | CLADDAGH IRISH PUB | | | | | | | |
| 10024-01JUN | 10 | 05-0024 | JUNE PROGRESS | 06-30-2004 | 131,350.50 | | 131,350.50 | | | |
| 10024-02JUL | 10 | 05-0024 | JULY PROGRESS | 07-30-2004 | 130,986.00 | 130,986.00 | | | | |
| 10024-LTRO1 | 10 | 05-0024 | PERMIT FEES | 07-30-2004 | 17,869.00 | 17,869.00 | | | | |
| 10024-LTRO2 | 10 | 05-0024 | 2ND PERMIT LTR INV | 07-30-2004 | 979.46 | 979.46 | | | | |
| | | | Customer Total | | 281,184.96* | 149,834.46* | 131,350.50* | .00* | .00* | .00* |
| 10046 | | | DISCOUNT TIRE CO/HALLS ENTERBR | | | | | | | |
| 10267-07JUN | 10 | 04-0267 | 100% CONTR W/CO1-4 | 06-10-2004 | 61,076.00 | | 61,076.00 | | | |
| 10267-FINAL | 10 | 04-0267 | Retainage billed | 06-10-2004 | 54,744.20 | | 54,744.20 | | | |
| | | | Customer Total | | 115,820.20* | .00* | 115,820.20* | .00* | .00* | .00* |
| 10242 | | | EXIGIT LLC | | | | | | | |
| 10025-02JUN | 10 | 05-0025 | JUNE PROGRESS | 06-20-2004 | 140,454.87 | | 140,454.87 | | | |
| | | | | | 2,597.20- | | 2,597.20- | | | |
| | | | | | 10,000.00- | | 10,000.00- | | | |
| | | | | | 8,350.00- | | 8,350.00- | | | |
| 10025-02REV | 10 | 05-0025 | JUNE REVISED | 07-12-2004 | 36,909.00 | 36,909.00 | | | | |
| 10025-R2REV | 10 | 05-0025 | RE-REV APPL #2 | 07-30-2004 | 5,341.34- | 5,341.34- | | | | |
| | | | Customer Total | | 159,075.13* | 31,567.66* | 127,507.67* | .00* | .00* | .00* |
| 10398 | | | FOOD 4 LESS | | | | | | | |
| 0398-FINAL | 10 | 04-0398 | DEMO 100% COMPLETE | 04-25-2004 | 127,064.00 | | | | 127,064.00 | |
| 0398-LTRO1 | 10 | 04-0398 | DEMO PERMIT | 04-15-2004 | 180.00 | | | | 180.00 | |
| 0398-LTRO3 | 10 | 04-0398 | REMAINDER OF DEMO WORK | 06-11-2004 | 1,936.00 | | | 1,936.00 | | |
| | | | Customer Total | | 129,180.00* | .00* | .00* | 1,936.00* | 127,244.00* | .00* |
| 10040 | | | GART BROS SPORTING GOOD | | | | | | | |
| 10203-LTRO2 | 10 | 04-0203 | 160% LABOR & MATERIALS | 02-29-2004 | 1,225.00 | | | | | 1,225.00 |
| | | | Customer Total | | 1,225.00* | .00* | .00* | .00* | .00* | 1,225.00 |
| 10245 | | | GIORGIO ARMANI CORPORATION | | | | | | | |
| 10367-03APR | 10 | 04-0367 | FULL CONTRACT W/CO #1-8 | 04-30-2004 | 30,858.93 | | | | 30,858.93 | |
| 10367-04JUN | 10 | 04-0367 | F.C. W/CO #11 | 07-19-2004 | 14,026.35 | 14,026.35 | | | | |
| 10367-04REV | 10 | 04-0367 | REV FULL CONTR APPL #4 | 07-19-2004 | 10,665.67- | 10,665.67- | | | | |

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH, CURRENT.ART, MASTER.JCH, ACTIVITY.ARA

Record Security: Disabled

Accounts Receivable Aging Detail by Customer and Territory Sort w subtotals.rpt
cator: CHI

