# EXHIBIT B

ˈRECEIVED

SEP - 7 2004

RAS BUILDERS INC.
RECEIVED

AUG 1 8 2004

## ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT (the "Agreement") is made as of the ____ day of August, 2004, by and between RAS BUILDERS, INC., a Colorado corporation (the "Seller"), and ENGLEWOOD CONSTRUCTION, INC., an Illinois corporation (the "Purchaser").

### WITNESSETH:

WHEREAS, Seller is the owner of a general construction business being conducted by it under the name and style of "RAS Builders" with multiple offices in the United States, including an office located at (i) 9747 West Foster Avenue, Schiller Park, Illinois 60176 (the "Chicago Office") pursuant to a Lease dated April 24, 1998, as amended (the "Chicago Lease") with AMB Partners II Local, L.P, as landlord ("Chicago Landlord") and (ii) Unit 304, 100 Ledgewood Place, Rockland, Massachusetts (the "Boston Office") pursuant to a Lease dated August 1, 2001 (the "Boston Lease") with Ledgewood Investment Corp., as landlord (the "Boston Landlord") (the Chicago Office and Boston Office are collectively referred to as the "Offices", and the Chicago Lease and Boston Lease are collectively referred to as the "Leases"); and

WHEREAS, Seller desires to sell to Purchaser certain of the assets, properties, rights and interests in its business existing, generated by or created out of the Offices (the "Business"); and

WHEREAS, Purchaser desires to purchase said certain assets offered for sale by Seller used in the conduct of the Business at the Offices so as to enable Purchaser to engage in, and carry on the Business in such geographic areas, for the purchase price and upon the terms and conditions as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is mutually agreed and covenanted by the parties hereto, as follows:

### ARTICLE 1
### PURCHASE AND SALE OF THE PURCHASED ASSETS: CLOSING

1.1    Sale of Purchased Assets. On the terms of and subject to the conditions set forth in this Agreement, and for the consideration set forth in Section 1.3, the Seller will, on the Closing Date (hereinafter defined in Section 1.4), sell, assign, transfer, convey and deliver to the Purchaser all of the Seller's right, title and interest in and to certain assets used exclusively by the Business or held exclusively by the Business (collectively the "Purchased Assets"):

(a)    Assumed Contracts, Agreements, Equipment Leases. All of the Seller's rights under certain construction contracts and other agreements, and commitments made in the ordinary course of business of the Seller, described on Schedule 1.1(a) (the "Assumed Contracts");

(b)    Certain Accounts Receivable. All of Seller's rights to receive payment and collection of certain accounts receivable described on Schedule 1.1(b) (the "Purchased Receivables");

110EMB 073/93332.3

(c)    Equipment and Machinery. All of the machinery, equipment, tools and other items of personal property owned by the Seller described on Schedule 1.1(c) (the "Equipment");.

(d)    Inventory. (i) All of the Seller's inventory of supplies and parts, held for sale to customers in the normal course of business, either on hand at the Business, on order, or in transit thereto described on Schedule 1.1(d) (the "Inventory");

(e)    Lists and Records. All records of the Seller relating to the Purchased Assets including, without limitation, property records, inventory records, employment records, contract files, purchasing and sales records and customer and vendor lists (the "Lists and Records");

(f)    Prepaid Items. All of the prepaid expenses of the Seller which are assignable and acceptable to the Purchaser and which are described on Schedule 1.1(f) and all similar items paid prior to the Closing Date (the "Prepaid Items");

(g)    Telephone Numbers, Etc. All telephone, telecopier and telex numbers of the Business and all of the Business listings in all telephone books and directories described on Schedule 1.1(g);

(h)    Governmental Permits and Licenses. All of the permits, licenses, registrations and qualifications which are held by the Business and which are transferable to the Purchaser and relate to the Purchased Assets or the Business;

(i)    Goodwill. The goodwill of the Business;

(j)    Vehicles. Title to the vehicles, including any leased vehicles (to be assigned to Purchaser) described on Schedule 1.1(j).;

(k)    Miscellaneous. Office furniture, office equipment supplies and all shelving and racking located at the Chicago Office and Boston Office.

1.2    Excluded Assets. Notwithstanding the foregoing, the following assets of the Seller (the "Excluded Assets") will be retained by the Seller and shall not be included in the Purchased Assets:

(a)    Due From Customers. All amounts due from customers not specifically assigned to Purchaser hereunder;

(b)    Corporate Books. Any books and records of the Seller and accounting and tax records which do not relate to the Purchased Assets or Assumed Liabilities, as defined herein.

(c)    Agreements. All agreements and other contracts not specifically assumed by Purchaser.

(d)    Cash. All cash and cash equivalent on hand and in banks, certificates of deposit, commercial paper, and securities of the Seller.

(e) <u>Other Accounts Receivable</u>. Excluding the Purchased Receivables, all other accounts and notes receivable of the Seller, including, without limitation, all accounts receivable arising from construction contracts not assigned to Purchaser hereunder.

1.3    <u>Intentionally Omitted</u>.

1.4    <u>Purchase Price</u>. In consideration of the sale and assignment of the Purchased Assets, Purchaser agrees to assume and become responsible for (i) the accounts payable, payables to subcontractors, liabilities and obligations of Seller described on <u>Schedule 1.4</u> hereof ("Assumed Liabilities") and (ii) the obligations of Seller under the Assumed Contracts.

1.5    <u>Closing</u>. The consummation of the transactions contemplated hereby (the "Closing") shall occur on the later to occur of (i) August 31, 2004 or (ii) receipt of all Required Consents as defined in Section 1.11(b) hereof.

1.6    <u>No Assumption of Liabilities</u>. Except for the Assumed Liabilities and Assumed Contracts, as set forth in Section 1.4 above, Seller shall retain, and Purchaser shall not assume or be responsible or liable with respect to, any indebtedness, liability or obligation of Seller or otherwise relating to the Business or any other business operated by Seller in the Offices or in other offices, of any kind whatsoever whether fixed, absolute, contingent or otherwise, known or unknown, due or to become due, accrued or not (collectively, "Liabilities"). Without limiting the foregoing, the following Liabilities of Seller shall not be assumed or discharged by Purchaser and Seller shall retain such Liabilities and discharge such Liabilities when due: (i) all Liabilities relating to, existing in connection with, or arising out of, the Business as operated prior to the Closing Date, or the ownership, possession, use, operation or sale or other disposition prior to the Closing Date of any of the Purchased Assets (or any other assets, properties, rights or interests associated at any time prior to the Closing Date with the Business); (ii) all Liabilities (federal, state, local and foreign) for taxes, including Liabilities for federal and state income and employee FICA taxes which an employer is legally obligated to withhold, Liabilities for employer FICA and unemployment taxes, Liabilities for sales and use taxes of any kind, Liabilities for property taxes and any taxes arising as a result of the transfer of the Purchased Assets, termination of employees or otherwise by virtue of the consummation of the transactions contemplated hereby; (iii) Liabilities for payables of Seller; (iv) Liabilities relating to any litigation, action, suit, claim, investigation or proceeding pending on the date hereof, or instituted hereafter, based in whole or in part on events or conditions occurring or existing in connection with, or arising out of, or otherwise relating to, the Business or the ownership, possession, use, operation, sale or other disposition prior to the Closing Date of any Purchased Assets (or any other assets, properties, rights or interests associated at any time prior to the Closing Date, with the Business); (v) Liabilities (including Liabilities arising from termination of employment) to any person at any time employed or considered for employment by Seller or its affiliates or their respective predecessors in interest in the Business or otherwise at any time with respect to incidents, events, exposures or circumstances occurring at any time during the period or periods of any such person's employment by Seller or its affiliates or their respective predecessors in interest, whenever such claims mature or are asserted.

1.7    <u>Removal of Assets</u>. Prior to the Closing, Seller shall remove all Excluded Assets from the Offices and deliver the Offices at Closing with all of the Purchased Assets.

1.8    <u>Interim Operations</u>. Between the date hereof and through the Closing Date (the "Interim Period"), Seller covenants and agrees to use its best efforts to continue to operate the Business in at least the

same manner that it previously operated the Business, provided, however, it is understood that Seller may begin to close other business offices, excluding the Offices hereunder. In consideration thereof, Seller shall be entitled to receive all revenues collected during the Interim Period by the Offices less amounts necessary to pay salaries and overhead expenses of the Offices. Such sums shall be retained by the Offices prior to remitting any other funds to Seller.

1.9    Security Deposit. The security deposit held by the Chicago Landlord under the Chicago Lease and by the Boston Landlord under the Boston Lease shall be assigned by Seller to Purchaser contemporaneously with the assignment of the leases.

1.10    Salaries; Bonuses. All salaries and bonuses due and owing or accrued through the Closing Date shall be paid by Seller to the Employees, as defined herein, on or before the Closing Date. Any accrued vacation pay and any employee termination liabilities shall be borne by Purchaser.

1.11    Conditions Precedent. It shall be a condition precedent to Purchaser's obligation to close this transaction that the following are satisfied in Purchaser's sole discretion:

(a)    Prior to Closing, Seller shall procure (i) the Chicago Landlord's written consent to the assignment of the Chicago Lease to Purchaser in a form satisfactory to Purchaser and (ii) the Boston Landlord's written agreement to an extension of the term of the Boston Lease and the assignment of the Boston Lease to Purchaser in a form satisfactory to Purchaser.

(b)    Prior to Closing, Seller shall use its best efforts to procure the written consent of the owners or contracting parties under the Assumed Contracts being assigned to Purchaser listed on Schedule 1.1(a). It shall be a condition precedent that the consents of the parties listed on Schedule 1.11(b) be procured prior to the Closing Date (the "Required Consents").

(c)    The absence of the occurrence of any material event adversely affecting the Business or the Purchased Assets.

(d)    Receipt, issuance, assignment or transfer of all licenses, intellectual property and permits required by Purchaser to operate the Business.

(e)    Seller shall cease operating under the name, "RAS Builders", in the metropolitan areas of Chicago and Boston.

(f)    No bankruptcy or insolvency proceedings shall have been filed by or against Seller.

ARTICLE II
REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby makes the following representations and warranties to Purchaser, all of which representations and warranties are true and correct as of the date of this Agreement and will be true and correct on the Closing Date:

2.1    Corporate Organization; Ownership. Seller is a corporation duly organized and validly existing under the laws of the State of Colorado and is authorized to do business in, and is in good standing

under the laws of, the State of Illinois and the State of Massachusetts, and has all requisite power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and to enter into this Agreement and perform all of the duties and obligations required of it by, under or pursuant to this Agreement.

2.2    Duly Authorized. This Agreement has been fully authorized by all requisite action, and upon the execution and delivery of this Agreement by Seller, it will be legally binding upon Seller in accordance with its terms and conditions. In connection therewith, Seller shall deliver to Purchaser at Closing, duly authorized and executed corporate resolutions authorizing and approving this Agreement and the transactions it contemplates, which resolutions shall be executed by all shareholders of Seller.

2.3    Encumbrances. Subject to Section 7.1 hereof, as of the Closing Date, the Purchased Assets will be free and clear of any and all security interests, liens, claims, encumbrances and liabilities of every kind and nature whatsoever.

2.4    Contracts: Purchased Receivables.

(a)    No oral or written Assumed Contracts shall exist as of the Closing Date between Seller and any other person, persons or entity, involving the Purchased Assets and neither the execution of this Agreement nor the consummation of the transactions provided for herein will conflict with, result in, or constitute a breach of, or constitute a default under, any court order, law, regulation, rule, agreement or obligation to which Seller is subject. Except for this Agreement and the Assumed Contracts listed on Schedule 1.1(a) hereof, there exists no oral or written contract, commitment, obligation or liability of any kind or nature whatsoever, in respect to the Purchased Assets which will survive the Closing and Seller shall not hereafter enter into any contract for, or make any commitment or obligation, which will bind Purchaser as successor-in-interest, with respect to the Purchased Assets. All of the Assumed Contracts listed on Schedule 1.1(a) are in full force and effect and neither Seller nor the contracting party is in default thereunder and no condition exists which with the giving of notice and the passage of time, will ripen into an event of default thereunder. Seller has not pledged its rights, title or interest in the Assumed Contracts to any third party.

(b)    All of the Purchased Receivables listed on Schedule 1.1(b) are current, valid, collectible and are not subject to any bad debts, write-offs or write-downs.

2.5    Notices. Seller has provided Purchaser with copies of all notices received by it prior to the date hereof relating to the Leased Premises, the Purchased Assets, the Business or the city and state licenses given pursuant to any federal, state, city or municipal law, ordinance, regulation or order.

2.6    Seller Liability. Seller shall be solely liable for the payment of all costs and expenses, liabilities, obligations and claims arising out of the ownership and operation of the Business, the Leased Premises and the Purchased Assets prior to the Closing Date.

2.7    Brokers. Seller has neither retained, nor used the services of, any individual or entity in such a manner as to entitle such individual or entity to any compensation for brokers' fees, agents' commissions, finders' fees or the like with respect to this Agreement and the transactions contemplated hereby.

HDEMB0/3495322.3

5

2.8     Employees, Employee Relations, Benefit Plans. Seller employs approximately 21 employees at the Chicago and Boston offices, and enjoys a good employer-employee relationship with all such employees. Schedule 2.8 contains a true and complete list of said employees of the Seller. Except as set forth in Schedule 2.8, all such employees are employed "at will" and there are no written employment agreements or oral understandings or agreements with employees. Seller maintains no employee benefit plans, except an employee health insurance plan.  Purchaser shall not be obligated to employ any of the Employees.  Seller shall pay all wages, salaries, vacation pay, severance benefit, pension liability, compensation or other employee benefit and shall be responsible for all liabilities due to, or related to, such Employees arising out of the Seller's employment or termination of the Employees. All Employees shall be terminated as of the Closing Date, and Purchaser shall not be obligated to rehire any of the Employees.

