**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Halle Properties, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  08 C 1338 |
| v. | ) | |
| | ) | Judge Kennelly |
| Englewood Construction, Inc., | ) | Magistrate Judge Mason |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S
FIRST AMENDED COMPLAINT AT LAW**

Defendant Englewood Construction, Inc. ("Englewood"), by its attorneys, answers as follows to the Plaintiff Halle Properties, L.L.C.'s ("Halle") first amended complaint at law:

**PARTIES**

1. Halle is an Arizona limited liability company. Halle has three members, as follows:

 a. an irrevocable trust domiciled in Arizona, the trustee and beneficiary of which is a natural individual who is a citizen of Arizona;

 b. an Arizona limited liability company, the three members of which are (i) an irrevocable trust domiciled in Arizona, the trustee and beneficiary of which is a natural individual who is a citizen of Arizona, (ii) a revocable trust domiciled in Arizona, the trustee and beneficiary of which is a natural individual who is a citizen of Arizona, and (iii) an Arizona corporation with its principal place of business at 20225 North Scottsdale Road, Scottsdale, Arizona and which is, therefore, a citizen of Arizona; and

 c. an Arizona corporation with its principal place of business at 20225 North Scottsdale Road, Scottsdale, Arizona and which is, therefore, a citizen of Arizona.

**ANSWER:**   Englewood lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

2. Englewood is an Illinois corporation which maintains a registered office and its principal place of business at 9747 West Foster Avenue, Schiller Park, Illinois and is, therefore, a citizen of Illinois.

**ANSWER:** Englewood admits the allegations contained in paragraph 2, with the sole exception that it denies that it is a "citizen" of Illinois.

## JURISDICTION AND VENUE

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

**ANSWER:** The allegations in this paragraph allege a legal conclusion to which no answer is necessary or required.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in the Northern District of Illinois.

**ANSWER:** The allegations in this paragraph allege a legal conclusion to which no answer is necessary or required.

## BACKGROUND FACTS

5. Halle has at all relevant times owned the real property commonly known as 785 East Boughton Road, Bolingbrook, Illinois (the "Property"), from which this dispute arises.

**ANSWER:** Englewood lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

6. On or about October 23, 2003 Halle and R.A.S. Builders, Inc. ("RAS") entered into an Agreement Between Owner and Contractor by which RAS agreed to construct a Discount Tire facility on the Property (the "Project"). The Agreement Between Owner and Contractor is attached hereto as **Exhibit A**. As used herein, the "Contract" means the Agreement Between Owner and Contractor and the other contract documents therein described. The Project is referenced in the Contract as Job 04.0267.

**ANSWER:** On information and belief, Englewood admits the allegations contained in the first sentenced of this paragraph. With respect to the remaining allegations, Englewood states that it lacks knowledge or information sufficient to form a belief as to whether Exhibit A represents the entire agreement between the parties and all the contract documents.

7. On October 23, 2003 and at all times thereafter pertinent hereto, RAS' business office was at 9747 West Foster Avenue, Schiller Park, Illinois.

**ANSWER:** Englewood admits the allegations in paragraph 7.

8. The price for which RAS agreed to complete the Project (the "Contract Sum") was $1,188,666.30.

**ANSWER:** Englewood admits that $1,188,66.30 was the original contract price.

**Englewood's Assumption of RAS' Contractual Obligations and Liabilities**

9. On or about August 1, 2004, RAS and Englewood entered into an Asset Purchase Agreement (the "Englewood Agreement") by which, *inter alia,* RAS agreed to assign to Englewood, and Englewood agreed to assume, RAS' duties and obligations to Halle under the Contract. The Englewood Agreement is attached hereto as **Exhibit B.**

**ANSWER:** Englewood admits only that it entered into Exhibit B with RAS. Further answering, Englewood states that the terms of Exhibit B speak for themselves and denies the allegations of this paragraph to the extent that the allegations vary from the text of that agreement.

10. At the time of assumption, Englewood and RAS estimated the Project to have a value of negative $227,018.20 -- i.e., estimated the cost to complete the Project at $227,018.20 more than the Contract Sum.

**ANSWER:** Englewood admits that it estimated that the Project would be completed at a loss, but denies that it had calculated or was aware of any specific estimated amount. Englewood admits that **Exhibit B** attached to the Amended Complaint contained an estimate as to anticipated deficit to the Project of $227,018.20. Englewood denies, however, that it ever had any personal knowledge regarding the specific costs to complete the Project and therefore denies the remaining allegations of this paragraph.

11. The Englewood Agreement closed on August 31, 2004. As part of the closing, RAS and Englewood entered into an Assignment and Assumption of Assumed Liabilities dated August 31, 2004 (the "Englewood Assumption") by which*, inter alia,* RAS assigned the Contract

to Englewood and Englewood expressly assumed RAS' liability to Halle under the Contract. The Englewood Assumption is attached hereto as **Exhibit C.**

**ANSWER:**  Englewood admits the allegations in sentence one of this paragraph and that it entered into Exhibit C.  With respect to the remaining allegations of paragraph 11, to the extent that such remaining allegations allege legal conclusions, no answer is necessary or required.  To the extent that the remaining allegations of paragraph 11 allege allegations of fact, Englewood states that Exhibit C speaks for itself with respect to the matters set forth therein and denies the allegations in paragraph 11 to the extent that they may be inconsistent with the text of the agreement.  However, Englewood expressly denies that as a result of Exhibit C that it is liable to Halle for the amounts alleged in this action.