ng As of Date 08-10-2004
ng Basis Accounting data
vld Only? Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| | | | | Customer Total | 55,374.88* | 3,360.68* | .00* | .00* | 52,014.20* | .00* |
| 10361 | | | GREAT LAKES REIT | | | | | | | |
| 10361-01FEB | 10 | 01-0361 | FULL CONTRACT | 02-18-2003 | 42,760.00 | | | | | 42,760.00 |
| | | | | Customer Total | 42,760.00* | .00* | .00* | .00* | | 42,760.00* |
| 10043 | | | INLAND COMMERCIAL PROPERTY | | | | | | | |
| 0040-03JUL | 10 | 05-0040 | 12005 100% CONTR - NET | 07-30-2004 | 177,365.00 | 177,365.00 | | | | |
| 0040-05TM02 | 10 | 05-0040 | 2ND PERMIT LTR INV | 07-30-2004 | 3,232.55 | 3,232.55 | | | | |
| 0040-1TM03 | 10 | 05-0040 | DEMO PACE NEXT DOOR | 07-30-2004 | 30,969.00 | 30,969.00 | | | | |
| | | | | Customer Total | 211,566.55* | 211,566.55* | .00* | .00* | .00* | .00* |
| 10068 | | | JOS. A BANK CLOTHIERS | | | | | | | |
| 0010-6TM04 | 10 | 05-0010 | JOS BANKS VALVE & METERING | 05-14-2004 | 5,192.00 | | | 5,192.00 | | |
| 0087-01JUN | 10 | 05-0087 | JUNE PROGRESS | 06-30-2004 | 76,792.86 | | 76,792.86 | | | |
| 0087-01R04 | 10 | 05-0087 | Retainage billed | 07-01-2004 | 8,532.54 | | 8,532.54 | | | |
| 0087-02JUL | 10 | 05-0087 | JULY PROG W/CO #1 | 07-29-2004 | 182,192.37 | 182,192.37 | | | | |
| | | | | Customer Total | 272,709.77* | 102,192.37* | 85,325.40* | 5,192.00* | .00* | .00* |
| 10825 | | | LIHTHEDRALL CO'S PENDING UNLES | | | | | | | |
| 0137-292FN | 10 | 04-0137 | Retainage billed | 11-21-2003 | 56,783.60 | | | | | 56,783.60 |
| 0156-513FN | 10 | 04-0156 | Retainage billed | 10-22-2003 | 29,514.20 | | | | | 29,514.20 |
| | | | | Customer Total | 86,297.80* | .00* | .00* | .00* | .00* | 86,297.80* |
| 10240 | | | MISAKO USA INC | | | | | | | |
| 0240-02NOV | 10 | 04-0240 | FULL CONTR W/CO #1 | 11-30-2003 | 8,026.67 | | | | | 8,026.67 |
| | | | | Customer Total | 8,026.67* | | | | | 8,026.67* |
| 0248-FINAL | 10 | 04-0248 | Retainage billed | 11-30-2003 | 7,012.60 | | | | | 7,012.60 |
| | | | | Customer Total | 7,012.60* | | | | | 7,012.60* |
| 0249-02NOV | 10 | 04-0249 | FULL CONTR W/CO #1 | 11-30-2003 | 12,021.50 | | | | | 12,021.50 |
| | | | | Customer Total | 12,021.50* | | | | | 12,021.50* |
| 0249-FINAL | 10 | 04-0249 | Retainage billed | 11-30-2003 | 7,845.80 | | | | | 7,845.80 |
| | | | | Customer Total | 7,845.80* | | | | | 7,845.80* |
| 0257-02JAN | 10 | 04-0257 | FULL CONTRACT W/CO #1-5 | 01-27-2004 | 31,202.00- | | | | | 31,202.00- |

System Date: 08-10-2004 10:10 am
System Time: 10:10 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Appl Ti\TIMBERLINE\REPORT\CustomAR Aging Detail by Customer and Territory Sort w Subtotals.rpt
[dtdr: CHI

Record Security: Disabled

ng As of Date  08-10-2004
ng Basis       Accounting date
aid Only?      Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| I0240 | | | HESANO USA INC | | | | | | | |
| I0257-FINAL | | | | | 5,892.00- | | | | | 5,892.00- |
| | | | | | 5,892.00 | | | | | 5,892.00 |
| | | | | Customer Total | 76,170.45* | .00* | .00* | .00* | .00* | 76,170.45* |
| I0070 | | | NORTHSTAR APPLIANCE DISTRIBUTI | | | | | | | |
| I0070-07DEC | 10 | | CHANGE ORDERS #1-4 | 12-31-2003 | | | | | | |
| | | | | | 52,634.44 | | | | | 52,634.44 |
| | | | | | 14,989.61 | | | | | 14,989.61 |
| | | | | | 14,989.61 | | | | | 14,989.61 |
| | | | | | 14,989.61 | | | | | 14,989.61 |
| | | | | | 14,989.61 | | | | | 14,989.61 |
| | | | | | 10,101.05- | | | | | 10,101.05- |
| | | | | | 27,902.21- | | | | | 27,902.21- |
| | | | | | 2,144.19- | | | | | 2,144.19- |
| | | | | Customer Total | 4,204.79* | .00* | .00* | .00* | .00* | 4,204.79* |
| I0373 | | | NAUTICA RETAIL, USA | | | | | | | |
| I0373-04MAY | 10 | | C/OS #1-6 | 05-31-2004 | 8,850.00 | | | 8,850.00 | | |
| I0373-04REV | 10 | | REV APP #4 W/CO#7 | 06-30-2004 | 650.00 | | 650.00 | | | |
| I0373-04REV | 10 | | Retainage billed | 04-26-2004 | 16,616.70 | | | | 16,616.70 | |
| I0373-FINAL | 10 | | RE-REVISE APPL #4 | 06-30-2004 | 65.00 | | 65.00 | | | |
| I0373-R4REV | 10 | | #1-50 JUNE PROGRESS | 06-30-2004 | 56,232.00 | | 56,232.00 | | | |
| I0067-01JUN | 10 | | #1-50 REV APPL #1 | 07-12-2004 | 4,356.05 | 4,356.05 | | | | |
| I0067-01REV | 10 | | 100% CONTRA - RET | 07-30-2004 | 51,075.95 | 51,075.95 | | | | |
| I0067-02JUL | 10 | | | | | | | | | |
| | | | | Customer Total | 138,645.70* | 56,232.00* | 56,947.00* | 8,850.00* | 16,616.70* | .00* |
| I0060 | | | OFFICE DEPOT | | | | | | | |
| I0060-01JUN | 10 | | I22797 JUNE PROGRESS | 06-30-2004 | 33,761.70 | | 33,761.70 | | | |
| I0081-01REV | 10 | | I2271 REV APPL #1 | 07-19-2004 | 62,967.60 | 62,967.60 | | | | |
| I0081-01REV | 10 | | I2271 JULY PROGRESS | 07-11-2004 | 43,397.97 | 43,397.97 | | | | |
| I0081-02JUL | 10 | | I2279 JUNE PROGRESS | 06-30-2004 | 19,803.70 | | 19,803.70 | | | |
| I0084-01JUN | 10 | | I2279 REV APPL #1 | 07-19-2004 | 46,676.70 | 46,676.70 | | | | |
| I0084-01REV | 10 | | I2279 JULY PROGRESS | 07-31-2004 | 38,353.50 | 38,353.50 | | | | |
| I0084-02JUL | 10 | | | | | | | | | |
| | | | | Customer Total | 245,041.17* | 191,395.77* | 53,645.40* | .00* | .00* | .00* |
| I0646 | | | J. C. Penney Co., Inc. | | | | | | | |
| I0344-07SEP | 10 | | 100% CONTRACT W/CO 1-6 | 09-03-2003 | 64,221.95 | | | | | 64,221.95 |
| I0344-07SEP | 10 | | Retainage billed | 09-26-2003 | 116,555.89 | | | | | 116,555.89 |
| I0344-RETCH | 10 | | UNCOLLECTIBLE COS | 03-31-2004 | 80,777.00- | | | | | 80,777.00- |
| I0344-REVCO | 10 | | I0237 JUNE PROGRESS | 06-25-2004 | 91,478.92 | | 91,478.92 | | | |
| I0083-01JUN | 10 | | | 01-01-2004 | 65,906.25- | | 65,906.25- | | | |