2.9     Leases. The Leases are in full force and effect and neither Seller nor the Landlord under either Lease are in default thereunder.  Each Lease is valid and binding upon Seller and, to Seller's knowledge, enforceable against the Landlord in accordance with the terms thereof. Except as set forth above, Seller has performed all obligations required to be performed by it under the Leases. Seller possesses and quietly enjoys the leased premises under each Lease. Except as described herein, there have been no amendments or modifications to the Leases, and Seller has delivered to Purchaser a complete and accurate copy of each Lease.

2.10    Compliance with Laws. Seller conducted the Business in accordance with all federal, state and local laws, regulations, orders and other legal requirements applicable thereto (collectively, "Legal Requirements"), and there is no violation or alleged violation of any such Legal Requirement or default with respect to any order, writ, judgment, award, injunction or decree of any federal, state or local court or governmental or regulatory authority or arbitrator currently or previously applicable to the Business, Seller or its assets, properties or operations.  Seller operates the Business pursuant to validly issued and fully assessed licenses and permits. No governmental agency has at any time contacted Seller concerning alleged violations of Legal Requirements, including relating to licensing regulations or rules, the environment and employee safety. Without limiting the foregoing, Seller has not disposed of any chemical, toxic or hazardous wastes in any manner which may form the basis for any present or future claim, demand or action seeking cleanup of any site, location, body of water, surface or subsurface.  Seller has no liability ("Hazardous Substance Liability") in connection with any release of any petroleum, petroleum products, Hazardous Waste or Hazardous Substance (as such terms are defined in any applicable state, federal or foreign environmental laws or regulations) into the environment. To the best of Seller's knowledge, the Leased Premises complies with the Americans with Disabilities Act.

-2.11    Tax Matters. All tax and information returns required to have been filed by Seller with the federal and all state and local government authorities have been duly filed and each such return correctly reflects the income, franchise, business, property, sales, use, withholding, excise, capital and other tax liabilities (collectively, "Taxes") and all other information required to be reported thereon. Seller has paid all Taxes shown to be due and payable on said returns, and all penalties, assessments and deficiencies of every nature and description incurred or accrued prior to the date hereof. No suits, actions, claims or proceedings have been asserted against Seller in respect of any Taxes.

2.12    Equipment. The Equipment is sufficient and adequate to permit it to carry on the Business as presently conducted, is in good operating condition and repair, normal wear and tear excepted, and Seller has not had problems with such condition or repair and has not received notice that any item or the use thereof is in violation of any Legal Requirement, including any health, safety or other ordinance, code or

regulation. Seller does not hold any Equipment of any other person or entity pursuant to any consignment, lease or similar arrangement and no other person or entity has any right, title or interest in the Equipment. Schedule 2.12 contains a complete and accurate list of all warranties and guaranties with respect to any of the Equipment.

2.13    Title to Purchased Assets. Seller holds and owns full, unconditional, good and marketable title to all of the Purchased Assets, in each case free and clear of all Liens. All Liens shall be released prior to or contemporaneously with the Closing. No person or entity other than Seller, including Seller's stockholders and affiliates, has any rights in, to or under such Purchased Assets.

2.14    Litigation. Except as set forth on Schedule 2.14, there are no claims, disputes, actions, suits, proceedings or investigations (collectively, "Claims") pending or, to Seller's current actual knowledge, threatened before any federal, state or local court or governmental or regulatory authority, or before any arbitrator of any nature, brought by or against Seller or any of Seller's stockholders, affiliates, officers, directors, employees or agents involving, affecting or relating to any of the Purchased Assets, the Business or the transactions contemplated by this Agreement nor, to the current actual knowledge of Seller, is there any basis for any such Claim. Neither Seller nor any of the Purchased Assets is subject to any order, writ, judgment, award, injunction or decree of any federal, state or local court or governmental or regulatory authority or arbitrator. To the extent any Claims relate to any of the Assumed Contracts or other Purchased Assets, Purchaser agrees to undertake the defense of each such Claim and, if necessary, substitute into such lawsuits as the party defendant.

2.15    Consents and Approvals. Seller has obtained all necessary consents, waivers, authorizations and approval of all governmental and regulatory authorities and of all other persons or entities required in connection with the execution, delivery and performance by Seller of this Agreement.

2.16    Labor Agreement. Seller is not a party to any collective bargaining agreement or any other agreement with any labor organization applicable to its employees.

2.17    Accuracy of Information. All documents, agreements and other materials delivered by or on behalf of Seller in connection with this Agreement and the transactions contemplated hereby are complete and accurate. All documents referred to in this Agreement, including in the Schedules and Exhibits, have been delivered to Purchaser. Seller acknowledges that the statements contained in this Section shall not be deemed to limit or qualify any of the other representations or warranties contained in this Agreement or in the Schedules or Exhibits hereto.

2.18    No Violation. The execution, delivery and performance by Seller of this Agreement and the transactions contemplated hereby do not and will not conflict with or result in any violation of, or constitute a breach or default under, any term of the charter documents, by-laws or other organizational documents of Seller, of any agreement, permit or other instrument to which Seller is a party or by which Seller or any of its affiliates is bound or to which any of the Business or any of the Purchased Assets is subject, or, to Seller's current actual knowledge, any law, regulation, order, judgment or decree of any court or other governmental or regulatory authority to which any of the same are bound or subject, and will not result in the creation of any Lien upon any of the Purchased Assets.

2.19    No Material Adverse Change. Since August 1, 2004, the Seller has operated the Business in the ordinary course and there has not been:

NDEMO 01239375.3                                 7

(1)     any adverse change in the condition (financial or otherwise) of the assets, liabilities, earnings or Business of the Seller or any change which would adversely affect the efficient operation of the Business;

(2)     any damage, destruction or loss, whether or not covered by insurance, adversely affecting the Purchased Assets or the Business;

(3)     any labor dispute adversely affecting the Purchased Assets or the Business;

(4)     to the best of Seller's knowledge, any statute, rule or regulation adopted which adversely affects the Purchased Assets or the Business;

(5)     any sale, transfer, pledge, mortgage, or other disposition of any Purchased Assets, or any sale, assignment, transfer or other disposition of any patents, copyrights, trademarks, trade names, licenses, franchises, know-how, proprietary processes, formulae or software, or other intangible assets;

(6)     any capital expenditure or commitment in excess of $10,000.00 for additions to property, plant or equipment of Seller;

(7)     any bankruptcy or insolvency proceeding commenced by Seller or threatened against Seller.

2.20    <u>Condition and Suitability of Equipment</u>. All of the Equipment, whether owned or leased by the Seller, is in good working order and condition, ordinary wear and tear excluded, and is suitable for the purposes for which it is used in the Business.

2.21    <u>Lists and Records</u>. The Lists and Records, including the customer list and vendors list are complete, true and correct in all material respects necessary to the operation of the Business and accurately reflect, in all material respects necessary to the operation of the Business, the Seller's dealings and relations with its customers, clients and suppliers.

2.22    <u>Insurance</u>. The Seller has adequately insured all properties and employees of a character usually insured by persons engaged in similar businesses against loss or damage or injury resulting from fire or other risks insured against by extended coverage and public liability insurance of a kind customarily insured against by such persons. The insurance policies of the Seller are in full force and effect and all premiums due thereon have been paid.

2.23    <u>Business Generally</u>. Since August 1, 2004, there have been no events or transactions or information which has come to the attention of the Seller which could be reasonably expected to have a material adverse effect on the Purchased Assets or Business.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

Purchaser hereby makes the following representations and warranties to Seller, all of which representations and warranties are true and correct as of the date of this Agreement and will be true and correct on the Closing Date:

3.1    <u>Corporate Organization</u>. Purchaser is a corporation duly organized and validly existing under the laws of the State of Illinois and is authorized to do business and is in good standing under the laws of the State of Illinois and has all requisite power to enter into this Agreement and perform all of the duties and obligations required of it by, under or pursuant to this Agreement.

3.2    <u>Duly Authorized</u>. This Agreement has been fully authorized by all requisite action of Purchaser and its shareholder, partners or members and upon the execution and delivery of this Agreement by Purchaser, it will be legally binding upon Purchaser in accordance with its terms and conditions.

3.3    <u>Breach of Law</u>. Neither the execution of this Agreement nor the consummation of the transactions provided for herein will conflict with, result in, or constitute a breach of, or constitute a default under, any court order, law, regulation, rule, agreement or obligation to which Purchaser is subject.

3.4    <u>Brokers</u>. Purchaser has neither retained, nor used the services of, any individual or entity in such a manner as to entitle such individual or entity to any compensation for brokers' fees, agents' commissions, finders' fees or the like with respect to this Agreement and the transactions contemplated. hereby. Purchaser further agrees to indemnify Seller from any expense, loss or damage arising from any claim made by a broker or finder claiming to have acted on behalf of the Purchaser.

3.5    <u>Litigation</u>. There are no Claims pending or, to Purchaser's current actual knowledge, threatened before any federal, state or local court or governmental or regulatory authority, or before any arbitrator of any nature, brought by or against Purchaser or any of Purchaser's stockholders, members, affiliates, officers, directors, employees or agents involving, affecting or relating to any of the Purchased Assets, the Business or the transactions contemplated by this Agreement nor, to the current actual knowledge of Purchaser, is there any basis for any such Claim. Purchaser is not subject to any order, writ, judgment, award, injunction or decree of any federal, state or local court or governmental or regulatory authority or arbitrator.

3.6    <u>Consents and Approvals</u>. Purchaser has obtained all necessary consents, waivers, authorizations and approval of all governmental and regulatory authorities and of all other persons or entities required in connection with the execution, delivery and performance by Purchaser of this Agreement.

3.7    <u>No Violation</u>. The execution, delivery and performance by Purchaser of this Agreement and the transactions contemplated hereby do not and will not conflict with or result in any violation of, or constitute a breach or default under, any term of the charter documents, by-laws or other organizational documents of Purchaser, of any agreement, permit or other instrument to which Purchaser is a party or by which Purchaser or any of its affiliates is bound.

ARTICLE IV
CLOSING DOCUMENTS

4.1    Seller's Closing Deliveries.  On the Closing Date, Seller shall deliver to Purchaser the following, all in form reasonably satisfactory to Purchaser:

(a)    Bill of Sale in the form attached hereto as Exhibit "A";
(b)    UCC-3's of all Liens or such other documents which shall be reasonably satisfactory to Purchaser, including payoff letters which shall specify the amounts to be paid to release any Liens;
(c)    Certificate of Good Standing of Seller;
(d)    Certified copy of corporate resolutions of the board of directors and shareholders of Seller authorizing this transaction; and
(e)    Assignment and Assumption of Lease and the Landlord's consent thereto (Chicago Lease and Boston Lease);
(f)    Assignment of all warranties and guaranties;
(g)    Assignment of all licenses and permits;
(h)    Assignment and Assumption of all Assumed Contracts and the Required Consents in the form of Exhibit "B";
(i)    Assignment and Assumption of all Purchased Receivables in the form of Exhibit "C";
(j)    Assignment and Assumption of the Assumed Liabilities in the form of Exhibit "D";
(k)    Keys to the Leased Premises in Seller's possession;
(l)    Certificate remaking Seller's representations and warranties set forth in Article II hereof in the form of Exhibit "E"; and
(m)    A certificate by the Secretary of Seller certifying as to the Articles of Incorporation and Bylaws of the Seller.

4.2    Purchaser's Closing Deliveries.  On the Closing Date, Purchaser shall deliver to Seller the following:

(a)    Certificate of Good Standing of Purchaser;
(b)    Certified copy of the resolutions of the shareholders of Purchaser authorizing this transaction;
(c)    Assignment and Assumption of Lease (Chicago and Boston);
(d)    Assignment and Assumption of Assumed Contracts;
(e)    Assignment and Assumption of Purchased Receivables; and
(f)    Assignment and Assumption of Assumed Liabilities.

- ARTICLE V
INDEMNIFICATION

5.1    Indemnification by Seller.  Seller agrees to indemnify and hold harmless the Purchaser, its shareholders, partners, members, officers and directors from and against any and all losses, demands, damages, claims, actions or causes of action, assessments, deficiencies, liabilities, suits, judgments, costs, attorneys' fees and expenses incurred by reason of claims, obligations, debts, demands or liabilities existing or arising against Seller, the Purchased Assets or the Business (including all construction contracts and

liabilities of Seller excluding the Assumed Contracts and Assumed Liabilities), prior to the Closing Date of this transaction, or arising from any breach or non-fulfillment of any warranty, covenant, indemnity, omission of a material fact, or representation on the part of the Seller under this Agreement or from any misrepresentation in or occasioned by any instrument furnished by Seller under this Agreement, or the failure of Seller to perform any obligation owing by Seller to Purchaser under this Agreement.

5.2    Indemnification by Purchaser.  Purchaser agrees to indemnify and hold harmless the Seller, its shareholders, officers and directors, from and against any and all losses, demands, damages, claims, actions or causes of actions, assessments, deficiencies, liabilities, suits, judgments, costs, attorneys' fees and expenses incurred by reason of claims, obligations, debts, demands or liabilities existing or arising against Purchaser, from and after the Closing Date, or arising from any breach or non-fulfillment of any warranty, covenant, indemnity or representation on the part of Purchaser under this Agreement or from any misrepresentation in or occasioned by any instrument furnished by Purchaser under this Agreement, or the failure of Purchaser to pay or perform any obligation owing by Purchaser to Seller under this Agreement.

5.3    Demand.  Seller and Purchaser agree that promptly upon the receipt by either of any demand, assertion or claim by a third person or entity with respect to which the recipient is entitled to indemnification from the other party, the recipient shall so notify the other party in writing and such notification shall contain a statement of such information respecting the same as the recipient may then have, and the other party agrees, subject to the provisions of contest hereinafter stated, to pay over to the party indemnified within ten (10) days of such notice, such monies as shall be sufficient to pay the full amount of any such demand or claim, together with any interest that may be payable with respect thereto; PROVIDED, HOWEVER:

(a)    Each party reserves the right to contest and defend by all appropriate legal or other proceedings any such claims, assertions or demands which it may be called upon to pay under the provisions hereof, provided that notice of intention to so contest shall be delivered to the other party within ten (10) days from the date the indemnifying party has been notified of the existence of such demand, assertion or claim, and no such contest shall result in any forfeiture, attachment or lien upon any property of the party indemnified and the indemnifying party shall pay all costs and expenses of such contest, including any and all reasonable attorneys' fees; and

(b)    Any contest may be prosecuted in the name of either party hereto as may be appropriate, but the party indemnified shall have the right to participate in such proceedings and be represented by its own attorneys at its own cost and expense or at the cost and expense of the indemnitor if it fails to diligently prosecute such contest.  In the event of any such contest, the indemnifying party shall not be obligated to make any payment to such third party with respect thereto until all remedies available to it shall have been exhausted.