12.    After the closing of the sale contemplated by the Englewood Agreement, Englewood continued to operate the business theretofore conducted by RAS at 9747 West Foster Avenue, Schiller Park, Illinois ("Office") which had been occupied by RAS up until the time of the sale, utilizing equipment owned by RAS and personnel employed by RAS up until the time of the sale.

**ANSWER:**  Englewood admits that it began to operate its business out of 9747 West Foster Avenue, Schiller Park, Illinois shortly after its agreement with RAS closed, and that in some instances it utilized equipment that it had purchased from RAS and personnel once employed by RAS.  Englewood denies the remaining allegations of this paragraph.

**RAS' and Englewood's Breaches of the Contract**

13.    On September 13, 2004, Halle sent written notice of defaults under the Contract, to the Office. Notwithstanding delivery of the defaults, the defaults alleged in said notice were not cured.

**ANSWER:**   Englewood denies that it received a written notice of default directed to it under the terms of the Contract.  Englewood admits that it took no action to cure any alleged defaults.

4

14. As a consequence, Halle had no alternative but to complete the unfinished Project with its own funds.

**ANSWER:** Englewood lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

15. The total cost incurred by Halle, including payments made to RAS before default and the payments made to complete the Project, totaled $1,475,531.02.

**ANSWER:** Englewood lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

16. Paragraph 19.2.4 of the Agreement Between Owner and Contractor reads as follows, in relevant part:

> If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner.

**ANSWER:** Englewood states that Exhibit A, the agreement between RAS and Halle, speaks for itself with respect to the matters therein and denies the allegations of this paragraph to the extent that they vary from the text of that agreement.

17. After Halle completed the Project, the Architect identified in the Contract certified that the amount owed to Halle pursuant to Paragraph 19.2.4 of the Agreement Between Owner and Contractor was $286,864.72.

**ANSWER:** Englewood lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**Judgment Against RAS/Contract Rights of Indemnification Against Englewood**

18. On November 21, 2006 Halle filed suit against RAS in this Court to recover the damages resulting from RAS' defaults under the Contract, in the matter captioned *Halle Properties, L.L.C. v. R.A.S. Builders,* Inc., Case No. 06 C 6353 (the "RAS Lawsuit").

5

**ANSWER:** On information and belief, Englewood admits that Halle filed the referenced lawsuit seeking the stated relief.

19. On April 5, 2007 this Court entered judgment in the RAS Lawsuit against RAS and in favor of Halle in the amount of $286,864.72 plus costs (the "RAS Judgment") as the amount due to Halle under the Contract.

**ANSWER:** Englewood states that the Court's order speaks for itself with respect to the matters set forth therein and denies the allegations in this paragraph to the extent they vary from the text of the order.

20. Thereafter, Halle commenced supplemental proceedings to collect on the judgment, including serving a citation to discover assets upon RAS.

**ANSWER:** Englewood lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

21. One of RAS' assets was the Englewood Assumption, which includes a contractual indemnity of RAS by Englewood (the "Contract Indemnity") which reads as follows:

> Assignee shall be liable to pay, settle, perform and discharge the Assumed Liabilities. Assignee shall defend, indemnify and hold harmless Assignor from any liability, damages, causes of action, expenses and reasonable attorneys' fees incurred by Assignor by reason of the failure of Assignee to pay, settle and discharge the Assumed Liabilities.

**ANSWER:** To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required. To the extent that the allegations of this paragraph allege allegations of fact, Englewood states that Exhibit C speaks for itself with respect to the matters set forth therein and denies the allegations in this paragraph to the extent that they may be inconsistent with the text of that document. However, Englewood expressly denies that it is liable to Halle for the amounts alleged in this action.

22.     One of the "Assumed Liabilities" in the Contract Indemnity was the Contract with Halle, referenced in Paragraphs 1.19(a) and 1.4 and Schedule 1.1(a) to the Englewood Agreement.

**ANSWER:**    To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required.  To the extent that the allegations of this paragraph allege allegations of fact, Englewood states that Exhibit C speaks for itself with respect to the matters set forth therein and denies the allegations in this paragraph to the extent that they may be inconsistent with the text of that document.  However, Englewood expressly denies that it is liable to Halle for the amounts alleged in this action.

23.     Halle is the owner of the Contract Indemnity given by Englewood. On January 31, 2008, this Court entered an order (the "Assignment Order") assigning to Halle, as RAS' judgment creditor, RAS' right, title and interest in the Contract Indemnity. The Assignment Order states, in relevant part,

> All of RAS' rights, title and interest in and to the Contract Indemnity for Job 04.0267 and all proceeds thereof are hereby assigned and turned over to Halle.