System Date: 08-10-2004
System Time: 10:30 am
Files Used: HASTER.ARH
CURRENT.ART
HASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

Path: T:\THAGRLINE\REPORT\Custom\AR Aging Detail by Customer and Territory Sort w Subtotal.rpt
Calor: CHI

Aging As of Date 08-10-2004
Aging Basis   Accounting date   Yes
Paid Only?

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 10 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| 0003-LTR01 | 10 | 05-0083 | I0237 PERMIT FEES | 06-30-2004 | 35,091.00 | | 35,091.00 | | | |
| | | | | Customer Total | 170,828.84* | 10,164.33* | 60,663.67* | .00* | .00* | 100,000.84* |
| **0017** | | | **R E I** | | | | | | | |
| 0017-D2REV | 10 | 05-0017 | REVISED JUNE PROGRESS | 07-01-2004 | 333,560.70 | | 333,560.70 | | | |
| 0017-D3JUL | 10 | 05-0017 | JULY PROGRESS | 07-31-2004 | 234,227.70 | 234,227.70 | | | | |
| | | | | Customer Total | 567,788.40* | 234,227.70* | 333,560.70* | .00* | .00* | .00* |
| **0041** | | | **RED ROBIN/REAGAN CONST** | | | | | | | |
| 0079-D1JUN | 10 | 05-0079 | JUNE PROGRESS | 06-30-2004 | 127,402.05 | | 127,402.05 | | | |
| | | | | | 25,706.55- | | 25,706.55- | | | |
| | | | | | 9,720.00- | | 9,720.00- | | | |
| | | | | | 29,430.00- | | 29,430.00- | | | |
| | | | | | 17,010.00- | | 17,010.00- | | | |
| | | | | | 15,498.00- | | 15,498.00- | | | |
| 0079-D2JUL | 10 | 05-0079 | JULY PROGRESS | 07-30-2004 | 215,209.90 | 215,209.90 | | | | |
| | | | | Customer Total | 245,247.40* | 215,209.90* | 30,037.50* | .00* | .00* | .00* |
| **0056** | | | **STERLING JEWELERS, INC** | | | | | | | |
| 0002-D2JUN | 10 | 05-0002 | I2412 JUNE PROG W/CO #1 | 06-25-2004 | 131,112.90 | | 131,112.90 | | | |
| | | | | | 68,400.00- | | 68,400.00- | | | |
| | | | | | 7,650.00- | | 7,650.00- | | | |
| | | | | | 2,250.00- | | 2,250.00- | | | |
| | | | | | 25,650.00- | | 25,650.00- | | | |
| 0002-D3JUL | 10 | 05-0002 | I2412 JULY PROG W/CO #1 | 07-26-2004 | 140,310.00 | 140,310.00 | | | | |
| | | | | Customer Total | 167,472.90* | 140,310.00* | 27,162.90* | .00* | .00* | .00* |
| **0066** | | | **STORE PLANNING SOLUTION/J JILL** | | | | | | | |
| 0006-LTR01 | 10 | 05-0086 | 2 WEEKS SUPERVISION | 07-19-2004 | 5,452.00 | 5,452.00 | | | | |
| | | | | Customer Total | 5,452.00* | 5,452.00* | .00* | .00* | .00* | .00* |
| **0124** | | | **STIR CRAZY** | | | | | | | |
| 0296-D5JUL | 10 | 04-0296 | JULY PROG W/CO #1-17 | 07-20-2004 | 164,440.57 | 164,440.57 | | | | |
| | | | | | 1,565.94- | | | | | |
| | | | | | 24,922.60- | 24,922.60- | | | | |
| 0296-05REV | 10 | 04-0296 | REV APPL #5 | 07-28-2004 | 5,378.37 | 5,378.37 | | | | |
| 0010-LTR05 | 10 | 05-0010 | STIR CRAZY TLG REPAIR | 06-08-2004 | 460.00 | | | 460.00 | | |
| | | | | Customer Total | 141,798.26* | 141,330.20* | .00* | 460.00* | .00* | .00* |

```
 type TXT1nH6DH.INETREPORT\Custom\All Aging Detail by Customer and Territory Sort w Subdetail.rpt
rator: CUI

                                                                    System Date: --------
                                                                    System Time: 10:30 am
                                                                    Files Used: MASTER.ARH
                                                                                CURRENT.ART
                                                                                MASTER.JCM
                                                                                ACTIVITY.ARA

                                                    Record Security: Disabled
```