(c)    The failure of a party entitled to indemnification hereunder to notify the other party set forth above shall not relieve the other party of its obligations hereunder, provided the foregoing does not constitute a waiver by the indemnifying party for direct damages from such failure.

5.4    Survival.  The respective representations, warranties and covenants of each of the parties hereto shall be deemed to be remade as of the Closing Date and shall survive the Closing.

## ARTICLE VI
## NONCOMPETITION; NON-SOLICITATION

6.1    <u>Covenant not to Compete</u>. In consideration of the Purchaser's agreement to purchase the Purchased Assets (and assume the Assumed Liabilities are Assumed Contracts), Seller and Robert A. Shupe covenant and agree not to directly or indirectly (whether as a partner, owner, shareholder, consultant, employee or otherwise) establish, participate in, manage, operate, control, own, invest in or consult with a business similar to or competitive with the Business in the metropolitan areas of Chicago, Illinois and Boston, Massachusetts for a period of two (2) years from and after the Closing Date.  The foregoing covenants shall include any entity owned or controlled by Seller or Robert A. Shupe. This provision shall survive the Closing.

6.2    <u>Non-Solicitation of Clients and Customers</u>. From and after the Closing Date, Seller shall not take any action, directly or indirectly, whether for its or his own account or for or with any other person or entity whatsoever which engages in any business or activities competitive with the Purchaser, to solicit, interfere with, or endeavor to entice away from the Purchaser any person or entity of any kind whatsoever which was or is a client or customer of the Business in Chicago, Illinois or in Boston, Massachusetts or any potential client or customer in Chicago, Illinois or in Boston, Massachusetts with which the Seller was theretofore actively engaged in sales or promotional efforts, and Seller shall not approach any such customer or client or potential customer or client for such purposes or knowingly cooperate with the taking of any such action by any other person or entity.

6.3    <u>Non-Solicitation of Employees</u>. From and after the date of this Agreement, Seller shall not take any action, directly or indirectly, to solicit or induce employees of Seller to terminate their employment with Purchaser after the Closing Date.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

7.1    <u>Notices</u>. Any notice in respect to this Agreement or to any transaction or other matter arising out of or relating to this Agreement shall be in writing and served on the party to whom it is directed at the following addresses:

|   |   |
|---|---|
| If to Seller: | RAS Builders, Inc. |
|  | 180 East Hampden Avenue |
|  | Englewood, Colorado 80113 |
|   |   |
| If to Purchaser: | William J. DiSanto |
|  | 9747 West Foster |
|  | Schiller Park, Illinois 60176 |
|   |   |
| with a copy to: | Weinberg Richmond LLP |
|  | 333 West Wacker Drive, Suite 1800 |
|  | Chicago, Illinois 60606 |
|  | Attn: Harold S. Dembo |

Any notice may be served personally by registered or certified mail, postage prepaid, return receipt requested. If sent by registered or certified mail, a notice shall be deemed to have been given as of the third business day following its deposit, properly addressed with postage fully prepaid, in the U.S. Mail. The address at which notice is to be given any party may be changed by giving notice to the other party as provided above.

7.2     Remedies.  Any remedies provided herein are not exclusive, but cumulative and are in addition to any remedies which may be provided by law or in equity.

7.3     Governing Law.  This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Illinois.

7.4     Time of the Essence.  Time is of the essence of this Agreement and all provisions herein relating thereto shall be strictly construed.

7.5     Headings.  The Section headings are inserted for convenience only and are in no way intended to interpret, define, or limit the scope or content of this Agreement or any provision thereof.

7.6     Entire Agreement.  This Agreement, together with the Schedules and Exhibits attached hereto, constitutes the entire agreement of the parties and supersedes all prior agreements between the parties, whether oral or written, relative to the subject matter of this Agreement. Further, this Agreement may not be amended except by written instrument executed by Seller and Purchaser, and no terms hereof may be waived except by a written instrument executed by the party waiving compliance.

7.7     Expenses.  Seller and Purchaser shall each pay their respective costs and expenses, including attorneys' fees, incident to the carrying out of this Agreement, whether or not the transactions contemplated hereby are consummated.

7.8     Prevailing Party.  In the event of any dispute, controversy, litigation or legal action arising from this Agreement, Seller and Purchaser agree that the prevailing party shall be reimbursed for its reasonable attorney's fees and other costs related to the dispute or legal action.

7.9     Counterparts.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

7.10    Further Assurances.  Upon the request of Purchaser at any time on or after the Closing Date, Seller will forthwith execute and deliver such further instruments of assignment, transfer, conveyance, endorsement, direction or authorization and other documents as Purchaser or its counsel may reasonably request in order to perfect title of Purchaser and its successors and assigns in and to the Purchased Assets or otherwise to effectuate the purpose of this Agreement.

7.11    Successors and Assigns; Assignability; Beneficiaries.  This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective successors, heirs, representatives and assigns, as the case may be; provided, however, that no party shall assign or delegate this Agreement or any of the rights or obligations created hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld. However, Purchaser shall have the right to assign and transfer

its rights, title and interest in, to and under Agreement to an entity owned or controlled by or affiliated with Purchaser. Except as expressly set forth herein, nothing in this Agreement shall confer upon any persons not a party to this Agreement, or the legal representatives of such persons, any rights or remedies of any nature or kind whatsoever under or by reason of this Agreement.

7.12    <u>Announcement</u>.  Purchaser shall have the right to announce to the public the foregoing transaction.

7.13    <u>Waiver of Conflicts</u>.  Purchaser and Seller acknowledge that Weinberg Richmond LLP ("WR LLP") is representing Purchaser in this matter.  WR LLP has performed legal services and has acted as legal counsel for Seller in other matters.  Notwithstanding the foregoing, the parties hereby agree to waive the conflict of interest.  Seller has had the opportunity to receive advice from separate legal counsel in this matter.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK; SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, Seller and Purchaser have executed this Agreement on the date first above written.

PURCHASER:                                    SELLER:

ENGLEWOOD CONSTRUCTION, INC.                  RAS BUILDERS, INC.

By: _____                   By: _____
Name: _____                   Name: _____
Its: _____                   Its: _____

## JOINDER

The undersigned hereby joins in the execution of this Agreement for purposes of being bound by the terms of Section 6.1, 6.2 and 6.3 hereof.

_____

Robert A. Shupe

Dated: 4/1/04, 2004

EXHIBIT "A"

## BILL OF SALE

Seller, _____, an Illinois corporation, in consideration of TEN AND NO/100 DOLLARS ($10.00), the receipt whereof is hereby acknowledged, does hereby sell, assign, transfer and set over to Buyer,_____, an Illinois corporation, free and clear of all liens, and with full warranties of title, all of the Purchased Assets listed on Schedule "A-1" attached hereto and made a part hereof.

TO HAVE AND TO HOLD all of Seller's right, title, and interest, if any, and to the extent limited herein, in and to the aforesaid Purchased Assets unto Buyer, its successors and assigns forever.

All capitalized terms used in this Bill of Sale and not otherwise defined shall have the meanings given in the Asset Purchase Agreement dated _____, 2004 between the parties.

IN WITNESS WHEREOF, Seller has signed and sealed this Bill of Sale this ____ day of _____, 2004.

By:    _____
              President

STATE OF ILLINOIS )
                  ) SS
COUNTY OF COOK    )

I, _Kim Redmond_, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that _Robert A Shue_, the _____ President of _KAS Builders_, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as _____ President of said corporation, as his free and voluntary act and as the free and voluntary act of said corporation, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this _8th_ day of _August_, 2004.

_Kim Redmond_
Notary Public

```
OFFICIAL SEAL
KIM REDMOND
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 09-15-06
```

SCHEDULE "A-1"

TO THE BILL OF SALE

EXHIBIT "B"

## ASSIGNMENT OF CONSTRUCTION CONTRACT

This ASSIGNMENT OF CONSTRUCTION CONTRACT (hereinafter referred to as the "Assignment") is made as of the _____ day of _____, 2004 (hereinafter the "Effective Date"), by and between RAS BUILDERS, INC., a Colorado corporation (hereinafter referred to as "Assignor") and ENGLEWOOD CONSTRUCTION, INC., an Illinois corporation (hereinafter referred to as "Assignee").

## R E C I T A L S :

A.    Assignor entered into that certain Construction Contract dated _____, (hereinafter referred to as the "Construction Contract") with _____ (hereinafter referred to as "Contracting Party") for certain work as described in said Construction Contract at the property described therein (hereinafter referred to as the "Project").

B.    Assignor desires to assign their rights, title and interest in, to and under the Construction Contract to Assignee and Assignee desires to accept said assignment, subject to all of the terms and provisions of the Construction Contract.

Therefore, in consideration of the recitals specified above which are by this reference incorporated herein and the benefits to be derived from the mutual observance of the covenants and provisions specified below, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Assignor and Assignee agree as follows:

1.    Assignment of Construction Contract.  Assignor hereby assigns to Assignee all of Assignor's rights, title and interest in and to the Construction Contract, effective as of the date hereof. Assignor represents and warrants to Assignee that: (i) Assignor is not in default under the Construction Contract, (ii) Assignor has received no notices from Contracting Party declaring Assignor to be in default under the Construction Contract, (iii) to the best of Assignor's knowledge, Contracting Party is in not default under the Construction Contract, (iv) the Construction Contract and all of the change orders to the Construction Contract are attached hereto as Schedule "A-1", and (v) Assignor has been paid $_____ of the total amount of the Construction Contract ("Consideration") by Contracting Party, and $_____ of the total amount of the Construction Contract still remains unpaid.

2.    Assumption of Construction and Contract.  Assignee hereby assumes from Assignor all of Assignor's rights, title and interest in and to the Construction Contract, effective as of the date hereof, and Assignee agrees and covenants to perform all obligations, duties, agreements and covenants of Assignor under the Construction Contract from and after the date hereof.

3.    Condition Precedent.  The assignment and assumption contemplated herein shall be effective upon the receipt of the Acknowledgment executed by Contracting Party.

4.    Underline{General Provisions}.

A.    Underline{Descriptive Headings}. Titles to paragraphs and subparagraphs are intended only for convenience of reference and shall be given no effect in the construction or interpretation of this Assignment.

B.    Underline{Governing Law}. This Assignment and the performance hereof shall be construed and interpreted in accordance with the laws of the State of Illinois.

C.    Underline{Severability}. If any one or more provisions of this Assignment shall be adjudged or declared invalid or unenforceable by a court of competent jurisdiction, the validity or enforceability of all or any other provision of this Assignment shall not be affected thereby. Accordingly, in such event: (i) this Assignment shall be construed as if it did not contain the particular clause(s) so declared to be invalid or unenforceable, and (ii) the rights and obligations of the parties shall be construed and enforced accordingly.

D.    Underline{Time}. Time is of the essence of this Assignment.

IN WITNESS WHEREOF, Assignor and Assignee have caused this Assignment to be duly executed on the date first appearing above.

ASSIGNOR:

RAS BUILDERS, INC., a Colorado corporation

By: _____

Its: _____

ASSIGNEE:

ENGLEWOOD CONSTRUCTION, INC., an Illinois corporation

By: _____

Its: _____

## <u>ACKNOWLEDGMENT</u>

The undersigned hereby acknowledges and consents to the above Assignment and also further acknowledges and agrees as follows:

(a)   that the Construction Contract is in full force and effect and that there have been no amendments or modifications of the Construction Contract;

(b)   that the undersigned have no set-offs, claims or defenses to the enforcement of the Construction Contract;

(c)   the Construction Contract and all of the change orders to the Construction Contract are attached hereto as <u>Schedule "A-1"</u>; and

(d)   The undersigned has paid to Assignor $_____ of the total amount of the Construction Contract and $_____ of the total amount of the Construction Contract remains unpaid.

CONTRACTING PARTY:

_____

By: _____
    Name: _____
        Its: _____

## Schedule A-1

### Construction Contract

EXHIBIT "C"

## ASSIGNMENT AND ASSUMPTION OF PURCHASED RECEIVABLES

This Assignment and Assumption is made by and between RAS BUILDERS, INC., a _____ corporation ("Assignor") and _____ ("Assignee") this _____ day of _____, 2004, in connection with the purchase and sale of certain assets of Assignor.

### WHEREAS:

A.    Assignor is the seller of certain assets ("Assets") owned by Seller and used in its construction business ("Business").

B.    Assignor and Assignee have entered into a certain Asset Purchase Agreement dated _____ ("Agreement") for the sale of the Assets (for purposes of this Assignment and Assumption, initially capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement); and

C.    In connection with the conveyance of the Assets by the Assignor to Assignee, Assignor has agreed to assign to Assignee certain receivables accruing out of operation of Assignor's business with respect to said Assets ("Purchased Receivables").

### THEREFORE:

In consideration for Ten Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree to the following:

1.    Assignor hereby assigns, transfers, sets over and conveys to Assignee the Purchased Receivables specifically listed on Schedule "C-1". Assignor acknowledges that, in consideration of the consummation of the closing as set forth in the Agreement, Assignor disclaims and relinquishes any rights to the Purchased Receivables. In the event Assignor collects any Purchased Receivable after the date hereof, Assignor covenants and agrees to promptly remit same to Assignee. Upon request, Assignor shall advise the obligors that their respective receivables have been assigned to and purchased by Assignee and payment should be made to Assignee.

2.    Excluding the Purchased Receivables, Assignor shall remain the owner of any other accounts receivable or notes receivable relating to the Assets arising prior to the date hereof and its business ("Retained Receivables"), and Assignor reserves the right to collect said Retained Receivables.

3.    Assignee shall be have the unrestricted right to collect, discount and sue for collection all of the Assumed Receivables.