The Assignment Order is attached hereto as **Exhibit D.**

**ANSWER:**    To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required.  To the extent that the allegations of this paragraph allege allegations of fact, Englewood states that Exhibit D speaks for itself with respect to the matters set forth therein and denies the allegations in this paragraph to the extent that they may be inconsistent with the text of that document.

24.     As owner of the Contract Indemnity, Englewood owes Halle the full amount of the RAS Judgment.

**ANSWER**:    To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required.  To the extent that the allegations of this paragraph allege allegations of fact, Englewood denies all such allegations.

## Count I
## Breach of the Contract

25. Halle realleges and incorporates the preceding ¶¶1 - 24 of this Complaint as though fully set forth herein as ¶25 of this Count I.

**ANSWER**: Englewood realleges and incorporates its answers to paragraphs 1 through 24 as its answer to paragraph 25.

26. Pursuant to the Englewood Assumption, Englewood assumed the obligation to perform RAS' duties to Halle under the Contract, including the obligation specified in ¶19.2.4 of the Contract.

**ANSWER:** To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required. To the extent that the allegations of this paragraph allege allegations of fact, Englewood states that Exhibit C speaks for itself with respect to the matters set forth therein and denies the allegations in this paragraph to the extent that they may be inconsistent with the text of that document.

27. Englewood breached the Contract.

**ANSWER:** To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required. To the extent that the allegations of this paragraph allege allegations of fact, Englewood denies all such allegations.

28. Halle suffered at least $286,864.72 in damages as a result of Englewood's breach of the Contract.

**ANSWER:** To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required. To the extent that the allegations of this paragraph allege allegations of fact, Englewood denies all such allegations.

29. Halle has demanded from Englewood payment of $286,864.72. However, in breach of the Contract, which it assumed, Englewood has failed and refused to pay $286,864.72 to Halle.

**ANSWER:** Englewood denies the allegations contained in this paragraph, except that it admits that it has not paid Halle the sum of $286,864.72, despite demand for payment having been made.

### Count II
### Breach of the Contract Indemnity

30. Halle realleges and incorporates the preceding ¶¶1 - 29 of this Complaint as though fully set forth herein as ¶30 of this Count II.

**ANSWER:** Englewood realleges and incorporates its answers to paragraphs 1 through 29 as its answer to paragraph 30.

31. The RAS Judgment was a direct and foreseeable consequence of Englewood breaching the Contract.

**ANSWER:** Englewood denies the allegations in paragraph 31.

32. The Contract Indemnity contractually obligates Englewood to indemnify RAS for the RAS Judgment. Halle, as the owner of that right, is now entitled to enforce the indemnification and to collect the full amount of the RAS Judgment against Englewood.

**ANSWER:** To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required. To the extent that the allegations of this paragraph allege allegations of fact, Englewood denies all such allegations.

33. On or about February 12, 2008, Halle, as assignee, demanded of Englewood, in writing, payment of the RAS Judgment of $286,864.72 pursuant Contract Indemnity.

**ANSWER:** Englewood admits that Halle made a demand of payment under its theory that Englewood is liable to it under the Contract Indemnity. Englewood, however, denies that it is liable for the amount claimed.

34. In breach of the Contract Indemnity, Englewood has failed and refused to pay to Halle the $286,864.72 so demanded.

**ANSWER:** To the extent that the allegations of this paragraph allege legal conclusions, Englewood states that no answer is necessary or required. To the extent that the allegations of this paragraph allege allegations of fact, Englewood admits that it has not paid the amount demanded, but denies that it is obligated to do so.

## AFFIRMATIVE DEFENSES

1. RAS waived any right to indemnity, if it has any, by failing to provide notice of a demand, assertion or claim by a third-party as it is required to pursuant to its purchase agreement with Englewood. Because RAS has no claim to indemnity, neither does Halle.

2. Halle is estopped from claiming damages against Englewood, if it has any, because it did not allow Englewood an opportunity to perform, settle or discharge the assumed liability prior to filing suit against it.

3. Halle has no right to contractual indemnity pursuant to the turn-over order because the party to which Englewood agreed to indemnity, RAS, has never incurred any actual liabilities or damages.

        **Englewood Construction, Inc.**,
        Defendant.

        By:/s/ Christopher J. Petelle_____
          One of Its Attorneys

Edward D. Shapiro
Lorne T. Saeks
Christopher J. Petelle
**Much Shelist Denenberg
  Ament & Rubenstein PC**
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60601
312-521-2000

**CERTIFICATE OF SERVICE**

       I, Christopher J. Petelle, an attorney, certify that on August 20, 2008, I electronically filed, on behalf of Englewood Construction, Inc.**, DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW** with the Clerk of Court using the CM/ECF system, which will send notification of such filings to the following:

       Paula K. Jacobi
       Shelley A. DeRousse
       Jonathan L. Mills
       Sugar Friedberg & Felsenthal LLP
       30 N. LaSalle Street, Suite 3000
       Chicago, Illinois 60602

       /s/ Christopher J. Petelle