ng As of Date   08-10-2004
ng Basis        Accounting date
ald Only?                 Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | | | | | | | | | | |
| 0207 | | | SPORTS AUTHORITY | | | | | | | |
| 0052-01JUN | 10 | | 05-0052 JUNE PROGRESS | 06-30-2004 | 100,568.70 | | 100,568.70 | | | |
| 0052-02JUL | 10 | | 05-0052 1152 JULY PROGRESS | 07-31-2004 | 99,999.70 | 99,999.70 | | | | |
| | | | Customer Total | | 200,568.40* | 99,999.70* | 100,568.70* | .00* | .00* | .00* |
| 0297 | | | ULTA SALON | | | | | | | |
| 0009-03JUN | 10 | | 1164 1001 CONTR W/CO 1-2 | 06-30-2004 | 113,406.30 | | 113,406.30 | | | |
| 0009-04JUL | 10 | | 1164 F.C. W/CO 1-3 | 07-30-2004 | 6,622.00 | 6,622.00 | | | | |
| 0009-FINAL | 10 | | Retainage billed | 07-31-2004 | 34,808.50 | 34,808.50 | | | | |
| | | | Customer Total | | 154,036.80* | 41,430.50* | 113,406.30* | .00* | .00* | .00* |
| 0325 | | | UNITED RETAIL GROUP INC | | | | | | | |
| 0277-01JUL | 10 | | 1491 JULY PROGRESS | 07-30-2004 | 73,352.25 | 73,352.25 | | | | |
| | | | Customer Total | | 73,352.25* | 73,352.25* | .00* | .00* | .00* | .00* |
| 0003 | | | VOLDE DEVELOPMENT LLC | | | | | | | |
| 0003-01MAY | 10 | | MAY PROGRESS | 05-25-2004 | 23,708.70 | | 23,707.00 | 23,708.70 | | |
| 0003-02JUN | 10 | | 1001 CONTR - RET | 06-30-2004 | 23,707.00 | | 23,707.00 | | | |
| 0003-LTRQ1 | 10 | | PERMIT/EXPEDIT FEES | 05-14-2004 | 1,185.00 | | | 1,185.00 | | |
| | | | Customer Total | | 48,601.50* | .00* | 23,707.00* | 24,893.70* | .00* | .00* |
| 0044 | | | VOICE STREAM WIRELESS | | | | | | | |
| 0252-10249 | 10 | | Retainage billed | 05-28-2004 | 6,067.87 | | | 6,067.87 | | |
| 0023-01APR | 10 | | FULL CONTRACT | 04-30-2004 | 2,000.00 | | | | 2,000.00 | |
| 0023-02JUN | 10 | | FULL CONTR W/COS | 06-21-2004 | 3,684.80 | | 3,684.80 | | | |
| | | | Customer Total | | 11,752.67* | .00* | 3,684.80* | 6,067.87* | 2,000.00* | .00* |
| 0155 | | | WESTFIELD CORP/ALSO SEE 230231 | | | | | | | |
| 0155-07REV | 10 | | REV FEB APPL F7 | 03-01-2004 | 150,975.11 | | | | | 150,975.11 |
| 0155-08FIN | 10 | | FINAL SETTLEMENT | 05-25-2004 | 17,235.37- | | | 17,235.37- | | |
| 0155-FINAL | 10 | | Retainage billed | 05-25-2004 | 99,602.84 | | | 99,602.84 | | |
| 0155-LTRO3 | 10 | | 05-22-2004 | 2,900.00 | 2,900.00 | | | | | |
| 0155-REV07 | 10 | | 2ND REVISED F7 | 04-13-2004 | 11,969.98- | | | | 11,969.98- | |
| | | | Customer Total | | 212,272.00* | 2,900.00* | .00* | 82,367.47* | 11,969.98- | 150,975.11* |
| 0297 | | | W/S DEVELOPMENT ASSOCIATES LLC | | | | | | | |
| 0321-05MAY | 10 | | MAY PROGRESS | 05-31-2004 | 527,636.81 | | | 527,636.81 | | |
| | | | | | 9,401.16- | | | 9,401.16- | | |
| | | | | | 42,087.50- | | | 42,087.50- | | |

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

ng: T:\TIMBERLINE\REPORT\CustomAR Aging Detail by Customer and Territory Sort w Subtotals.rpt
rator: CMI