4.    This Assignment shall be binding upon and inure to benefit of Assignor, Assignee and their respective heirs, successors and assigns.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption this ___ day of _____, 2004, which Assignment is effective this date.

ASSIGNOR:                                    RAS BUILDERS, INC.

                                             By: _____
                                             Its: _____

ASSIGNEE:                                    ENGLEWOOD CONSTRUCTION, INC.

                                             By: _____
                                             Its: _____

. EXHIBIT "D"

<u>ASSIGNMENT AND ASSUMPTION OF ASSUMED LIABILITIES</u>

This Assignment and Assumption is made by and between RAS BUILDERS, INC., a _____ corporation ("Assignor") and _____ ("Assignee") this _____ day of _____, 2004, in connection with the purchase and sale of certain assets of Assignor.

WHEREAS:

A.    Assignor is the seller of certain assets ("Assets") owned by Seller and used in its construction business ("Business").

B.    Assignor and Assignee have entered into a certain Asset Purchase Agreement dated _____ ("Agreement") for the sale of the Assets (for purposes of this Assignment and Assumption, initially capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement); and

C.    In connection with the conveyance of the Assets by the Assignor to Assignee, Assignee has agreed to assume certain liabilities accruing out of operation of Assignor's business with respect to said Assets ("Assumed Liabilities").

. THEREFORE:

. In consideration for Ten Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree to the following:

1.    Assignor hereby assigns, transfers, sets over and conveys to Assignee the Assumed Liabilities specifically listed on <u>Schedule "D-1"</u>.

2.    Excluding the Assumed Liabilities, Assignor shall remain liable to fulfill, perform and discharge all other obligations relating to the Assets arising prior to the date hereof and its Business ("Retained Liabilities"). Assignor shall defend, indemnify and hold harmless Assignee from any liability, damages, causes of action, expenses and reasonable attorneys' fees incurred by Assignee by reason of the failure of Assignor to fulfill, perform and discharge all of its obligations relating to the Assets which arose prior to the date hereof.

3.    Assignee shall be liable to pay, settle, perform and discharge the Assumed Liabilities. Assignee shall defend, indemnify and hold harmless Assignor from any liability, damages, causes of action, expenses and reasonable attorneys' fees incurred by Assignor by reason of the failure of Assignee to pay, settle and discharge the Assumed Liabilities.

4.    . This Assignment shall be binding upon and inure to benefit of Assignor, Assignee and their respective heirs, successors and assigns.

HDEHD:013193723.3                                                    D – 1

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption this ___ day of _____, 2004, which Assignment is effective this date.

ASSIGNOR:                                    RAS BUILDERS, INC.

By: _____

Its: _____

ASSIGNEE:                                    ENGLEWOOD CONSTRUCTION, INC.

By: _____

Its: _President_____

.SCHEDULE D-1

List of Assumed Liabilities

. EXHIBIT "E"

## CERTIFICATE REMAKING REPRESENTATIONS AND WARRANTIES

THIS RE-AFFIRMATION OF REPRESENTATIONS AND WARRANTIES ("Re-Affirmation") is made as of this ____ day of _____, 2004 by RAS BUILDERS, INC., a _____ _____ (hereinafter referred to as "Seller").

### W I T N E S S E T H:

WHEREAS, that certain Asset Purchase Agreement dated as of _____, 2004 ("Contract") was entered into between Seller and ENGLEWOOD CONSTRUCTION, INC., as purchaser ("Purchaser"), pertaining to the purchase and sale of certain assets owned by Seller and arising out of its construction business; and

WHEREAS, as a condition to the closing of the transaction contemplated under the Contract, Seller is required to execute and deliver this Re-Affirmation.

NOW, THEREFORE, for Ten Dollars ($10.00) in hand paid, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby certifies to Purchaser that all of the representations and warranties made by Seller pursuant to the Contract are true and correct as of the date hereof and are reaffirmed and remade as of the date hereof to Purchaser by Seller, except as shown on Exhibit "A" attached hereto and made a part hereof. This Affirmation has been delivered by Seller to Purchaser pursuant to the terms of the Contract and nothing herein contained is intended to modify the terms of the Contract.

IN WITNESS WHEREOF, Seller has executed and delivered this Re-Affirmation as of the day and year first above written.

RAS BUILDERS, INC.

By: _____

Its: _____

HOEHNONI9J32.3                    E - 1

EXHIBIT "A"

## EXCEPTIONS TO REPRESENTATIONS AND WARRANTIES

SCHEDULE 1.1(a)

ASSUMED CONTRACTS

| JOB NO. | NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| 03.0398 | C.D. PEACOCK | 342 NORTH MICHIGAN AVENUE | CHICAGO | IL | 60601 |
| 04.0059 | HARLEM FURNITURE | 2525 HARLEM AVENUE | CHICAGO | IL | 60607 |
| 04.0103 | CHAMPPS RESTAURANT | 16165 S. LAGRANGE ROAD | ORLAND PARK | IL | 60467 |
| 04.0120 | HAWTHORN CENTER REMODEL | HAWTHORN CENTER | VERNON HILLS | IL | 60061 |
| 04.0155 | FOX VALLEY CENTER REMODEL | FOX VALLEY CENTER | AURORA | IL | 60504 |
| 04.0252 | T MOBILE | 315 ROUTE 206 | HILLSBOROUGH | NJ | 08844 |
| 04.0267 | DISCOUNT TIRE | 765 E. BOUGHTON ROAD | BOLINGBROOK | IL | 60440 |
| 04.0277 | AVENUE | BRICKYARD MILL | CHICAGO | IL | 60639 |
| 04.0295 | STIR CRAZY | 28282 DIEHL ROAD | WARRENVILLE | IL | 60555 |
| 04.0298 | RED ROOF INN | 2580 CROOKS ROAD | ROCHESTER HILLS | MI | 48309 |
| 04.0299 | RED ROOF INN | 24300 SINCOLA COURT, NE | FARMINGTON HILLS | MI | 48335 |
| 04.0300 | RED ROOF INN | 3100 LITTLE MACK AVENUE | ROSEVILLE | MI | 48066 |
| 04.0301 | OAK BROOK TERRACE ALTERATIONS | 10066 W. 22ND STREET | OAK BROOK | IL | 60523 |
| 04.0321 | SHOPPES @ FARMINGTON VALLEY-A2&G | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |
| 04.0322 | BEAUTY AND MAIN | DERBY STREET SHOPPES | HINGHAM | MA | 02043 |
| 04.0326 | RED ROOF INN | 2350 ROCHESTER ROAD | TROY | MI | 48083 |
| 04.0367 | GIORGIO ARMANI | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 |
| 04.0373 | NAUTICA | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 |
| 04.0390 | FOOD 4 LESS | 274 S. BOLINGBROOK ROAD | BOLINGBROOK | IL | 60440 |
| 05.0002 | JARED JEWELRY | 2414 ALGONQUIN COMMONS | ALGONQUIN | IL | 60102 |
| 05.0003 | SNIP-ITS | DERBY STREET HOPPES | HINGHAM | MA | 02043 |
| 05.0005 | BEAUTY AND MAIN | 2 ELM SQUARE | ANDOVER | MA | 01810 |
| 05.0006 | BRIGHT HORIZONS | WELLESLEY OFFICE PARK | WELLESLEY | MA | 02481 |
| 05.0009 | ULTA | 1896 CARL D. SILVER PARKWAY | FREDERICKSBURG | MA | 22404 |
| 05.0010 | J. JILL | VARIOUS LOCATIONS | CHICAGO | IL | 60611 |
| 05.0017 | REI | DERBY STREET SHOPPES | HINGHAM | MA | 02043 |
| 05.0023 | T MOBILE | PITTSFORD PLAZA | PITTSFORD | NY | 14618 |
| 05.0024 | CLADDAUGH IRISH PUB | ALGONQUIN COMMONS | ALGONQUIN | IL | 60102 |
| 05.0025 | THEATER TAKES FLIGHT | GLEN TOWN CENTER | GLENVIEW | IL | 60031 |
| 05.0031 | VANNILLABOX CONSTRUCTION | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |

1.1(a) - 1

| JOB NO. | NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| 05.0032 | BUILDINGS C,D,E,F,H&I | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |
| 05.0034 | DICK'S SPORTING GOODS | SHOPPES AT FARMINGTON VALLEY | CANTON | CT | 06019 |
| 05.0039 | MOTOPHOTO | WOODLAND COMMONS | BUFFALO GROVE | IL | 60089 |
| 05.0004 | JOANN FABRICS | 257 N. WEBER ROAD | BOLINGBROOK | IL | 60440 |
| 05.0042 | BEBE | 1245 WORCHESTER ROAD | NATICK | MA | 01760 |
| 05.0052 | SPORTS AUTHORITY | 444 CONNECTICUT AVENUE | NORWALK | CT | 06854 |
| 05.0053 | FREZADO | HARLEM PLAZA | SUMMIT | IL | 60501 |
| 05.0057 | NAUTICAKIDS OUTLETS | LIGHTPOINT PLACE PREMIUM OUTLETS | MICHIGAN | IN | 46360 |
| 05.0079 | RED ROBIN BURGERS | COUNTY AIRE COMMONS | BOLINGBROOK | IL | 60490 |
| 05.0081 | OFFICE DEPOT | 11145 W. LINCOLN HIGHWAY | FRANKFORT | IL | 60423 |
| 05.0083 | JC PENNEYS | ORLAND PARK MALL | ORLAND PARK | IL | 60462 |
| 05.0084 | OFFICE DEPOT | 7100 N. MANNHEIM ROAD | ROSEMONT | IL | 60018 |
| 05.0086 | JOS A BANKS | TOWN CENTER & LEVI COMMONS | PERRYSBURG | OH | 43551 |
| 05.0087 | HOLLYWOOD ENTERTAINMENT | ALGONQUIN COMMONS | ALGONQUIN | IL | 60102 |
|  |  | VARIOUS LOCATIONS | BOSTON | MA |  |

1.1(a) - 2

SCHEDULE 1.1(b)

PURCHASED RECEIVABLES

(See Attached)

Lori: TINTHGERLINE\REPORT\Customer\VA Aging Detail by Customer and Territory Sort w Subtotals.rpt
Sort: CHI

08-10-2004
Accounting data

ng As of Date
ng Basis
aid Only?      Yes

System Date: 08-10-2004
System Time: 10:30 an
Files Used:  HASTER.ANH
             CURRENT.ART
             HASTER.JCH
             ACTIVITY.ANA

Record Security: Disabled

*Chicago (10 Pages)*

| Invoice | DEF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | | | | | | | | | | |
| 0001 | | | ALBERTSON'S INC. | | | | | | | |
| .0042-05FEB | 10 | 04-0042 | ISSI6 FULL CONTR H/COS | 02-10-2004 | 44,131.00 | | | | | 44,131.00 |
| .0042-5516F | 10 | 04-0042 | Retainage billed | 02-25-2004 | 13,303.00- | | | | | 13,303.00- |
| 0042-05REV | 10 | 04-0042 | ISSI6 AS-REV APPL IS | 07-20-2004 | 23,991.00- | | | | | 23,991.00- |
| | | | | | 349.00- | 349.00- | | | | |
| | | | Customer Total | | 54,390.00* | 349.00-* | .00* | .00* | .00* | 54,739.00* |
| 0408 | | | ACCOM ECONOMY | | | | | | | |
| 0296-04APR | 10 | 04-0290 | I7191 APR PROG H/COS | 04-20-2004 | 34,627.50 | | | | 34,627.50 | |
| 0290-05JUL | 10 | 04-0290 | I7191 1001 CONTR - RET | 07-29-2004 | 70,597.72 | 70,597.72 | | | | |
| 0290-7191F | 10 | 04-0290 | Retainage billed | 07-29-2004 | 49,400.00 | 49,400.00 | | | | |
| 0290-CHNG1 | 10 | 04-0290 | C/O I7191-1 | 05-20-2004 | 10,346.00 | | | 10,346.00 | | |
| 0290-CHNG2 | 10 | 04-0290 | C/O I7191-2 | 05-20-2004 | 1,099.00 | | | 1,099.00 | | |
| .0290-CHNG3 | 10 | 04-0290 | C/O I7191-3 | 05-20-2004 | 32,431.00 | | | 32,431.00 | | |
| .0290-CHNG4 | 10 | 04-0290 | C/O I7191-4 | 05-20-2004 | 4,576.00 | | | 4,576.00 | | |
| .0290-CHNG5 | 10 | 04-0290 | C/O I7191-5 | 05-20-2004 | 761.00 | | | 761.00 | | |
| 0290-CHNG6 | 10 | 04-0290 | C/O I7191-6 | 05-20-2004 | 26,277.00 | | | 26,277.00 | | |
| 0290-CHNG7 | 10 | 04-0290 | C/O I7191 - 7 | 06-20-2004 | 15,053.00 | | 15,053.00 | | | |
| 0290-CHNGO | 10 | 04-0290 | I7191 C/O I0 | 07-29-2004 | 10,479.00- | 10,479.00- | | | | |
| 0299-7030F | 10 | 04-0299 | Retainage billed | 05-31-2004 | 49,097.60 | | | 49,097.60 | | |
| | | | | | 49,097.60 | | | 49,097.60 | | |
| | | | | | 49,097.60 | | | 49,097.60 | | |
| 10299-CHG10 | 10 | 04-0299 | C/O I7030 - 10 | 06-20-2004 | 11,849.00 | | 11,849.00 | | | |
| 10299-CHG11 | 10 | 04-0299 | I7030 C/O Fil | 07-29-2004 | 62,324.00 | 62,324.00 | | | | |
| 10299-CHUG1 | 10 | 04-0299 | C/O I7030-1 | 05-20-2004 | 5,053.00 | | | 5,053.00 | | |
| | | | | | 5,851.00- | | | 5,851.00- | | |
| | | | | | 5,053.00 | | | 5,053.00 | | |
| 10299-CHNG2 | 10 | 04-0299 | C/O I7030-2 | 05-20-2004 | 1,069.00 | | | 1,069.00 | | |
| | | | | | 1,069.00- | | | 1,069.00- | | |
| | | | | | 1,069.00 | | | 1,069.00 | | |
| 10299-CHNG3 | 10 | 04-0299 | C/O I7030-3 | 05-20-2004 | 479.00 | | | 479.00 | | |
| | | | | | 479.00- | | | 479.00- | | |
| 10299-CHNG4 | 10 | 04-0299 | C/O I7030-4 | 05-20-2004 | 517.00 | | | 517.00 | | |
| | | | | | 517.00- | | | 517.00- | | |
| | | | | | 517.00 | | | 517.00 | | |
| 10299-CHNG5 | 10 | 04-0299 | C/O I7030-5 | 05-20-2004 | 666.00 | | | 666.00 | | |
| | | | | | 501.90- | | | 501.90- | | |
| | | | | | 501.90 | | | 501.90 | | |
| 10299-CHNG6 | 10 | 04-0299 | C/O I7030-6 | 05-20-2004 | 460.00 | | | 460.00 | | |
| 10299-CHNG7 | 10 | 04-0299 | C/O I7030-7 | 05-20-2004 | 2,376.00 | | | 2,376.00 | | |
| 10299-CHNG8 | 10 | 04-0299 | C/O I7030-8 | 05-20-2004 | 5,016.00 | | | 5,016.00 | | |
| 10299-CHNG9 | 10 | 04-0299 | C/O I7030-9 | 05-20-2004 | 102.00 | | | 102.00 | | |
| | 10 | 04-0299 | Retainage billed | 06-31-2004 | 57,405.50 | | | 57,405.50 | | |