ng As of Date    08-10-2004
ng Basis         Accounting date
old Only?        Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | | | | | | | | | | |
| 0297 | | | H/B DEVELOPMENT ASSOCIATES LLC | | | | | | | |
| 0321-05MAY | | | | | | | | | | |
| | | | | | 4,202.40- | | | 4,202.40- | | |
| | | | | | 98,485.70- | | | 98,485.70- | | |
| | | | | | 42,007.50 | | | 42,007.50 | | |
| | | | | | 89,970.42 | | | 89,970.42 | | |
| | | | | | 4,202.40 | | | 4,202.40 | | |
| | | | | | 98,485.70 | | | 98,485.70 | | |
| | | | | | 42,007.50- | | | 42,007.50- | | |
| | | | | | 89,970.42- | | | 89,970.42- | | |
| | | | | | 4,202.40- | | | 4,202.40- | | |
| | | | | | 98,485.70- | | | 98,485.70- | | |
| | | | | | 61,096.25- | | | 61,096.25- | | |
| | | | | | 37,037.91- | | | 37,037.91- | | |
| | | | | | 131,535.00- | | | 131,535.00- | | |
| | | | | | 10,000.00- | | | 10,000.00- | | |
| | | | | | 17,455.00- | | | 17,455.00- | | |
| | | | | | 10,123.00- | | | 10,123.00- | | |
| 0321-06JUN | 10 | 04-0321 | JUNE PROG W/COS | 06-30-2004 | 328,160.46 | | 328,160.46 | | | |
| 0321-07JUL | 10 | 04-0321 | JULY PROG W/COS | 07-31-2004 | 143,241.01 | 143,241.01 | | | | |
| 0032-03JUN | 10 | 05-0032 | JUNE PROGRESS | 06-30-2004 | 1,656,533.80 | | 1,656,533.80 | | | |
| | | | | | 8,002.47- | | 8,002.47- | | | |
| | | | | | 225,961.56- | | 225,961.56- | | | |
| | | | | | 4,561.11- | | 4,561.11- | | | |
| | | | | | 26,806.50- | | 26,806.50- | | | |
| | | | | | 613,075.20- | | 613,075.20- | | | |
| | | | | | 44,129.11- | | 44,129.11- | | | |
| 0032-04JUL | 10 | 05-0032 | JULY PROGRESS | 07-31-2004 | 2,162,586.30 | 2,162,586.30 | | | | |
| 0033-01JUL | 10 | 05-0033 | JULY PROGRESS | 07-31-2004 | 74,057.02 | 74,057.02 | | | | |
| 0034-01J2JUN | 10 | 05-0034 | I219 JUNE PROGRESS | 06-30-2004 | 45,077.51 | | 45,077.51 | | | |
| 0034-03JUL | 10 | 05-0034 | I219 JULY PROGRESS | 07-31-2004 | 709,470.43 | 709,470.43 | | | | |
| | | | | Customer Total | 4,205,351.13* | 3,089,354.84* | 1,107,953.02* | 8,002.47* | .00* | .00* |
| 2317 | | | WESTFIELD INC/SEE ALSO 2300155 | | | | | | | |
| 0128-07REV | 10 | 04-0128 | REV FEB APPL #7 | 03-01-2004 | 35,373.50 | | | | | 35,373.50 |
| | | | | | 515.10- | | | | | 515.10- |
| 0128-0DFIN | 10 | 04-0128 | FINAL SETTLEMENT | 05-25-2004 | 10,270.50 | | 10,270.50 | | | |
| 0128-FINAL | 10 | 04-0128 | Retainage billed | 02-29-2004 | 174,857.20 | | | | | 174,857.20 |
| 0128-LTR01 | 10 | 04-0128 | EXTRA WORK REQUEST | 03-26-2004 | 41,404.00 | | | | | 41,404.00 |
| 0128-LTR02 | 10 | 04-0128 | RELOCATE FLOOR/JUNC BOXES | 06-07-2004 | 11,364.00 | | 11,364.00 | | | |
| 0128-LTR02 | 10 | 04-0128 | PHONE CLOSET & MISC WORK | 07-14-2004 | 10,145.00 | 10,145.00 | | | | |
| 0128-LTR03 | 10 | 04-0128 | REV LTR INV #1 | 05-25-2004 | 10,956.00- | | 10,956.00- | | | |
| 0128-LTR1A | 10 | 04-0128 | REVISED APP #7 W/COS | 03-31-2004 | 19,324.00 | | | | | 19,324.00 |
| 0128-REV07 | 10 | 04-0128 | REVISED APP #7 | | | | | | | |
| | | | | | 368,267.10* | 10,145.00* | .00* | 18,678.50* | .00* | 270,523.60* |

System Date: 06-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

ing As of Date    06-10-2004
ing Basis         Accounting date
paid Only?        Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | | | | | | | | | | |
| 00232 | | | ZAREMBA CONTRACTORS | | | | | | | |
| 40JB2-03HAY | 10 | 04-0JB2 | IJ901 F.C. W/CO11-21 | 05-31-2004 | 109,367.34 | | | 109,367.34 | | |
| 40JB2-3901F | 10 | 04-0JB2 | Retainage billed | 05-31-2004 | 68,504.94 | | | 68,504.94 | | |
| | | | Customer Total | | 177,872.28* | .00* | .00* | 177,072.28* | .00* | .00* |
| 00301 | | | ZABST COMMERCIAL GROUP INC | | | | | | | |
| 40301-01RET | 10 | 04-0301 | Retainage billed | 03-31-2004 | 41,419.00 | | | | | 41,419.00 |
| | | | | | 12,600.00- | | | | | 12,600.00- |
| | | | | | 9,031.00- | | | | | 9,031.00- |
| | | | | | 19,706.00- | | | | | 19,706.00- |
| | | | | | 19,706.00 | | | | | 19,706.00 |
| 40301-04JUN | 10 | 04-0301 | F.C. W/CO 81-3 | 06-30-2004 | 41,347.00 | | 41,347.00 | | | |
| | | | | | 41,347.00- | | 41,347.00- | | | |
| | | | | | 41,347.00 | | 41,347.00 | | | |
| | | | Customer Total | | 61,133.00* | .00* | 41,347.00* | .00* | .00* | 19,706.00* |
| | | | Territory Total | | 10836,616.37* | 5,453,864.72* | 3,301,216.11* | 1,018,610.49* | 246,213.05* | 016,711.80* |
| | | | Report Total | | 10836,616.37* | 5,453,864.72* | 3,301,216.11* | 1,018,610.49* | 246,213.05* | 016,711.80* |