...ion: T:\TINGGALINO\REPORTM\Custom\AR Aging Detail by Customer and Territory Sort w Subtotals.rpt
rator: CHI

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ANH
MASTER.ANT
CURRENT.ART
MASTER.JCH
ACTIVITY.ANA

Record Security: Disabled

...ng As of Date 08-10-2004
...ng Basis Accounting data
...aid Only? Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| **10408** | | | **ACCOR ECONOMY** | | | | | | | |
| 10300-7012F | 10 | 04-0300 | J7012 C/O I10 | 07-29-2004 | 501.90- | | | 501.90- | | |
| 10300-CHNG9 | 10 | 04-0300 | C/OJ7012 - 9 | 06-30-2004 | 517.00- | | | 517.00- | | |
| 1032G-04HAY | 10 | 04-0326 | J7021 HAY PROGRESS | 05-20-2004 | 479.00- | | | 479.00- | | |
| 1032G-7021F | 10 | 04-0326 | Retainage billed | 06-20-2004 | 1,069.00- | | | 1,069.00- | | |
| 1032G-CHNG1 | 10 | 04-0326 | C/OJ7021-1 | 05-20-2004 | 5,053.00- | | | 5,053.00- | | |
| 1032G-CHNG2 | 10 | 04-0326 | C/O J7021 - 2 | 06-20-2004 | 00,042.00 | 00,042.00 | | | | |
| 1032G-CHNG3 | 10 | 04-0328 | J7021 C/O I1 | 07-29-2004 | 17,367.00 | | 17,367.00 | | | |
| | | | | | 121,468.91 | | | 121,468.91 | | |
| | | | | | 54,998.10 | | 54,998.10 | | | |
| | | | | | 3,424.00 | | | 3,424.00 | | |
| | | | | | 72,777.00 | | 72,777.00 | | | |
| | | | | | 32,196.00- | 32,196.00- | | | | |
| | | | **Customer Total** | | 726,223.63* | 212,497.52* | 172,044.10* | 307,054.51* | 34,627.50* | .00* |
| | | | **BRIGHT HORIZONS FAMILY SOLUTIO** | | | | | | | |
| 50006-026REV | 10 | 05-0006 | REV APRI I1 & 2 | 07-01-2004 | 60,917.05 | | 60,917.05 | | | |
| | | | | | 34,321.96- | | 34,321.96- | | | |
| | | | | | 790.50- | | 790.50- | | | |
| | | | | | 19,359.00- | | 19,359.00- | | | |
| 50006-D3JUL | 10 | 05-0006 | JULY PROG W/CO I1-2 | 07-30-2004 | 167,371.65 | 167,371.65 | | | | |
| 50006-LTR01 | 10 | 05-0006 | LTR INV FOR AUTH MISC WORK | 07-16-2004 | 4,620.00 | 4,620.00 | | | | |
| | | | **Customer Total** | | 170,430.04* | 171,991.65* | 6,446.39* | .00* | .00* | .00* |
| **00107** | | **BOSS** | **CORPORATION** | | | | | | | |
| 40362-02APR | 10 | 04-0362 | I1257 FULL CONTRACT W/CO | 04-30-2004 | 5,009.43 | | | | 5,009.43 | |
| 40362-04HAY | 10 | 04-0362 | I1257 FULL CONTR W/CO I1-2 | 05-31-2004 | 5,028.30 | | | 5,028.30 | | |
| 40362-1257R | 10 | 04-0362 | Retainage billed | 04-30-2004 | 20,671.20 | | | | 20,671.20 | |
| | | | **Customer Total** | | 30,708.93* | .00* | .00* | 5,028.30* | 25,680.63* | .00* |
| **00167** | | **BANC** | **ONE, NA** | | | | | | | |
| 40371-02APR | 10 | 04-0371 | APRIL PROGRESS | 04-08-2004 | 94,012.43 | | | | | 94,012.43 |
| | | | | | 94,012.42- | | | | | 94,012.42- |
| 40371-04REV | 10 | 04-0371 | REV FINAL W/CO 1-10 | 07-16-2004 | 26,487.76 | 26,487.76 | | | | |
| 40371-RGTER | 10 | 04-0371 | Retainage billed | 05-31-2004 | 21,603.90 | | | 21,603.90 | | |
| 50001-D1REV | 10 | 05-0001 | REVISED JUNE PROGRESS | 07-16-2004 | 66,633.00 | 66,633.00 | | | | |
| 50007-LTR01 | 10 | 05-0007 | PERMIT FEES | 07-02-2004 | 1,941.00 | | | | | 1,941.00 |
| 50008-02HAY | 10 | 05-0008 | HAY PROGRESS | 05-31-2004 | 69,255.60 | | | 69,255.60 | | |
| 50008-03REV | 10 | 05-0008 | REVISED JUNE PROGRESS | 07-16-2004 | 26,639.30 | 26,639.30 | | | | |
| 50008-RDRET | 10 | 05-0008 | Retainage billed | 05-31-2004 | 15,320.34 | | | 15,320.34 | | |
| 50011-01HAY | 10 | 05-0011 | HAY PROGRESS | 05-31-2004 | 96,640.20 | | | 96,640.20 | | |
| ...-... | 10 | 05-0012 | FINISH F.F. W/COI1 | 06-30-2004 | 7,854.25 | | 7,854.25 | | | |

System Time: 10:10 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

ing As of Date   08-10-2004
ing Basis        Accounting date        Yes
paid Only?

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| **00167** | | | **BANK ONE, NA** | | | | | | | |
| 50019-03JUN | 10 | 05-0019 | JUNE PROG W/CO I1-6 | 06-30-2004 | 11,222.56 | | 11,222.56 | | | |
| 50019-03REV | 10 | 05-0019 | REVISED FINAL W/CO 1-6 | 07-16-2004 | 994.21 | 994.21 | | | | |
| 50019-03REV | 10 | 05-0019 | RE-REV APPL I3 | 07-20-2004 | 822.25 | 822.25 | | | | |
| 50026-02HAY | 10 | 05-0026 | HAY PROGRESS | 05-31-2004 | 50,245.50 | | | 50,245.50 | | |
| 50026-03JUN | 10 | 05-0026 | JUNE PROG W/CO1-3 | 06-30-2004 | 28,646.37 | | 28,646.37 | | | |
| 50026-RETEN | 10 | 05-0026 | Retainage billed | 05-31-2004 | 12,575.05 | | | 12,575.05 | | |
| 50050-01HAY | 10 | 05-0050 | HAY PROGRESS | 05-31-2004 | 126,478.00 | | | 126,478.00 | | |
| 50050-02JUN | 10 | 05-0050 | PO100001165 JUNE PROG | 06-30-2004 | 94,978.80 | | 94,978.80 | | | |
| | | | | **Customer Total** | 689,076.80* | 121,976.62* | 171,439.78* | 292,119.39* | .00* | 1,941.01* |
| **00402** | | | **BEAUTY & MAIN/ ACROSS THE POND** | | | | | | | |
| 50005-LTR01 | 10 | 05-0005 | DEMO/BLDG FEES | 06-21-2004 | 1,173.00 | | 1,173.00 | | | |
| | | | | **Customer Total** | 1,173.00* | .00* | 1,173.00* | .00* | .00* | .00* |
| **00459** | | | **BBPV, LLC** | | | | | | | |
| 40059-1DJUN | 10 | 04-0059 | FULL CONTR W/COS | 06-30-2004 | 157,412.16 | | 157,412.16 | | | |
| 40059-1DREV | 10 | 04-0059 | REV FINAL APPL I10 | 07-29-2004 | 5,016.98- | 5,016.98- | | | | |
| 40059-FINAL | 10 | 04-0059 | Retainage billed | 06-30-2004 | 145,490.92 | | 145,490.92 | | | |
| | | | | **Customer Total** | 297,866.10* | 5,016.90-* | 302,903.08* | .00* | .00* | .00* |
| **00011** | | | **CHAMPS ENTERTAINMENT** | | | | | | | |
| 40103-07JUN | 10 | 04-0103 | 100% CONTR W/COS | 06-30-2004 | 90,246.00 | | 90,246.00 | | | |
| | | | | | 90,246.00- | | 90,246.00- | | | |
| | | | | | 90,246.00 | | 90,246.00 | | | |
| 40103-FINAL | 10 | 04-0103 | Retainage billed | 06-30-2004 | 143,275.60 | | 143,275.60 | | | |
| | | | | | 143,275.60- | | 143,275.60- | | | |
| | | | | | 143,275.60 | | 143,275.60 | | | |
| 40103-FINL2 | 10 | 04-0103 | BRING CONTR TO FINAL NUMBER | 07-01-2004 | 1,560.00 | | 1,560.00 | | | |
| | | | | | 1,560.00 | | 1,560.00 | | | |
| | | | | | 1,560.00- | | 1,560.00- | | | |
| 40103-SETTL | 10 | 04-0103 | AGREED FINAL BILL D & D MILLER | 07-23-2004 | 41,638.00 | 41,638.00 | | | | |
| | | | | | 41,638.00- | 41,638.00- | | | | |
| | | | | | 41,638.00 | 41,638.00 | | | | |
| 50010-LTR06 | 10 | 05-0010 | CHAMPS CERAMIC TILE WORK | 06-17-2004 | 559.00 | | 559.00 | | | |
| | | | | **Customer Total** | 274,158.60* | 41,638.00* | 232,520.60* | .00* | .00* | .00* |
| **00150** | | | **CITY OF CHICAGO** | | | | | | | |
| 40059-LTR01 | 10 | 04-0059 | TREE GRATE REPAIR | 07-19-2004 | 1,033.00 | 1,033.00 | | | | |
| | | | | **Customer Total** | 1,033.00* | 1,033.00* | .00* | .00* | .00* | .00* |

System Time: 10:30 am
Files Used:
Record Security: Disabled
MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

lng As of Date
lng Basis
nold Only?    Yes

08-10-2004   Accounting date

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| 10397 | | | **C. D. HEACOCK** | | | | | | | |
| 1039B-LFN03 | 10 | 03-039B | HISC WORK PER CONTRACT | 07-29-2004 | 20,460.00 | 20,460.00 | | | | |
| Customer Total | | | | | 20,460.00* | 20,460.00* | .00* | .00* | .00* | .00* |
| 10524 | | | **CLADDAGH IRISH PUB** | | | | | | | |
| 10D24-D1JUN | 10 | 05-0D24 | JUNE PROGRESS | 06-30-2004 | 131,350.50 | | 131,350.50 | | | |
| 10D24-02JUL | 10 | 05-0D24 | JULY PROGRESS | 07-30-2004 | 130,986.00 | 130,986.00 | | | | |
| 10D24-LFN01 | 10 | 05-0D24 | PERMIT FEES | 07-30-2004 | 17,869.00 | 17,869.00 | | | | |
| 10D24-LFN02 | 10 | 05-0D24 | 2ND PERMIT LTH INV | 07-30-2004 | 979.46 | 979.46 | | | | |
| Customer Total | | | | | 201,184.96* | 149,834.46* | 131,350.50* | | | |
| 10046 | | | **DISCOUNT TIRE CO/HAILD ENTERER** | | | | | | | |
| 10267-07JUN | 10 | 04-0267 | 100% COMPTR W/CO1-4 | 06-30-2004 | 61,076.00 | | 61,076.00 | | | |
| 10267-ETHAL | 10 | 04-0267 | Retainage billed | 06-30-2004 | 54,744.20 | | 54,744.20 | | | |
| Customer Total | | | | | 115,820.20* | .00* | 115,820.20* | | | |
| 10242 | | | **EXICIT LLC** | | | | | | | |
| 10D25-01JUN | 10 | 05-0D25 | JUNE PROGRESS | 06-30-2004 | 140,454.87 | | 140,454.87 | | | |
| | | | | | 2,597.20- | | 2,597.20- | | | |
| | | | | | 10,000.00- | | 10,000.00- | | | |
| | | | | | 8,350.00- | | 8,350.00- | | | |
| 10D25-02REV | 10 | 05-0D25 | JUNE REVISED | 07-12-2004 | 36,909.00 | 36,909.00 | | | | |
| 10D25-N2REV | 10 | 05-0D25 | RE-REV APPL I2 | 07-30-2004 | 5,341.14- | 5,341.14- | | | | |
| Customer Total | | | | | 159,075.13* | 31,567.66* | 127,507.67* | | | |
| 10390 | | | **FOOD 4 LESS** | | | | | | | |
| 1039B-FINAL | 10 | 04-039B | DEMO 100% COMPLETE | 04-25-2004 | 127,064.00 | | | | 127,064.00 | |
| 1039B-LFN01 | 10 | 04-039B | DEMO PERMIT | 04-15-2004 | 180.00 | | | | 180.00 | |
| 1039B-LFN03 | 10 | 04-039B | REMAINDER OF DEMO WORK | 06-11-2004 | 1,936.00 | | | 1,936.00 | | |
| Customer Total | | | | | 129,180.00* | .00* | .00* | 1,936.00* | 127,244.00* | |
| 10040 | | | **GART BROS SPORTING GOOD** | | | | | | | |
| 10203-LFN02 | 10 | 01-0203 | FGO7 LABOR & MATERIALS | 02-29-2004 | 1,225.00 | | | | | 1,225.00 |
| Customer Total | | | | | 1,225.00* | .00* | .00* | .00* | .00* | 1,225.00* |
| 10245 | | | **GIORGIO ARMANI CORPORATION** | | | | | | | |
| 10367-03APR | 10 | 04-0367 | FULL CONTRACT W/CO I1-B | 04-10-2004 | 30,058.93 | | | | 30,058.93 | |
| 10367-04JUN | 10 | 04-0367 | F.C. W/CO #11 | 07-19-2004 | 14,026.35 | 14,026.35 | | | | |
| 10367-04REV | 10 | 04-0367 | REV FULL CONTR APPL I4 | 07-19-2004 | 10,665.67- | 10,665.67- | | | | |