Page 1
System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

S. Builders, Inc.
...TAYTHR...REPORTS\SYSTEM\AR Aging Detail by Customer and Territory Sort w Subtotals.rpt
...CHI

*Boston (2 Pages)*

g As of Date  08-10-2004
y Basis
id Only?       Yes

Accounting date

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Boston MA** | | | | | | | | | | |
| **065** | | | **BBD, BACH & BEYOND** | | | | | | | |
| 208-RETEN | 45 | 04-0208 | Retainage billed | 12-11-2003 | 24,543.20 | | | | | 24,543.20 |
| | | | Customer Total | | 24,543.20* | .00* | .00* | .00* | .00* | 24,543.20* |
| **431** | | | **BOSS-TAN, LLC** | | | | | | | |
| 431-02HAY | 45 | 03-0431 | 100% CONTR -- RET | 05-30-2003 | 66,946.77 | | | | | 66,946.77 |
| | | | | | 18,000.00- | | | | | 18,000.00- |
| | | | | | 18,000.00- | | | | | 18,000.00- |
| | | | | | 17,000.00- | | | | | 17,000.00- |
| 431-03ETH | 45 | 03-0431 | FULL CONTRACT W/COS | 09-30-2003 | 71,689.15 | | | | | 71,689.15 |
| 431-FINAL | 45 | 03-0431 | Retainage billed | 09-30-2003 | 16,736.70 | | | | | 16,736.70 |
| | | | Customer Total | | 123,629.89* | .00* | .00* | .00* | .00* | 123,629.89* |
| **360** | | | **FOOT LOCKER INC., FACILITY SVC** | | | | | | | |
| 074-03JAN | 45 | 04-0074 | I14209 100% CONTR W/COI1-4 | 01-30-2004 | 8,298.26 | | | | | 8,298.26 |
| 074-04MAR | 45 | 04-0074 | I14209 F.C. W/COI4 | 03-30-2004 | 7,352.26- | | | | | 7,352.26- |
| | | | | | 7,352.26 | | | | | 7,352.26 |
| | | | | | 7,352.26- | | | | | 7,352.26- |
| 074-14209 | 45 | 04-0074 | Retainage billed | 01-30-2004 | 6,304.60 | | | | | 6,304.60 |
| | | | Customer Total | | 7,250.60* | .00* | .00* | .00* | .00* | 7,250.60* |
| **1051** | | | **HOLLYWOOD ENTERTAINMENT** | | | | | | | |
| 186-05JAN | 45 | 04-0186 | I007113 VIDEO JAN PROG W/COS | 01-30-2004 | 50,330.60 | | | | | 50,330.60 |
| | | | | | 19,303.14- | | | | | 19,303.14- |
| | | | | | 11.00- | | | | | 11.00- |
| 186-7113F | 45 | 04-0106 | Retainage billed | 01-30-2004 | 49,747.98 | | | | | 49,747.98 |
| 230-02JAN | 45 | 04-0230 | I021901 100% CONTR W/COI1-12 | 01-15-2004 | 14,911.83 | | | | | 14,911.83 |
| 230-1901F | 45 | 04-0230 | Retainage billed | 01-15-2004 | 10,145.50 | | | | | 10,145.50 |
| 256-02IVD | 45 | 04-0256 | I039119 100% CONTR W/COS | 01-01-2004 | 21,503.90 | | | | | 21,503.90 |
| 256-9119G | 45 | 04-0256 | Retainage billed | 01-01-2004 | 2,310.00 | | | | | 2,310.00 |
| 256-9119V. | 45 | 04-0256 | Retainage billed | 01-01-2004 | 10,841.32 | | | | | 10,841.32 |
| 280-01FEB | 45 | 04-0280 | I121104 FULL CONTRACT | 02-24-2004 | 30,088.00 | | | | | 30,088.00 |
| 280-02MAR | 45 | 04-0280 | I121104 FINAL W/COS | 03-25-2004 | 2,218.25- | | | | | 2,218.25- |
| | | | | | 2,218.25 | | | | | 2,218.25 |
| | | | | | 2,218.25- | | | | | 2,218.25- |
| | | | Customer Total | | 168,546.74* | .00* | .00* | .00* | .00* | 168,546.74* |
| **1825** | | | **LIMITED*ALL CO'S PENDING UNLES** | | | | | | | |
| 090-430FN | 45 | 04-0098 | Retainage billed | 10-01-2003 | 34,192.80 | | | | | 34,192.80 |

J. builders, INC.
gn: T:\TIMBERLINE\REPORT\CustomAR Aging Detail by Customer and Territory Sort w Subtotals.rpt
ator: GHI

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

g As of Date   08-10-2004
g Basis        Accounting date
ld Only?       Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Boston MA | | | | | | | | | | |
| 211 | | | | | | | | | | |
| 00B-123FH | 45 | 04-0008 | SKECHERS USA  Retainage billed | 11-25-2003 | 11,529.90 | | | | | 11,529.90 |
| | | | | | 4,215.51- | | | | | 4,215.51- |
| | | | | Customer Total | 7,314.39* | .00* | .00* | .00* | .00* | 7,314.39* |
| .135 | | | | | | | | | | |
| 235-9FINL | 15 | 04-0235 | URBAN OUTFITTERS, INC  Retainage billed | 01-28-2004 | 3,245.50 | | | | | 3,245.50 |
| | | | | Customer Total | 3,245.50* | .00* | .00* | .00* | .00* | 3,245.50* |
| 044 | | | | | | | | | | |
| 201-026SF | 45 | 04-0201 | VOICE STREAM WIRELESS  Retainage billed | 02-29-2004 | 13,196.01 | | | | | 13,196.01 |
| | | | | | 22,396.41 | | | | | 22,396.41 |
| 081-01FEB | 45 | 04-0281 | I34010269 FULL CONTR W/CO | 02-24-2004 | 300.00- | | | | | 300.00- |
| | | | | | 19,806.77- | | | | | 19,806.77- |
| | | | | Customer Total | 15,406.45* | .00* | .00* | .00* | .00* | 15,406.45* |
| 4297 | | | | | | | | | | |
| 4297-01FEB | 45 | 04-0297 | W/S DEVELOPMENT ASSOCIATES LLC  FULL CONTRACT | 02-16-2004 | 492.40 | | | | | 492.40 |
| | | | | | 455.47- | | | | | 455.47- |
| 4297-UTILF | 45 | 04-0297 | Retainage billed | 02-19-2004 | 3,774.72 | | | | | 3,774.72 |
| | | | | Customer Total | 3,811.65* | .00* | .00* | .00* | .00* | 3,811.65* |
| | | | | Territory Total | 307,941.22* | .00* | .00* | .00* | .00* | 307,941.22* |
| | | | | Report Total | 307,941.22* | .00* | .00* | .00* | .00* | 307,941.22* |