System Date: 05-19-2004
System Time: 10:30 am
Files Used:
MASTER.ANH
CURRENT.ANT
MASTER.JCH
ACTIVITY.ANA

Record Security: Disabled

Report: Aging Detail by Customer and Tertiary Sort w Subtotals.cpt

As At of Date: 05-10-2004
Accounting date
Basis: Yes
Old Only?

| Invoice | OFF JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | |
| **10361** | | | | | | | | | |
| 10361-01FEB | 10 | GREAT LAKES NEST 03-0361 FULL CONTRACT | 03-10-2003 | 55,374.80* | 3,360.60* | .00* | .00* | 52,014.20* | .00* |
| Customer Total | | | | | | | | | |
| **10043** | | | | | | | | | |
| 10043-01FEB | 10 | INLAND COMMERCIAL PROPERTY FULL CONTRACT | 02-10-2003 | 42,768.00 | .00* | | | | 42,768.00 |
| Customer Total | | | | 42,768.00* | .00* | .00* | .00* | .00* | 42,768.00* |
| 0040-03JUL | 10 | I2005 1001 CONTR - NOT | 07-30-2004 | 177,365.00 | 177,365.00 | | | | |
| 0040-07AU2 | 10 | 2ND PERMIT LTR INV | 07-30-2004 | 3,232.55 | 3,232.55 | | | | |
| 0040-17AU3 | 10 | DEMO FACE NEXT DOOR | 07-30-2004 | 30,969.00 | 30,969.00 | | | | |
| Customer Total | | | | 211,566.55* | 211,566.55* | | | | |
| **10050** | | | | | | | | | |
| 0010-17RG4 | 10 | JOB: A BANK CLOTHIERS | 05-14-2004 | 5,192.00 | | | 5,192.00 | | |
| 0007-01JUN | 10 | JOB BANKS VALVE & METERING | 06-30-2004 | 76,792.86 | | 76,792.86 | | | |
| 0007-01REV | 10 | JUNE PROGRESS | 07-01-2004 | 8,532.54 | | 8,532.54 | | | |
| 0007-02JUL | 10 | Retainage billed JULY PROG W/CO F1 | 07-29-2004 | 102,192.37 | 102,192.37 | | | | |
| Customer Total | | | | 272,709.77* | 102,192.37* | 85,325.40* | 5,192.00* | .00* | .00* |
| **10825** | | | | | | | | | |
| 10137-292FN | 10 | LAKELAND,ALL CO'S PENDING UNBS Retainage billed | 11-21-2003 | 56,702.60 | | | | | 56,702.60 |
| 10156-513FN | 10 | Retainage billed | 10-22-2003 | 29,514.20 | | | | | 29,514.20 |
| Customer Total | | | | 86,297.00* | .00* | .00* | .00* | .00* | 86,297.00* |
| **10240** | | | | | | | | | |
| 10240-02NOV | 10 | MISAKO USA INC FULL CONTR W/CO F1 | 11-30-2003 | 8,026.67 8,026.67- 8,026.67 | | | | | 8,026.67 8,026.67- 8,026.67 |
| 10240-FINAL | 10 | Retainage billed | 11-30-2003 | 7,012.60 7,012.60- 7,012.60 | | | | | 7,012.60 7,012.60- 7,012.60 |
| 10249-02NOV | 10 | FULL CONTR W/CO F1 | 11-30-2003 | 12,021.58 12,021.58- 12,021.58 | | | | | 12,021.58 12,021.58- 12,021.58 |
| 10249-FINAL | 10 | Retainage billed | 11-30-2003 | 7,845.80 7,845.80- 7,845.80 | | | | | 7,845.80 7,845.80- 7,845.80 |
| 10257-02JAN | 10 | FULL CONTRACT W/CO F1-5 | 01-27-2004 | 31,202.00 31,202.00- 31,202.00 | | | | | 31,202.00 31,202.00- 31,202.00 |

Report Title: ...Aging Detail by Customer and Territory Sort w Subtotals.rps
Ratio: CHI

```
System Date: 08-10-2004
System Time: 10:30 am
Files Used: HASTER.ANH
            CURRENT.ANT
            HASTER.JCH
            ACTIVITY.ARA
Record Security: Disabled
```

ing As of Date   08-10-2004
ng Basis         Accounting data
ald Only?        Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| 0240 | | | | | | | | | | |
| .0257-FINAL | | | | | 5,092.00- | | | | | 5,092.00- |
| | | | | | 5,092.00 | | | | | 5,092.00 |
| | | | | Customer Total | 76,170.45* | .00* | .00* | .00* | .00* | 76,170.45* |
| 10378 | 10 | | HIRANO USA INC | | | | | | | |
| | | | NORTHSTAR APPLIANCE DISTRIBUTI | | | | | | | |
| 10378-07DEC | | 04-0070 | CHANGE ORDERS I1-4 | 12-31-2003 | 52,634.44 | | | | | 52,634.44 |
| | | | | | 14,989.61- | | | | | 14,989.61- |
| | | | | | 14,989.61 | | | | | 14,989.61 |
| | | | | | 14,989.61- | | | | | 14,989.61- |
| | | | | | 14,989.61 | | | | | 14,989.61 |
| | | | | | 10,303.05- | | | | | 10,303.05- |
| | | | | | 27,902.21- | | | | | 27,902.21- |
| | | | | | 2,144.39- | | | | | 2,144.39- |
| | | | | Customer Total | 4,204.79* | .00* | .00* | .00* | .00* | 4,204.79* |
| 10313 | | | NAUTICA RETAIL, USA | | | | | | | |
| 10313-09MAY | 10 | 01-0373 | C/OS I1-6 | 05-31-2004 | 8,850.00 | | | 8,850.00 | | |
| 10313-04MAY | 10 | 01-0373 | REV APP #4 W/C007 | 06-30-2004 | 650.00 | | 650.00 | | | |
| 10313-FINAL | 10 | 01-0373 | Retainage billed | 04-05-2004 | 16,616.70 | | | | 16,616.70 | |
| 10313-04REV | 10 | 01-0373 | RE-REVISE APPL #4 | 06-30-2004 | 65.00 | | 65.00 | | | |
| 10067-01JUN | 10 | 05-0067 | I1-50 JUNE PROGRESS | 06-30-2004 | 56,232.05 | | 56,232.00 | | | |
| 10067-01REV | 10 | 05-0067 | I1-50 REV APPL #1 | 07-12-2004 | 4,356.05 | 4,356.05 | | | | |
| 10067-02JUL | 10 | 05-0067 | 1001 CONTR - RET | 07-30-2004 | 51,075.95 | 51,075.95 | | | | |
| | | | | Customer Total | 138,645.70* | 56,232.00* | 56,947.00* | 8,850.00* | 16,616.70* | .00* |
| 10060 | | | OFFICE DEPOT | | | | | | | |
| 10060-01JUN | 10 | 05-0081 | 722797 JUNE PROGRESS | 06-30-2004 | 33,761.70 | | 33,761.70 | | | |
| 10081-01REV | 10 | 05-0081 | F2271 REV APPL #1 | 07-19-2004 | 62,967.60 | 62,967.60 | | | | |
| 10081-02JUL | 10 | 05-0081 | F2271 JULY PROGRESS | 07-31-2004 | 43,397.97 | 43,397.97 | | | | |
| 10084-01JUN | 10 | 05-0084 | F2279 JUNE PROGRESS | 06-30-2004 | 19,803.70 | | 19,803.70 | | | |
| 10084-01REV | 10 | 05-0084 | F2279 REV APPL #1 | 07-19-2004 | 46,676.70 | 46,676.70 | | | | |
| 10084-02JUL | 10 | 05-0084 | F2279 JULY PROGRESS | 07-31-2004 | 38,353.50 | 38,353.50 | | | | |
| | | | | Customer Total | 245,041.17* | 191,395.77* | 53,565.40* | | | |
| 00646 | | | J. C. Penney Co., Inc. | | | | | | | |
| 20314-07SEP | 10 | 02-0314 | 100% CONTRACT W/CO 1-6 | 09-03-2003 | 64,221.95 | | | | | 64,221.95 |
| 20314-RETEN | 10 | 02-0314 | Retainage billed | 09-26-2003 | 116,555.09 | | | | | 116,555.09 |
| 20314-RETEN | 10 | 02-0314 | UNCOLLECTIBLE COS | 03-31-2004 | 80,777.00- | | | | | 80,777.00- |
| 20314-REVCO | 10 | 02-0314 | F0237 JUNE PROGRESS | 05-25-2004 | 91,470.92 | | 91,470.92 | | | |
| 50081-01JUN | 10 | 05-0081 | ... JUNE PROGRESS | 07-01-2004 | 65,906.25- | | 65,906.25- | | | |

Logi T:\TIMHGHLZHEVREPORT\CustomLAR Aging Detail by Customer and Territory Sort u Subtotals.rpt
cator: CHI

Date: 08-10-2004
Accounting date

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.HRH
CURRENT.ART
MASTER.ART
ACTIVITY.ARA

Record Security: Disabled

| ng As of Date / ng Basis / old Only? Invoice | OFF | JOB | Description Yos | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| 0003-LTN01 | 10 | R D I / 05-0003 | 10237 PERMIT FEES | 06-30-2004 | 35,091.00 | | 35,091.00 | | | |
| Customer Total | | | | | 170,820.04* | 10,164.13* | 60,661.67* | .00* | .00* | 100,000.84* |
| **0017** | | | | | | | | | | |
| 0017-026EV | 10 | 05-0017 | REVISED JUNE PROGRESS | 07-01-2004 | 133,560.70 | | 133,560.70 | | | |
| 0017-03JUL | 10 | 05-0017 | JULY PROGRESS | 07-31-2004 | 234,227.70 | 234,227.70 | | | | |
| Customer Total | | | | | 567,788.40* | 234,227.70* | 331,560.70* | | | .00* |
| **0041** | | | | | | | | | | |
| 0079-01JUN | 10 | RED ROBIN/REAGAN CONST / 05-0079 | JUNE PROGRESS | 06-30-2004 | 127,402.05 | | 127,402.05 | | | |
| | | | | | 25,706.55- | | 25,706.55- | | | |
| | | | | | 9,720.00- | | 9,720.00- | | | |
| | | | | | 29,430.00- | | 29,430.00- | | | |
| | | | | | 17,010.00- | | 17,010.00- | | | |
| | | | | | 15,498.00- | | 15,498.00- | | | |
| 0079-02JUL | 10 | 05-0079 | JULY PROGRESS | 07-30-2004 | 215,209.90 | 215,209.90 | | | | |
| Customer Total | | | | | 245,247.40* | 215,209.90* | 30,037.50* | .00* | .00* | .00* |
| **10056** | | | | | | | | | | |
| 0002-02JUN | 10 | STERLING JEWELERS, INC / 05-0002 | #2412 JUNE PROG W/CO #1 | 06-25-2004 | 131,112.90 | | 131,112.90 | | | |
| | | | | | 68,400.00- | | 68,400.00- | | | |
| | | | | | 7,650.00- | | 7,650.00- | | | |
| | | | | | 2,250.00- | | 2,250.00- | | | |
| | | | | | 25,650.00- | | 25,650.00- | | | |
| 0002-03JUL | 10 | 05-0002 | #2412 JULY PROG'W/CO #1 | 07-26-2004 | 140,310.00 | 140,310.00 | | | | |
| Customer Total | | | | | 167,472.90* | 140,310.00* | 27,162.90* | .00* | .00* | .00* |
| **10968** | | | | | | | | | | |
| 0006-LTN01 | 10 | STORE PLANNING SOLUTION/J JILL / 05-0086 | 2 WEEKS SUPERVISION | 07-19-2004 | 5,452.00 | 5,452.00 | | | | |
| Customer Total | | | | | 5,452.00* | 5,452.00* | .00* | | | .00* |
| **10124** | | | | | | | | | | |
| 0296-05JUL | 10 | STIR CRAZY / 04-0296 | JULY PROG W/CO #1-17 | 07-20-2004 | 164,440.57 | 164,440.57 | | | | |
| | | | | | 3,565.94- | 3,565.94- | | | | |
| | | | | | 24,922.00- | 24,922.00- | | | | |
| 0296-05NEV | 10 | 04-0296 | NEW APPL #5 | 07-20-2004 | 5,378.37 | 5,378.37 | | | | |
| 0010-LTN05 | 10 | 05-0010 | STIR CRAZY TUB REPAIR | 06-00-2004 | 468.00 | | | 468.00 | | |
| Customer Total | | | | | 141,798.20* | 141,330.20* | .00* | 468.00* | .00* | .00* |

type: TIYTIHDBUL\RNSYNCRPNT\CustomerAR Aging Detail By Customer and Territory Sort u Suddccal9.cpl
cntcr: CHT