SCHEDULE 1.1(c)

EQUIPMENT

| QUANTITY | TYPE |
|----------|------|
| 2 | PHONE SYSTEM |
| 12 | SMALL WORK STATIONS (ADMINISTRATIVE) |
| 15 | LARGE WORK STATIONS (OFFICE) |
| 24 | COMPUTERS |
| 2 | EPSON COLOR PRINTER |
| 48 | CHAIR |
| 2 | TYPEWRITER |
| 4 | CANNON LASER FAX MACHINES |
| 3 | RICOH COPIER |
| 13 | 4-DRAWER CABINET |
| 10 | 2-DRAWER CABINET |
| 2 | SCANNER |
| 19 | LAPTOP |
| 9 | LASER PRINTER |
| 1 | LEXMARK PRINTER |
| 1 | RICOH FAX MACHINE |
| 1 | PROJECTION MACHINE |
| 2 | TELEVISION |
| 1 | VCR |
| 1 | VISUAL CONFERENCING SYSTEM |
| 3 | REFRIGERATOR |
| 35 | CELL PHONES |
| 15 | DIGITAL CAMERAS |
| 2 | SERVERS |

SCHEDULE 1.1(d)

INVENTORY

All existing office supplies and construction equipment and materials presently inventoried in the office/warehouse and on jobsites.

SCHEDULE 1.1(e)

<u>PROPRIETARY RIGHTS</u>

None

SCHEDULE 1.1(f)

PREPAID ITEMS

1.    Chicago Office Lease - any prepaid rent

2.    Boston Office Lease - any prepaid rent

3.    Automobiles - any prepaid lease payments

SCHEDULE 1.1(g)

TELEPHONE NUMBERS, ETC.

TELEPHONE

| Line | Line Number |
|------|-------------|
| 1 | 847-233-9200 |
| 2 | 847-233-0726 |
| 3 | 847-233-0728 |
| 4 | 847-233-0679 |
| 5 | 847-233-0680 |
| 6 | 847-233-9227 |
| 7 | 847-233-0721 |
| 8 | 847-233-0710 |
| 9 | 847-233-0711 |
| 10 | 847-233-0712 |
| 11 | 847-233-0713 |
| 12 | 847-233-0714 |
| 13 | 847-233-0715 |
| 14 | 847-233-0716 |
| 15 | 847-233-0717 |
| 16 | 847-233-0718 |
| 17 | 847-233-0719 |
| 19 | 847-233-0675 |
| 20 | 847-233-0676 |
| 21 | 847-233-0677 |
| 22 | 847-233-0678 |
| 23 | 847-233-0681 |
| 24 | 847-233-0682 |
| 25 | 847-233-0683 |
| 26 | 847-233-0156 |
| 27 | 847-233-0157 |
| 28 | 847-233-0158 |
| 29 | 847-233-9115 |
| 30 | 847-233-9116 |
| 31 | 847-233-9170 |
| 32 | 847-233-9177 |
| 33 | 847-671-1051 |
| 34 | 847-671-1109 |

CELL

Cell Number
(847) 343-1024 (847) 456-0639
(847) 514-2050 (847) 344-6827

1.1(g) - 1

(847)321-1798  (847) 344-1437
(847) 344-5007 (847) 208-6323
(847) 321-1802 (847) 514-8555
(847) 344-1438 (847) 344-4722
(847) 875-3195 (847) 514-2039
(847) 456-4130 (847) 514-2841
(847) 344-3798 (847) 875-3190
(847) 343-3318 (847) 343-3428
(847) 343-0658 (847) 980-5296
(847) 875-3194 (847) 833-0597
(847) 456-1855 (847) 321-8442
(847) 514-5102 (847) 833-0593
(847) 321-8443 (847) 514-2036
(847) 514-1062 (847) 343-0574
(847) 456-0642 (847) 208-2216
(847) 514-2048 (847) 344-3207
(847) 343-1028

1.1(g) - 2

SCHEDULE 1.11(b)