System Time: 10:30 am
Files Used: MASTER.ARN
CURRENT.ART
MASTER.JCH
ACTIVITY.ARN
Record Security: Disabled

ng As of Date    08-10-2004
ng Basis         Accounting date
old Only?        Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| **0207** | | | **SPORTS AUTHORITY** | | | | | | | |
| 0052-01JUN | 10 | 05-0052 | JUNE PROGRESS | 06-30-2004 | 100,560.70 | | 100,560.70 | | | |
| 0052-02JUL | 10 | 05-0052 | JULY PROGRESS | 07-31-2004 | 99,999.70 | 99,999.70* | | | .00* | .00* |
| | | | Customer Total | 200,560.40* | 99,999.70* | 100,560.70* | .00* | .00* | .00* |
| **0297** | | | **LNZA SALON** | | | | | | | |
| 0009-03JUN | 10 | 05-0009 | 1164 1001 CONTR W/CO 11-2 | 06-30-2004 | 113,406.30 | # | 113,406.30 | | | |
| 0009-04JUL | 10 | 05-0009 | 1164 F.C. W/CO 11-3 | 07-30-2004 | 6,622.00 | 6,622.00 | | | | |
| 0009-FINAL | 10 | 05-0009 | Retainage billed | 07-31-2004 | 34,808.50 | 34,808.50 | | | | |
| | | | Customer Total | 154,836.00* | 41,430.50* | 113,406.30* | .00* | .00* | .00* |
| **0325** | | | **UNITED RENTAL GROUP INC** | | | | | | | |
| 0277-01JUL | 10 | 04-0277 | 1491 JULY PROGRESS | 07-30-2004 | 73,352.25 | 73,352.25 | | | | |
| | | | Customer Total | 73,352.25* | 73,352.25* | .00* | .00* | .00* | .00* |
| **10003** | | | **VOICE DEVELOPMENT LLC** | | | | | | | |
| 0003-01MAY | 10 | 05-0003 | MAY PROGRESS | 05-25-2004 | 21,708.70 | | | 23,708.70 | | |
| 0003-02JUN | 10 | 05-0003 | 100% CONTR - RET | 06-30-2004 | 23,707.00 | | 23,707.00 | | | |
| 0003-1MAY1 | 10 | 05-0003 | PERMIT/EXPEDIT FEES | 05-14-2004 | 1,185.00 | | | 1,185.00 | | |
| | | | Customer Total | 48,601.50* | .00* | 23,707.00* | 24,893.70* | .00* | .00* |
| **10044** | | | **VOICE STREAM WIRELESS** | | | | | | | |
| 0252-10249 | 10 | 04-0252 | Retainage billed | 05-28-2004 | 6,067.87 | | | 6,067.87 | | |
| 0023-01APR | 10 | 05-0023 | FULL CONTRACT | 04-30-2004 | 2,000.00 | | | | 2,000.00 | |
| 0023-02JUN | 10 | 05-0023 | FULL CONTR W/COS | 06-21-2004 | 3,684.80 | | 3,684.80 | | | |
| | | | Customer Total | 11,752.67* | .00* | 3,684.00* | 6,067.87* | 2,000.00* | .00* |
| **10155** | | | **WESTFIELD CORP/ALSO SEE 230231** | | | | | | | |
| 0155-07REV | 10 | 04-0155 | NEW F60 APPL #7 | 03-01-2004 | 150,975.31 | | | | | 150,975.31 |
| 0155-08FIN | 10 | 04-0155 | FINAL SETTLEMENT | 05-25-2004 | 37,235.37- | | | 37,235.37- | | |
| 0155-FINAL | 10 | 04-0155 | Retainage billed | 05-25-2004 | 99,602.04 | | | 99,602.04 | | |
| 0155-LTH03 | 10 | 04-0155 | ESCALATOR FLOOR REWORK | 07-22-2004 | 2,900.00 | 2,900.00 | | | | |
| 0155-REV07 | 10 | 04-0155 | 2ND REVISED #7 | 04-13-2004 | 11,969.90- | | | | 11,969.90- | |
| | | | Customer Total | 212,272.80* | 2,900.00* | .00* | 62,367.47* | 11,969.90- | 150,975.31* |
| **30297** | | | **W/S DEVELOPMENT ASSOCIATES LLC** | | | | | | | |
| 0321-05MAY | 10 | 04-0321 | MAY PROGRESS | 05-31-2004 | 527,636.01 | | | 527,636.01 | | |
| | | | | | 9,401.16- | | | 9,401.16- | | |
| | | | | | 42,007.50- | | | 42,007.50- | | |

Igni T:\TIMBERLINE\REPORT\CustomAR Aging Detail by Customer and Territory Sort w Subtotals.rpt
rator: CH1

System Date: 08-18-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

ng As of Date   08-18-2004
ng Basis        Accounting data
uld Only?       Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | |
| **I0297** | | | | | | | | | | |
| I0321-05MAY | | | H/B DEVELOPMENT ASSOCIATES LLC | | | | | | | |
| I0321-06JUN | 10 | 04-0321 | JUNE PROG H/COS | 06-30-2004 | 4,202.40- | | | 4,202.40- | | |
| I0321-07JUL | 10 | 04-0321 | JULY PROG H/COS | 07-31-2004 | 98,405.70- | | | 98,405.70- | | |
| I0032-05JUN | 10 | 05-0032 | JUNE PROGRESS | 06-30-2004 | 42,007.50- | | | 42,007.50- | | |
| | | | | | 89,970.42 | | | 89,970.42 | | |
| | | | | | 4,202.40 | | | 4,202.40 | | |
| | | | | | 90,405.70 | | | 90,405.70 | | |
| | | | | | 42,007.50- | | | 42,007.50- | | |
| | | | | | 4,202.40- | | | 4,202.40- | | |
| | | | | | 90,405.70- | | | 90,405.70- | | |
| | | | | | 61,096.25- | | | 61,096.25- | | |
| | | | | | 37,037.91- | | | 37,037.91- | | |
| | | | | | 131,535.00- | | | 131,535.00- | | |
| | | | | | 10,000.00- | | | 10,000.00- | | |
| | | | | | 17,455.00- | | | 17,455.00- | | |
| | | | | | 10,123.00- | | | 10,123.00- | | |
| | | | | | 328,160.46 | 143,241.01 | 328,160.46 | | | |
| | | | | | 143,241.01 | | | | | |
| | | | | | 8,082.47- | | 8,082.47- | | | |
| | | | | | 225,961.56- | | 225,961.56- | | | |
| | | | | | 4,563.11- | | 4,563.11- | | | |
| | | | | | 26,806.50- | | 26,806.50- | | | |
| | | | | | 613,075.20- | | 613,075.20- | | | |
| | | | | | 44,129.11- | | 44,129.11- | | | |
| | | | | | 1,656,523.80 | | 1,656,523.80 | | | |
| I0032-04JUL | 10 | 05-0032 | JULY PROGRESS | 07-31-2004 | 2,162,586.30 | 2,162,586.30 | | | | |
| I0033-01JUL | 10 | 05-0033 | JULY PROGRESS | 07-31-2004 | 74,057.02 | 74,057.02 | | | | |
| I0034-02JUN | 10 | 05-0034 | I219 JUNE PROGRESS | 06-30-2004 | 45,077.51 | | 45,077.51 | | | |
| I0034-03JUL | 10 | 05-0034 | I219 JULY PROGRESS | 07-31-2004 | 709,470.43 | 709,470.43 | | | | |
| | | | | Customer Total | 4,205,291.13* | 3,089,354.84* | 1,107,951.02* | 8,082.47* | .00* | .00* |
| | | | WESTFIELD INC/SEE ALSO 2300195 | | | | | | | |
| **I2117** | | | | | | | | | | |
| I012B-07REV | 10 | 04-012B | REV FEB APPL I7 | 03-01-2004 | 35,373.50 | | | | | 35,373.50 |
| | | | | | 515.10- | | | | | 515.10- |
| I012B-08FIN | | 04-012B | FINAL SETTLEMENT | 05-25-2004 | 10,270.50 | | | 10,270.50 | | |
| I012B-FINAL | | 04-012B | Retainage billed | 02-29-2004 | 174,057.20 | | | | | 174,057.20 |
| I012B-LTR01 | | 04-012B | EXTRA WORK REQUEST | 03-26-2004 | 41,404.00 | | | | | 41,404.00 |
| I012B-LTR02 | | 04-012B | RELOCATE FLOOR/JUNC BOXES | 06-07-2004 | 10,145.00 | 10,145.00 | | | | |
| I012B-LTR03 | | 04-012B | PHONE CLOSET & MISC WORK | 07-14-2004 | 11,364.00 | | | 11,364.00 | | |
| I012B-LTR1A | | 04-012B | REV LTR INV #1 | 05-25-2004 | 10,956.00- | | | 10,956.00- | | |
| I012D-REVO7 | | 04-012B | REVISED APP I7   H/COS | 03-31-2004 | 19,324.00 | | | | | 19,324.00 |
| | | | | | 10,145.00* | 10,145.00* | .00* | 10,678.50* | .00* | 270,523.50* |

System Date: 08-10-2004
System Time: 10:30 am
Files Used: Disabled
Record Security: Disabled

CURRENT.ANT
MASTER.ANT
ACTIVITY.ABA

Creator: CHT

Ing As of Date    08-10-2004
Ing Basis         Accounting date
Paid Only?        Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | | | | | | | | | | |
| 00232 | | | ZABENA CONTRACTORS | | | | | | | |
| 40382-03HAY | 10 | 04-0302 | 13901 F.C. W/CO11-21 | 05-31-2004 | 109,367.34 | | | 109,367.34 | | |
| 40382-0301F | 10 | 04-0302 | Retainage billed | 05-31-2004 | 68,504.94 | | | 68,504.94 | | |
| | | | Customer Total | | 177,872.28* | .00* | .00* | 177,872.28* | .00* | .00* |
| 00301 | | | ZABSET COMMERCIAL GROUP INC | | | | | | | |
| 40301-03RET | 10 | 04-0301 | Retainage billed | 03-31-2004 | 41,419.00 | | | | | 41,419.00 |
| | | | | | 12,600.00- | | | | | 12,600.00- |
| | | | | | 9,033.00- | | | | | 9,033.00- |
| | | | | | 19,706.00- | | | | | 19,706.00- |
| | | | | | 19,706.00 | | | | | 19,706.00 |
| 40301-04JUN | 10 | 04-0301 | F.C. W/CO 11-1 | 06-30-2004 | 41,347.00 | | 41,347.00 | | | |
| | | | | | 41,347.00- | | 41,347.00- | | | |
| | | | | | 41,347.00 | | 41,347.00 | | | |
| | | | Customer Total | | 61,133.00* | .00* | 41,347.00* | .00* | .00* | 19,706.00* |
| | | | Territory Total | | 10036,616.37* | 5,453,064.72* | 3,301,216.31* | 1,018,610.49* | 246,213.05* | 016,711.80* |
| | | | Report Total | | 10036,616.37* | 5,453,864.72* | 3,301,216.31* | 1,018,610.49* | 246,213.05* | 016,711.80* |

S. Builders, Inc.
GNL TAXTTHRENLRENREPORTSCustomsRAR Aging Detail by Customer and Territory Sort w Subtotals.rpt

*(handwritten: Boston (2 Plugs))*

Page 1
System Date: 04-10-2004
System Time: 10:20 am
Files Used:
Record Security: Disabled
HOSTER.ARH
CURRENT.ANY
HOSTER.DCH
ACTIVITY.ANA

g As of Date 04-10-2004
g Basis Accounting date
ld Only?

| Invoice | OFF | JOB | Description | Yes | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Boston MA** | | | | | | | | | | | |
| **065** | | | | | | | | | | | |
| 208-RSTEN | 45 | 04-0208 | BDD, BATH & BEYOND / Retainage billed | | 12-31-2003 | 24,543.20 | | | | | 24,543.20 |
| | | | Customer Total | | | 24,543.20* | .00* | .00* | .00* | .00* | 24,543.20* |
| **431** | | | | | | | | | | | |
| 431-02HAY | 45 | 03-0431 | ROSS-VAN, LLC 1001 CONTR - RET | | 05-30-2003 | 66,946.77 | .00* | | | | 66,946.77 |
| | | | | | | 18,000.00- | | | | | 18,000.00- |
| | | | | | | 10,000.00 | | | | | 10,000.00 |
| | | | | | | 17,000.00- | | | | | 17,000.00- |
| 431-03ETH | 45 | 03-0431 | FULL CONTRACT W/COS | | 09-30-2003 | 71,689.15 | | | | | 71,689.15 |
| | | | | | | 14,742.73- | | | | | 14,742.73- |
| 431-FINAL | 45 | 03-0431 | Retainage billed | | 09-30-2003 | 16,736.70 | | | | | 16,736.70 |
| | | | Customer Total | | | 123,629.89* | .00* | .00* | .00* | .00* | 123,629.89* |
| **360** | | | | | | | | | | | |
| 074-032AN | 45 | 04-0074 | FOOT LOCKER INC., FACILITY SVC I14200 1001 CONTR W/CO1-4 | | 01-30-2004 | 8,290.26 | | | | | 8,290.26 |
| 074-044AR | 45 | 04-0074 | I14200 F.C. W/CO14 | | 03-30-2004 | 7,352.26- | | | | | 7,352.26- |
| | | | | | | 7,352.26 | | | | | 7,352.26 |
| | | | | | | 7,352.26- | | | | | 7,352.26- |
| 074-1420J | 45 | 04-0074 | Retainage billed | | 01-30-2004 | 6,304.60 | | | | | 6,304.60 |
| | | | Customer Total | | | 7,250.60* | .00* | .00* | .00* | .00* | 7,250.60* |
| **1051** | | | | | | | | | | | |
| 1106-052AN | 45 | 04-0106 | HOLLYWOOD ENTERTAINMENT #007113 VIDEO JAM PROG W/COS | | 01-30-2004 | 50,330.60 | | | | | 50,330.60 |
| | | | | | | 19,303.14- | | | | | 19,303.14- |
| | | | | | | 11.00- | | | | | 11.00- |
| 1186-7111F | 45 | 04-0186 | Retainage billed | | 01-30-2004 | 49,747.98 | | | | | 49,747.98 |
| 1230-022AN | 45 | 04-0230 | I021901 1001 CONTR W/CO11-12 | | 01-15-2004 | 14,911.83 | | | | | 14,911.83 |
| 1230-1901E | 45 | 04-0230 | Retainage billed | | 01-15-2004 | 10,345.50 | | | | | 10,345.50 |
| 1256-02HVO | 45 | 04-0256 | I039119 1001 CONTR W/COS | | 01-01-2004 | 21,503.90 | | | | | 21,503.90 |
| 1256-5119G | 45 | 04-0256 | Retainage billed | | 01-01-2004 | 2,310.00 | | | | | 2,310.00 |
| 1256-5119V. | 45 | 04-0256 | Retainage billed | | 01-01-2004 | 10,841.32 | | | | | 10,841.32 |
| 1200-01FEB | 45 | 04-0200 | I12110A FULL CONTRACT | | 02-24-2004 | 30,008.00 | | | | | 30,008.00 |
| 1200-02HAR | 45 | 04-0200 | I12110A FINAL W/COS | | 03-25-2004 | 2,218.25- | | | | | 2,218.25- |
| | | | | | | 2,218.25 | | | | | 2,218.25 |
| | | | | | | 2,218.25- | | | | | 2,218.25- |
| | | | Customer Total | | | 160,546.74* | .00* | .00* | .00* | .00* | 160,546.74* |
| **1825** | | | | | | | | | | | |
| 105B-430FN | 45 | 04-005B | LIMITED/ALL CO'S PENDING CHGS / Retainage billed | | 10-01-2003 | 34,192.00 | | | | | 34,192.00 |