REQUIRED CONSENTS

04.0321 – Shoppes @ Farmington Valley-A2&G

05.0024 – Claddaugh Irish Pub

05.0031 – Vanilla Box Construction

05.0032 – Building C,D,E,F,H,&I

05.0034 – Dick's Sporting Goods

05.0079 – Red Robin Burgers

SCHEDULE 1.4

ASSUMED LIABILITIES

| JOB NO. | NAME | ADDRESS | CITY | STATE | ZIP | ANTICIPATED ACCOUNTS RECEIVABLE | ANTICIPATED ACCOUNTS PAYABLE | ANTICIPATED DEFICIT |
|---|---|---|---|---|---|---|---|---|
| 04.0059 | HARLEM FURNITURE | 2525 HARLEM AVENUE | CHICAGO | IL | 60607 | $ 297,886.10 # | $ 417,632.58 | $ (119,746.48) |
| 04.0103 | CHAMPPS RESTAURANT | 16165 S. LAGRANGE ROAD | ORLAND PARK | IL | 60467 | $ 275,000.00 | $ 472,459.00 | $ (197,459.00) |
| 04.0124 | STIR CRAZY | 28252 DIEHL ROAD | WARRENVILLE | IL | 60555 | $ - | $ 23,484.00 | $ (23,484.00) |
| 04.0252 | T MOBILE | 315 ROUTE 206 | HILLSBOROUGH | NJ | 08844 | $ 6,068.00 | $ 18,716.00 | $ (12,648.00) |
| 04.0267 | DISCOUNT TIRE | 785 E. BOUGHTON ROAD | BOLINGBROOK | IL | 60440 | $ 169,811.20 | $ 396,829.40 | $ (227,018.20) |
| 04.0288 | RED ROOF INN | 2580 CROOKS ROAD | ROCHESTER HILLS | MI | 48309 | $ 153,876.00 | $ 199,585.00 | $ (45,709.00) |
| 04.0299 | RED ROOF INN | 24300 SINCOLA COURT, NE | FARMINGTON HILLS | MI | 48335 | $ 91,567.00 | $ 149,792.00 | $ (58,225.00) |
| 04.0300 | RED ROOF INN | 3100 LITTLE MACK AVENUE | ROSEVILLE | MI | 48066 | $ 119,141.00 | $ 231,327.00 | $ (112,186.00) |
| 04.0301 | OAK BROOK TERRACE | 18066 W. 22ND STREET | OAK BROOK | IL | 60523 | $ - | $ 54,307.00 | $ (54,307.00) |
| 04.0321 | ALT. SHOPPES @ FARMINGTON | SHOPPES @ FARMINGTON | CANTON | CT | 06019 | $ 456,171.43 | $ 569,171.43 | $ (113,000.00) |
| 04.0326 | RED ROOF INN | 2350 ROCHESTER ROAD | TROY | MI | 48083 | $ 252,112.00 | $ 255,164.00 | $ (3,052.00) |
| 04.0367 | GIORGIO ARMANI | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 | $ 117,465.23 | $ 193,932.19 | $ (76,466.96) |
| 04.0373 | NAUTICA | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 | $ 26,181.00 | $ 56,295.00 | $ (30,114.00) |
|  |  |  |  |  |  | $1,965,276.96 | $3,038,694.60 | $ (1,073,415.64) |

1.4 - 1

11DBABDJ5952.1

SCHEDULE 2.8

## LIST OF EMPLOYEES/EMPLOYMENT CONTRACTS

1. Employees subject to Employment Agreements:          None

2. At Will Employees:

| NAME | LOCATION |
|------|----------|
| ARNOLDE, DAVID | CHICAGO, IL |
| BLAUE, PAULA | CHICAGO, IL |
| COEVER, TIM | BOSTON, MA |
| CURRAN, TOM | BOSTON, MA |
| DEBOER, WENDY | BOSTON, MA |
| DISANTO, WILLIAM | CHICAGO, IL |
| DWYER, JIM | CHICAGO, IL |
| FOX, NICK | CHICAGO, IL |
| FOX, TARA | CHICAGO, IL |
| FRANK, ROD | CHICAGO, IL |
| GUSTAFSON, GUS | CHICAGO, IL |
| HUGUELEY, SCOTT | CHICAGO, IL |
| LYDON, EUGENE | CHICAGO, IL |
| MIELE, HENRY | CHICAGO, IL |
| MULLIGAN, KAREN | BOSTON, MA |
| PEREZ, MARTIN | CHICAGO, IL |
| RAPP, DOTTIE | CHICAGO, IL |
| REDMOND, KIM | CHICAGO, IL |
| RIDNER, DENNIS | CHICAGO, IL |
| SETARO, MARK | CHICAGO, IL |
| SUNDERLAND, JOEL | BOSTON, MA |

SCHEDULE 2.12

<u>LIST OF WARRANTIES & GUARANTIES</u>

Any and all equipment warranties

SCHEDULE 2.14

<u>LITIGATION</u>

1.    ALL LAWSUITS FILED WITH RESPECT TO THE ASSIGNED CONTRACTS SHALL BECOME THE RESPONSIBILITY OF PURCHASER.

2.    ALL MECHANIC'S LIENS RECORDED AGAINST PROPERTIES ASSOCIATED WITH THE ASSIGNED CONTRACTS SHALL BECOME THE RESPONSIBILITY OF PURCHASER.

SCHEDULE 1.1(j)

<u>VEHICLES</u>

| OWNERSHIP | YEAR | MAKE | MODEL | PLATE | REG. STATE |
|---|---|---|---|---|---|
| BALANCE DUE | 2002 | TOYOTA | AVALON | 1390010 | IL |
| BALANCE DUE | 2001 | FORD | ESCAPE | 264MHR | IL |
| PAID IN FULL | 1995 | FORD | BOX TRUCK VAN | 9379GB | IL |
| PAID IN FULL | 1998 | FORD | INTREPID | T979924 | IL |
| PAID IN FULL | 1998 | FORD | EXPLORER | D614615 | IL |
| PAID IN FULL | 2001 | FORD | PICKUP | 8842YC | IL |
| PAID IN FULL | 2001 | CHEVY | SILVERADO | 5RSL92 | TX |

HDEMB·0·13I95232·L