System Date: 08-10-2004
System Time: 10:30 am
Files Used: MASTER.ARH
CURRENT.ART
MASTER.JCH
ACTIVITY.ARA

Record Security: Disabled

b. Builders, INC.
...T:\TIMBERLINE\REPORT\Custom\AR Aging Detail by Customer and Territory Sort w Subtotals.rpt

g As of Date 08-10-2004
g Basis Accounting date
ld Only? Yes

| Invoice | OFF | JOB | Description | Date | Amount | Current Column | Over 30 Column | Over 60 Column | Over 90 Column | Over 120 Column |
|---|---|---|---|---|---|---|---|---|---|---|
| Boston MA | | | | | | | | | | |
| 211 | | | | | | | | | | |
| OOU-123FN | 45 | 04-0000 | Retainage billed | 11-25-2003 | 11,529.90<br>4,215.51- | | | | | 11,529.90<br>4,215.51- |
| | | | | Customer Total | 7,314.39* | .00* | .00* | .00* | .00* | 7,314.39* |
| -135 | | | URBAN OUTFITTERS, INC | | | | | | | |
| 235-BFTNL | 45 | 04-0235 | Retainage billed | 01-28-2004 | 3,245.50 | | | | | 3,245.50 |
| | | | | Customer Total | 3,245.50* | .00* | .00* | .00* | .00* | 3,245.50* |
| 044 | | | VOICE STREAM WIRELESS | | | | | | | |
| 201-02GBF | 45 | 04-0281 | Retainage billed | 02-29-2004 | 13,196.01 | | | | | 13,196.01 |
| 281-01FEB | 45 | 04-0281 | J14010269 FULL CONTR W/CO | 02-24-2004 | 22,396.41<br>300.00-<br>19,886.77- | | | | | 22,396.41<br>300.00-<br>19,886.77- |
| | | | | Customer Total | 15,406.45* | .00* | .00* | .00* | .00* | 15,406.45* |
| 1297 | | | W/S DEVELOPMENT ASSOCIATES LLC | | | | | | | |
| 1297-01FEB | 45 | 04-0297 | FULL CONTRACT | 02-16-2004 | 492.40<br>455.47- | | | | | 492.40<br>455.47- |
| 1297-UTTLE | 45 | 04-0297 | Retainage billed | 02-19-2004 | 3,774.72 | | | | | 3,774.72 |
| | | | | Customer Total | 3,811.65* | .00* | .00* | .00* | .00* | 3,811.65* |
| | | | | Territory Total | 307,941.22* | .00* | .00* | .00* | .00* | 307,941.22* |
| | | | | Report Total | 307,941.22* | .00* | .00* | .00* | .00* | 307,941.22* |

SCHEDULE 1.1(c)

EQUIPMENT

| QUANTITY | TYPE |
|---|---|
| 2 | PHONE SYSTEM |
| 12 | SMALL WORK STATIONS (ADMINISTRATIVE) |
| 15 | LARGE WORK STATIONS (OFFICE) |
| 24 | COMPUTERS |
| 2 | EPSON COLOR PRINTER |
| 48 | CHAIR |
| 2 | TYPEWRITER |
| 4 | CANNON LASER FAX MACHINES |
| 3 | RICOH COPIER |
| 13 | 4-DRAWER CABINET |
| 10 | 2-DRAWER CABINET |
| 2 | SCANNER |
| 19 | LAPTOP |
| 9 | LASER PRINTER |
| 1 | LEXMARK PRINTER |
| 1 | RICOH FAX MACHINE |
| 1 | PROJECTION MACHINE |
| 2 | TELEVISION |
| 1 | VCR |
| 1 | VISUAL CONFERENCING SYSTEM |
| 3 | REFRIGERATOR |
| 35 | CELL PHONES |
| 15 | DIGITAL CAMERAS |
| 2 | SERVERS |

## SCHEDULE 1.1(d)

## INVENTORY

All existing office supplies and construction equipment and materials presently inventoried in the office/warehouse and on jobsites.

## SCHEDULE 1.1(e)

## PROPRIETARY RIGHTS

None

## SCHEDULE 1.1(f)

### PREPAID ITEMS

1.  Chicago Office Lease - any prepaid rent

2.  Boston Office Lease - any prepaid rent

3.  Automobiles - any prepaid lease payments

SCHEDULE 1.1(g)

TELEPHONE NUMBERS, ETC.

TELEPHONE

| Line | Line Number |
|------|-------------|
| 1 | 847-233-9200 |
| 2 | 847-233-0726 |
| 3 | 847-233-0728 |
| 4 | 847-233-0679 |
| 5 | 847-233-0680 |
| 6 | 847-233-9227 |
| 7 | 847-233-0721 |
| 8 | 847-233-0710 |
| 9 | 847-233-0711 |
| 10 | 847-233-0712 |
| 11 | 847-233-0713 |
| 12 | 847-233-0714 |
| 13 | 847-233-0715 |
| 14 | 847-233-0716 |
| 15 | 847-233-0717 |
| 16 | 847-233-0718 |
| 17 | 847-233-0719 |
| 19 | 847-233-0675 |
| 20 | 847-233-0676 |
| 21 | 847-233-0677 |
| 22 | 847-233-0678 |
| 23 | 847-233-0681 |
| 24 | 847-233-0682 |
| 25 | 847-233-0683 |
| 26 | 847-233-0156 |
| 27 | 847-233-0157 |
| 28 | 847-233-0158 |
| 29 | 847-233-9115 |
| 30 | 847-233-9116 |
| 31 | 847-233-9170 |
| 32 | 847-233-9177 |
| 33 | 847-671-1051 |
| 34 | 847-671-1109 |

CELL

Cell Number
(847) 343-1024 (847) 456-0639
(847) 514-2050 (847) 344-6827

```
(847)321-1798  (847) 344-1437
(847) 344-5007 (847) 208-6323
(847) 321-1802 (847) 514-8555
(847) 344-1438 (847) 344-4722
(847) 875-3195 (847) 514-2039
(847) 456-4130 (847) 514-2841
(847) 344-3798 (847) 875-3190
(847) 343-3318 (847) 343-3428
(847) 343-0658 (847) 980-5296
(847) 875-3194 (847) 833-0597
(847) 456-1855 (847) 321-8442
(847) 514-5102 (847) 833-0593
(847) 321-8443 (847) 514-2036
(847) 514-1062 (847) 343-0574
(847) 456-0642 (847) 208-2216
(847) 514-2048 (847) 344-3207
(847) 343-1028
```

## SCHEDULE 1.11(b)

### REQUIRED CONSENTS

04.0321 – Shoppes @ Farmington Valley-A2&G

05.0024 – Claddaugh Irish Pub

05.0031 – Vanilla Box Construction

05.0032 – Building C,D,E,F,H,&I

05.0034 – Dick's Sporting Goods

05.0079 – Red Robin Burgers

SCHEDULE 1.4

ASSUMED LIABILITIES

| JOB NO. | NAME | ADDRESS | CITY | STATE | ZIP | ANTICIPATED ACCOUNTS RECEIVABLE | ANTICIPATED ACCOUNTS PAYABLE | ANTICIPATED DEFICIT |
|---|---|---|---|---|---|---|---|---|
| 04.0069 | HARLEM FURNITURE | 2525 HARLEM AVENUE | CHICAGO | IL | 60607 | $ 297,885.10 # | $ 417,632.58 | $ (119,746.48) |
| 04.0103 | CHAMPPS RESTAURANT | 16165 S. LAGRANGE ROAD | ORLAND PARK | IL | 60467 | 275,000.00 | 472,459.00 | $ (197,459.00) |
| 04.0124 | STIR CRAZY | 28252 DIEHL ROAD | WARRENVILLE | IL | 60555 | - | 23,484.00 | $ (23,484.00) |
| 04.0252 | T MOBILE | 315 ROUTE 206 | HILLSBOROUGH | NJ | 08844 | 6,068.00 | 18,716.00 | $ (12,648.00) |
| 04.0267 | DISCOUNT TIRE | 785 E. BOUGHTON ROAD | BOLINGBROOK | IL | 60440 | 169,811.20 | 396,829.40 | $ (227,018.20) |
| 04.0298 | RED ROOF INN | 2580 CROOKS ROAD | ROCHESTER HILLS | MI | 48309 | 153,876.00 | 199,585.00 | $ (45,709.00) |
| 04.0299 | RED ROOF INN | 24300 SINCOLA COURT, NE | FARMINGTON HILLS | MI | 48335 | 91,567.00 | 149,792.00 | $ (58,225.00) |
| 04.0300 | RED ROOF INN | 3100 LITTLE MACK AVENUE | ROSEVILLE | MI | 48066 | 119,141.00 | 231,327.00 | $ (112,186.00) |
| 04.0301 | OAK BROOK TERRACE | 18066 W. 22ND STREET | OAK BROOK | IL | 60523 | - | 54,307.00 | $ (54,307.00) |
| 04.0321 | ALT. SHOPPES @ FARMINGTON | SHOPPES @ FARMINGTON | CANTON | CT | 06019 | $ 456,171.43 | $ 569,171.43 | $ (113,000.00) |
| 04.0326 | RED ROOF INN | 2350 ROCHESTER ROAD | TROY | MI | 48083 | 252,112.00 | 255,164.00 | $ (3,052.00) |
| 04.0367 | GIORGIO ARMANI | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 | 117,465.23 | 193,932.19 | $ (76,466.96) |
| 04.0373 | NAUTICA | CHICAGO PREMIUM OUTLETS | AURORA | IL | 60504 | $ 26,181.00 | $ 56,295.00 | $ (30,114.00) |
|  |  |  |  |  |  | $1,965,278.96 | $3,038,694.60 | $ (1,073,415.64) |

1.4 - 1

. SCHEDULE 2.8

## LIST OF EMPLOYEES/EMPLOYMENT CONTRACTS

1. Employees subject to Employment Agreements:          None

2. At Will Employees:

| . NAME | LOCATION |
| --- | --- |
| ARNOLDE, DAVID | CHICAGO, IL |
| BLAUE, PAULA | CHICAGO, IL |
| COEVER, TIM | BOSTON, MA |
| CURRAN, TOM | BOSTON, MA |
| DEBOER, WENDY | BOSTON, MA |
| DISANTO, WILLIAM | CHICAGO, IL |
| DWYER, JIM | CHICAGO, IL |
| FOX, NICK | CHICAGO, IL |
| FOX, TARA | CHICAGO, IL |
| FRANK, ROD | CHICAGO, IL |
| GUSTAFSON, GUS | CHICAGO, IL |
| HUGUELEY, SCOTT | CHICAGO, IL |
| LYDON, EUGENE | CHICAGO, IL |
| MIELE, HENRY | CHICAGO, IL |
| MULLIGAN, KAREN | BOSTON, MA |
| PEREZ, MARTIN | CHICAGO, IL |
| RAPP, DOTTIE | CHICAGO, IL |
| REDMOND, KIM | CHICAGO, IL |
| RIDNER, DENNIS | CHICAGO, IL |
| .SETARO, MARK | CHICAGO, IL |
| SUNDERLAND, JOEL | BOSTON, MA |

## SCHEDULE 2.12

## LIST OF WARRANTIES & GUARANTIES

Any and all equipment warranties

SCHEDULE 2.14

LITIGATION

1.  ALL LAWSUITS FILED WITH RESPECT TO THE ASSIGNED CONTRACTS SHALL BECOME THE RESPONSIBILITY OF PURCHASER.

2.  ALL MECHANIC'S LIENS RECORDED AGAINST PROPERTIES ASSOCIATED WITH THE ASSIGNED CONTRACTS SHALL BECOME THE RESPONSIBILITY OF PURCHASER.

SCHEDULE 1.1(j)

VEHICLES

| OWNERSHIP | YEAR | MAKE | MODEL | PLATE | REG. STATE |
|-----------|------|------|-------|-------|------------|
| BALANCE DUE | 2002 | TOYOTA | AVALON | 1390010 | IL |
| BALANCE DUE | 2001 | FORD | ESCAPE | 264MHR | IL |
| PAID IN FULL | 1995 | FORD | BOX TRUCK VAN | 9379GB | IL |
| PAID IN FULL | 1998 | FORD | INTREPID | T979924 | IL |
| PAID IN FULL | 1998 | FORD | EXPLORER | D614615 | IL |
| PAID IN FULL | 2001 | FORD | PICKUP | 8842YC | IL |
| PAID IN FULL | 2001 | CHEVY | SILVERADO | 5RSL92 | TX |